ORIGINAL

**FILED**

SEP 2 8 2006

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

No. _____

CASE NUMBER   1:06CV01665

JUDGE: Ricardo M. Urbina

DECK TYPE: Civil Rights (non-employment

DATE STAMP: 09/28/2006

**JURY ACTION**

| PLAINTIFF | | |
|---|---|---|
| **T. CARLTON RICHARDSON**<br>1505 PENNSYLVANIA AVENUE, SE<br>WASHINGTON, DC 20003-3117<br>202. 546.3505 | | |

| **DEFENDANTS** | | |
|---|---|---|
| 1. **DISTRICT OF COLUMBIA [D.C.]** | Hon. Anthony A. Williams, Mayor<br>1350 Pennsylvania Avenue, NW, 6th Flr.<br>Washington, DC 20004<br>-and-<br>Hon. Robert J. Spagnolett, Attorney General<br>1350 Pennsylvania Avenue, NW, #409<br>Washington, DC 20004<br>202/727-6248 | |
| 2. **D.C. COURT OF APPEALS [DCCA]** | 500 Indiana Avenue, NW<br>Washington, DC 20001 | |
| 3. **COURT SERVICES & SUPERVISON AGENCY FOR D.C.** | 1418 Good Hope Road, SE<br>Washington, DC 20020 | |
| 4. **D.C. BOARD ON PROFESSIONAL RESPONSIBILITY [BOARD]** | 409 "E" Street, NW, B-208<br>Washington, DC 20001 | |
| 5. **WALLACE EUGENE SHIPP, Individually and as BAR COUNSEL, DCCA** | 409 "E" Street, NW, B-228<br>Washington, DC 20001 | |
| 6. **LEONARD H. BECKER** | 1350 Pennsylvania Avenue, NW #327<br>Washington, DC 20004 | |
| 7. **DONNA M. DESILVA** | 2550 "M" Street, NW<br>Washington, DC 20037 | |
| 8. **ELIZABETH J. BRANDA** | 409 "E" Street, NW, B-208<br>Washington, DC 20001 | |
| 9. **CATHERINE L. KELLO** | 409 "E" Street, NW, B-228<br>Washington, DC 20001 | |
| 10.  **LALLAH SHISKEVISH** | 1250 "H" Street, NW<br>Washington, DC 20005-5937 | |

## COMPLAINT WITH JURY DEMAND FOR POST-JUDGMENT RELIEF (COUNT #1) AND RELATED CIVIL RIGHTS VIOLATIONS (COUNT #2)--*VERIFIED*

## ■ INDEX ■

**I. NATURE OF ACTION-- 2 [¶1]**

**II. PARTIES-- 3**

    A. Plaintiff-- **3** [¶2]

    B. Defendants-- **3** [¶¶3-4]

**III. COUNT #1: POST-JUDGMENT RELIEF (*REINSTATMENT OF HABEAS CORPUS PETITION*)--3**

    A. Nature of Claim-- **3** [¶¶5-6]

    B. Jurisdiction-- **4** [¶7]

    C. Statement of Claim-- **4**

      • *Habeas Corpus Proceedings-- In Brief-- 4 [¶¶8-10]*

      • *DCCA Disciplinary Proceedings: In Chief (Investigatory and Adjudicatory Phases--1992-1997), Civil and Criminal Contempt Proceedings (1997-1998) and Reinstatement (2001-2003)-- 5 [¶¶11-30]*

      • *Prosecutorial Misconduct/Fraud Upon Courts-- 9 [¶¶31-40]*

      • *Lack of Jurisdiction/Void Judgments: DCCA Disciplinary Judgments by 3-JudgeCourts Invalid--Denial of Due Process; DCCA Contempt Judgment by Single-Judge Court Invalid-- 14 [¶¶ 41-49]*

      • *Unreasonable Search and Seizure (4ᵗʰ Amd.)-- 16 [¶¶50-58]*

      • *Illegal Disciplinary Sanction: Enhancement (5ᵗʰ Amd.) and Disproportionality (8ᵗʰ Amd.)-- 19 [¶¶59-67]*

    D. Conclusion and Relief Requested-- **21** [¶¶68-70]

**IV. COUNT #2: FEDERAL CIVIL RIGHTS AND RELATED CLAIMS-- 22**

    A. Nature of Claims-- **22** [¶¶71-73]

    B. Jurisdiction-- **22** [¶74]

    C. Statement of Claims-- **22** [¶¶75-91]

    D. Conclusion and Relief Requested--27

      • *Jury Demand-- 27 [¶92]*

      • *Declaratory and Injunctive Relief-- 27 [¶¶93-94]*

      • *Compensatory and punitive damages-- 28 [¶95]*

**V. VERIFICATION AND EXECUTION-- 28** [¶96]

**■ SCHEDULE OF APPENDIX-- 28**

---

## I. NATURE OF ACTION

1.    This complaint (with jury demand as to Count #2) states various claims of the plaintiff Richardson arising of out the same law licensing relationship with the District of Columbia (DC) government under the rubrics: (1) in Count #1 for post-judgment relief seeking the reinstatement of Richardson's dismissed habeas corpus petition [*Richardson v. Courts Services and Offender Supervision Agency for D.C. and D.C. Court of Appeals*, CA No. 99-0657 (Robertson, J.)] and (2) in Count #2 for related civil rights violations.

## II. PARTIES

### A. PLAINTIFF

2.   That the plaintiff, **T. Carlton Richardson**, is an Africanic [=a diasporan person descended from African slaves] citizen of the United States who resides in  District of Columbia. Richardson, an attorney licensed to practice in D.C. since 1974, has had his license under revocation since June 27, 1995.

### B. DEFENDANTS

3.   That the defendants are the **District of Columbia [DC]** and its subdivisions or agents: the **D.C. Court of Appeals [DCCA]**, the **Board on Professional Responsibility of  the DCCA [Board or BFR]**,  the **Office of Bar Counsel, DCCA [Bar Counsel or bar prosecutors]**, the **D.C. Bar, DCCA [D.C. Bar]**, and the **Courts Services and Offender Supervision Agency for D.C.**; and

4.   Present or former employees of defendant Bar Counsel, *viz*: Dr. **Leonard H. Becker**, Esq. (former Bar Counsel), Dr. **Elizabeth J. Branda**, Esq. (former Assistant Bar Counsel and currently the Board's Executive Attorney), Dr. **Donna M. DeSilva**, Esq. (former Assistant Bar Counsel), Dr. **Wallace Eugene Shipp**, Esq. (former Assistant Bar Counsel and currently Bar Counsel), and  Dr. **Catherine L. Kello**, Esq. (currently Assistant Bar Counsel). And an employee of the  Continuing  Legal Education (C.L.E.) division of the D.C. Bar,  **Lallah Shiskevish**, its director.

### III.  COUNT #1:  POST-JUDGMENT RELIEF
### *(REINSTATEMENT OF HABEAS  CORPUS PETITION)*

### A. NATURE OF CLAIM

5.   This Count states grounds for **reinstatement of the petitioner Richardson's habeas corpus petition dismissed by the district court on July 11, 2001** (App. A--Memorandum order dismissing petition; App. B--Memorandum order denying motion to reconsider dismissal) based upon submissions of the parties and by using judicial notice procedures in its factfinding without an evidentiary hearing or oral argument.

6.   Post-judgment relief is predicated upon **[a] newly discovered evidence of prosecutorial misconduct**  involving the concealment of evidence, obstruction of justice and fraud upon the D.C. and

Federal courts and **[b]** other grounds under the U.S. Constitution and D.C. statutes that convincingly demonstrate that the **D.C. courts  lacked jurisdiction and rendered  void judgments** in Richardson's civil and criminal contempt proceedings arising out of the improper and illegal exercise of its exclusive and limited jurisdiction over the practice of law in the District of Columbia, and **[3] denied petitioner Richardson's due process rights and other fair trial procedural procedures** (e.g., 4th Amendment: unreasonable search and seizure; 8th Amendment: grossly disproportionate penalties)  previously overlooked by the district court in its dismissal of Richardson's petition for habeas corpus relief.

### B. JURISDICTION

7.   The district court's jurisdiction lies in **F.R.Civ.P. 60(b)** permitting the court to vacate judgments under certain enumerated circumstances (e.g. newly discovered evidence, fraud upon court, lack of jurisdiction, or "any other reason justifying relief from the operation of the judgment"), **US §28:1651** allowing the court to issue on motion a writ of *coram nobis* or other extraordinary writs necessary in aid of the district court's habeas corpus jurisdiction, and **U.S.C. §28:2201** allowing the court of declare and rule that there exists a justiciable controversy between the plaintiff and defendants and to issue a declaratory judgment declaring that the habeas corpus petition proceedings be reopened and the petition reinstated.

### C. STATEMENT OF CLAIM

### *(HABEAS CORPUS PROCEEDINGS--IN BRIEF)*

8.   In the dismissed habeas corpus proceedings, plaintiff Richardson challenged the procedures and result rendered in criminal contempt proceedings before a single judge of defendant DCCA in exercise of its exclusive and limited jurisdiction to govern the practice of law in the defendant District of Columbia [D.C. Code §11-2501(a)-(b)[1]].

---

[1] "The [DCCA] shall make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion.  Members of the  bar of the [DCCA] shall be eligible to practice in the District of Columbia courts" [Id.].

9. On March 6, 1998, Richardson was convicted of the unauthorized practice of law in criminal contempt proceedings before a single-judge of the DCCA, sentenced to two years supervised probation, and fined.

10. Subsequently, on March 17, 1999 and September 21, 2000 Richardson petitioned the district court for habeas corpus relief. After consolidation of the petitions and upon review of the record, using judicial notice procedures without an evidentiary hearing or oral argument, the district court dismissed the petition on July 11, 2001 [App. "A"] and denied reconsideration on July 31, 2001 [App. "B"]. Appeal of the dismissal was disallowed by the U.S. Court of Appeals on January 10, 2002.

*[DCCA DISCIPLINARY PROCEEDINGS: IN CHIEF (INVESTIGATORY AND ADJUDICATORY PHASES, 1992-1997); CIVIL AND CRIMINAL CONTEMPT PROCEEDINGS, 1997-1998; AND REINSTATEMENT PHASE, 2001-2003]*

11. On July 25, 2001, Richardson sought reinstatement of his previously revoked law license by the DCCA. Richardson's license to practice law had been temporarily revoked in June 1995 (reaffirmed in March 1996) without *prior* notice or opportunity to be heard upon the *ex parte* executive recommendation of the defendant DCCA's Bar Counsel **Becker** by letter dated May 26, 1995 based upon Richardson's 1992 resignation of the Florida Bar that occurred while under disciplinary investigation for charging an unreasonable fee to Florida clients.

12. This June 1995 temporary revocation was based upon D.C. Bar Counsel's ["bar prosecutors"] investigations opened according to its *revealed* records in *1994*. Richardson was notified by letter dated April 13, 1994 by then defendant Assistant Bar Counsel **Branda** and he responded to this 1994 investigation by a submission dated May 27, 1994.

14. However, Richardson never received any notice of formal charges *prior to* the June 1995 temporary revocation as required by statutes governing administrative procedures generally [D.C. Code §2-501 et. seq.] and bar disciplinary procedures specifically [Id., §§11-2502 and -2003(b)[2]] by departments and agencies of the defendant D.C. government.

---

[2] "The DCCA may censure, *suspend from practice*, or expel a member of its bar for crime, misdemeanor, fraud, deceit, malpractice, *professional misconduct*, or conduct prejudicial to the administration of justice.

15. In other words, neither charges of misconduct [i.e., resignation/charging an unreasonable fee *or* untimely filing of registration statement] were based upon written charges; nor was there provided an evidentiary hearing as required by D.C. statutes to invoke the jurisdiction of the DCCA to adjudicate complaints of misconduct and revoke a person's license to practice law, only the submissions and filings of the DCCA's Bar Counsel (*ex parte* and of record) and responses by Richardson (of record only).

16. Thus, in April 1997, the June 1995 temporary revocation (*reaffirmed* in March 1996) was finalized without notice or an evidentiary hearing by the DCCA in *In re Richardson*, 692 A.2d 417, *429* (1997). The DCCA stated, "On June 27, 1995 (the DCCA) ordered Richardson's temporary suspension, *without hearing*, pending final disposition of the proceeding." And adopted the 'reciprocal discipline' or penalty recommended by the defendant Board for Richardson's alleged misconduct without notice or opportunity to be heard either.

17. The DCCA's penalty or disciplinary sentence imposed upon Richardson consisted of a **license revocation period of in excess of five (5) years**:

- **[a] three (3) years for the misconduct of resigning the Florida Bar** while under investigation for charging an *unspecified* unreasonable fee to Florida clients *plus*

- **[b] an enhancement of two (2) years ten (10) months already served for the misconduct of the untimely filing of a registration statement** required of attorneys whose licenses are temporarily suspended under D.C. Bar R. XI, §14(f) and legislated judicially in *In re Slosberg*, 650 a.2d 1329 (DC, 1994).

18. In 2001, plaintiff Richardson commenced reinstatement proceedings before the Board. After over three (3) years of contentious adversary proceedings a hearing committee of the Board heard evidence supporting Richardson's reinstatement [bear in mind that Richardson never received an evidentiary hearing when his license was initially revoked temporarily in June 1995 (reaffirmed in March 1996) and finalized in April 1997]. In those reinstatement proceedings, Richardson discovered that **investigatory evidence had been concealed and undisclosed** by defendant Bar Counsel and that

---

**\*\*\*** [A] member of the bar *may not be* censured, *suspended*, or expelled under this chapter *until written charges, under oath, against him have been presented to the court, stating distinctly the grounds of complaint.*"

Richardson had been **denied certain investigatory due process rights** as a result of the concealment and nondisclosure, a flagrant **obstruction of the administrative of justice** in Richardson's reciprocal disciplinary matter as well as being unethical under the Code of Professional Conduct governing attorneys promulgated by the DCCA.

19. The discovery occurred as follows: In February 2003, defendant Assistant Bar Counsel **Kello** was  ordered  by the Board's hearing committee to produce certain investigatory records of all investigations opened regarding Richardson  from *circa* 1990. After the conclusion of the reinstatement's evidentiary hearing in February 2003, certain investigatory records were produced by defendant **Kello** that  consisted of  submissions [pleadings and other litigation documents related to a civil action brought against Richardson in Florida by clients for refund of legal fees dating from 1990] by the attorney for the Florida clients (Dr. David Rankin, Esq.)  who accused Richardson of charging an unreasonable fee by letter and attached copies of litigation documents to the Office of Bar Counsel in *1992*.

20. These litigation documents were received and reviewed by defendant Assistant Bar Counsel **Branda** in *1992*, assigned a case docket number under the name *Richardson/Rankin*. Dr. *Rankin* being the Florida clients' attorney prosecuting a 1990 civil action against Richardson in the Florida courts.  Defendant **Branda, the reviewing bar prosecutor, who is currently  the Board's Executive Attorney, determined that the submissions by Dr. Rankin were insufficient to  warrant an investigation and** *closed* **the investigation** *without notice* **to Richardson of the submission** *as required by D.C. Bar Rule 2.3.*[3]

21.    Although the *1992 Richardson/Rankin* investigation was closed 'on the record' or 'undocked,' defendant **Branda** continued to communicate with and to obtain submissions from the Florida clients' attorney (Dr. Rankin) at least until *1994*.

22. Then in *1994*, defendant **Branda** surreptitiously and conspiratorially  obtained the 'merger'

---

[3] Opening a bar disciplinary investigation is *mandatory* under Bd. R. 2.3 "[1] if it is *not unfounded on its face*; (2) *contains allegations which, if true, would constitute a violation of the Attorney's Oath* of Office *or the rules of professional responsibility* that would merit discipline; and (3) is *within the jurisdiction* of the Board."

of the closed or 'undocketed' *1992 Richardson/Rankin* investigation with the permission of the **Board's oversight representative -- *whose identity is unknown* and *has never been disclosed* to plaintiff Richardson, although requested on numerous occasions--**, into a newly opened *1994* investigation styled *Richardson/Bar Counsel.*

23.  *Richardson/Bar Counsel* was based solely upon Richardson's *1992* resignation of the Florida Bar while under disciplinary investigation (coincidentally instigated in the Florida Bar by Dr. Rankin also) for charging an unreasonable fee to the same clients whose attorney (Dr. Rankin) had made the submissions in *Richardson/Rankin.* Richardson's Florida Bar resignation [1] was without either an admission on his part misconduct or a finding of misconduct by the Florida Supreme Court, and [2] resulted in a simultaneous dismissal of the collateral Florida Bar disciplinary investigation and an injunction against Richardson applying for readmission to the Florida Bar within three (3) years.  It should be noted that at the time Richardson resigned the Florida Bar, his law license had been under suspension *since 1990*, a fact known by defendant **Branda** and other bar prosecutors.

24.  Shortly after the DCCA revoked Richardson's law license in June 1995 without notice and an evidentiary hearing, Richardson *un*successfully challenged the temporary suspension imposed. Richardson also challenged the March 1996 'fresh' interim suspension order brought by defendant Assistant Bar Counsel **DeSilva**. However, at the time of both challenges, Richardson was unaware of *Richardson/Rankin,* the 1992-1994 'undocketed' investigation, or its records and its merger into the 1994 'docketed' investigation (*Richardson/Bar Counsel*).

25.  Furthermore, defendant **DeSilva** never reveal to the DCCA during the two temporary (1995/1996) and the final suspension reciprocal disciplinary suspension proceedings (1997), the existence of the *1992 Richardson/Rankin* (the 'undocketed' investigation), its merger with *Richardson/Bar Counsel* (the 'docketed' investigation)in *1994*, and the bar prosecutors' failure to notify Richardson of the existence of *Richardson/Rankin* and the merger proceeding.

26.  Moreover, defendant **DeSilva** did not reveal the single judge of the DCCA that heard *civil* contempt proceedings that were brought by defendant **DeSilva** to compel Richardson to respond to

improper executive subpoenas for answers to interrogatories and production of documents. Defendant **DeSilva** had issued the subpoenas *personally* based upon her own prosecutorial authority under D.C. Bar Rule XI, §18(a) without the prior approval of a judicial officer.

27.   Defendant **DeSilva's** interrogatories/production request resulted from a   review of Richardson's bank records by **DeSilva,** which **DeSilva** had obtained surreptitiously through an *executive* subpoena (i.e., without court prior authorization) to Richardson's bank. The bank account information **DeSilva** used for the *executive* subpoena was gleaned from a copy of Richardson's check given by him to pay for a C.L.E. course on 'Billing Ethics' and sent surreptitiously and conspiratorially  to defendant Bar Counsel (then Assistant Bar Counsel) **Shipp** by defendant **Shiskevish,**  the director of the  D.C. Bar's C.L.E. Office.

28.   Additionally, defendant Assistant Bar Counsel **DeSilva never revealed that the 1992-1994 'undocketed' and merged investigation *Richardson/Rankin* existed to the single-judge of the DCCA that heard a subsequent 1998 *criminal* contempt proceedings,** the progeny of Richardson's 1999 habeas corpus proceedings.  The criminal contempt proceedings were also based upon the 'fruits' of the evidence produced by Richardson in the civil contempt proceedings that preceded the criminal contempt proceedings.

29.   To recap, the evidence   [i.e., the 1992-1994 'undocketed' and merged investigation that spawned *Richardson/Rankin*] was never disclosed in *any* civil proceedings — beginning in 1995 to date and spanning over 11 years of adversary proceedings in Federal courts -- brought by Richardson against the DCCA and others challenging the jurisdictional validity and constitutionality of the DCCA's disciplinary and contempt judgments and orders in the district court by *any* opposing counsel  in *any* of their submissions, including when the district court dismissed  Richardson's habeas corpus petition.

30.   Plaintiff Richardson, while receiving documentary evidence of the existence of the 1992-1994 'undocketed' and merged *Richardson/Rankin* investigation in February 2003, **has *never* received copies of the remaining records in *1992 Richardson/Rankin* investigation or the name of the representative of Board who authorized and participated in the merger of the 1992-1994**

'undocketed' *Richardson/Rankin* investigation with the 1994 'docketed' *Richardson/Bar Counsel* investigation that formed the basis of Richardson's 1995/1996 temporary and 1997 final license revocations. That nondisclosure continues to this date, over 11 (eleven) years later.

### (PROSECUTORIAL MISCONDUCT/FRAUD UPON COURTS)

31. In related or collateral bar disciplinary, civil/criminal contempt, and Federal civil actions (habeas corpus and other civil actions) involving plaintiff Richardson, bar prosecutors (especially, defendants **Branda, Becker, DeSilva** and **Kello**) **obstructed justice** by **concealing the existence of and failing to disclose the records in Bar Counsel's *1992 Richardson/Rankin* investigation (and failing to accord investigatory due process rights to Richardson also)** in the following particulars:

- from the Board and DCCA in bar disciplinary proceedings of the *Richardson/Rankin* investigation (B.D. No. 511-92) and merger of *Richardson/Rankin* investigation (B.D. No. 511-92) with *Richardson/Bar Counsel* investigation (B.D. No. 180-94);

- from plaintiff Richardson of the *Richardson/Rankin* investigation and merger;

- from the DCCA in related civil and criminal contempt proceedings of the *Richardson-/Rankin* investigation and merger; and

- from collateral Federal trial and appellate courts in civil actions and habeas corpus proceedings of the *Richardson/Rankin* investigation and merger.

32. D.C bar prosecutors (especially, defendants **Branda, Becker, DeSilva** and **Kello**) also **failed to perform their duty to disclosure material evidence** caused the following injuries to plaintiff Richardson, the Board, and/or the DCCA:

- Interfered with the discovery of impeachment evidence and prevented presentation of such evidence in interim and final stages of reciprocal discipline;

- Hindered presentation of misconduct defenses in interim and final stages of reciprocal discipline;

- Hindered presentation of the defense that the merger of the *1992 Richardson/Rankin* and the *1994 Richardson/Bar Counsel* investigations was improper, being done without notice or an opportunity to heard, in violation of Richardson's investigatory due process rights to be heard on the *1992 Richardson/Rankin* complaint; and

- Hindered presentation of defenses in collateral civil and criminal contempt proceedings.

33.   Moreover, **bar prosecutors committed fraud upon the courts** by failing to disclose the existence of the *1992 Richardson/Rankin* investigation and in the criminal contempt proceedings committed a *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963) [ i.e. nondisclosure and concealment of material evidence denies due process and is grounds to set aside conviction and/or sentence] violation. And expressly *via* defendant Assistant Bar Counsel **DeSilva** who represented to the DCCA's single-judge hearing the criminal contempt against plaintiff Richardson, that bar prosecutors had no evidence to reveal. Defendant **DeSilva** wrote in a 1997 discovery letter to the DCCA single-judge court and plaintiff Richardson that: *"**Brady Materials**: Bar Counsel is unaware of any documents or other materials that may be considered favorable, exculpatory, and material* and therefore are required to be disclosed under *Brady v. Maryland,* 373 U.S. 83 (1963)" [*Emphasis supplied.*]

34. Furthermore, prosecution of Federal civil actions by plaintiff Richardson for violation of common law, statutory and constitutional (i.e. Federal civil rights) torts, injunctive relief and habeas corpus were interfered with or prevented. Attorneys representing the DCCA in those proceedings and/or its employees or agents failed to provide the Federal courts with the information regarding the *1992 Richardson/Rankin* investigation that would have affected the unfavorable trial court and appellate outcomes of those proceedings, which were all dismissed against Richardson on lack of Federal jurisdiction grounds.

35.   In summary, Richardson **failed to receive the requisite due process notice** in three instances:

- when *Richardson/Rankin* investigation (B.D. No. 511-92) was processed;

- when *Richardson/Rankin* investigation (B.D. No. 511-92) was merged with *Richardson/Bar Counsel* investigation (B.D. No. 180-94); and

- when providing mandated discovery in criminal contempt proceedings, specifically in a 1997 letter from defendant **DeSilva** in response to discovery in the DCCA's criminal contempt proceedings referenced in ¶33 *supra.*

36. Finally, Richardson **failed to receive the due process hearings** guaranteed under the 5th Amendment, D.C. Code provisions governing the regulation of the practice of law [D.C. Code § 11-2503(b)] and administrative procedures [D.C. Code (2001) §2-509], and D.C. Bar rules [Bd. R. 2.3, 2.7, and 2.8; Bar R. XI, §6(a)(2)] governing the investigation of disciplinary matters in the following particulars:

- on allegations of misconduct contained in the *1992 Richardson/Rankin* complaint;

- on the allegations of jurisdictional and misconduct facts and on the omission of material information and documentation presented in bar prosecutors' *ex parte* submission to DCCA for automatic entry of the 1995 and 1996 interim suspension orders based upon Richardson's uncontested resignation of the Florida Bar;

- on allegations of misconduct contained in the statement of bar prosecutors submitted to the Board in support of a finding of misconduct and imposition of sanctions as reciprocal discipline in Florida uncontested resignation matter;

- on whether misconduct determined by Board by use of 'official notice' procedures lacked impartiality because one of its members was disqualified by virtue of having independent knowledge of the allegations of misconduct having served as the "contact member" in *1992 Richardson/Rankin* investigation and approved its merger with *1994 Richardson/Bar Counsel* investigation; and

- on whether the finding by the Board of misconduct and imposition of sanctions based solely upon hearsay evidence in the nature of unsworn statements by the complaining client's attorney (Dr. Rankin) and the Florida Bar prosecutor in his response to Richardson's petition to resign the Florida Bar were properly received in the 'official notice' proceedings.

37. In summary, **bar prosecutors have obstructed justice** by secretly conducting an investigation for alleged multiple violations by Richardson of the D.C. Bar Rules of Professional Conduct in violation of Board and D.C. Bar Rules resulting in

- the denial of Richardson's due process rights under those Rules,

- the concealing and destroying records of the1992-1994 *Richardson/Rankin* investigation,

- misleading through omissions, half-truths, and false statements the Board and DCCA itself resulting in deprivation of the Richardson's license to practice law without due process of law, and

- interfering with the fair consideration by the Board and DCCA by depriving them of a full and complete record of the underlying facts and relevant authority required for the fair and impartial operation of their decisionmaking judicial and *quasi*-judicial functions.

Such **obstruction of justice** also violated the criminal statutes governing obstructing justice in the District of Columbia, including tampering with evidence, and ethical standards of conduct for attorneys (esp. prosecutors), as well as Federal statutes on the same subject

38.  Former and present members of the Office of Bar Counsel (some unknown to plaintiff Richardson at this time) have conspiratorially participated in illegal and unethical activities consisting of **obstructing justice** and **failing to disclose evidence** that constitute misconduct of the most egregious type and goes to the heart of the integrity of the bar disciplinary enforcement system, as well as the administration of justice in the local and Federal courts of the District of Columbia.  Bar prosecutors' **nondisclosure violated Richardson's due process rights** under the 5th Amendment of the U.S. Constitution,  Board Rules, and the D.C. Bar's Rules of Professional Conduct that impose special prosecutorial duties and responsibilities.

39.  Specifically, bar prosecutors

- violated their duty to fully disclose its disciplinary investigatory activities to Richardson and the DCCA,

- violated Board Rules governing processing, investigating, and instituting disciplinary proceedings against Richardson, and

- knowingly presented (or omitted to present when under an legal and ethical duty to do so) false and misleading documents and made false and misleading statements in submissions to the DCCA that resulted in Richardson's license to practice of law being summarily revoked without notice or opportunity to be heard in June 1995, reaffirmed in March 1996, and finally revoked in April 1997.

40.  Because the **obstruction of justice** and **concealment or suppression of evidence** that occurred in the reciprocal disciplinary proceedings as well as collateral civil and criminal contempt

proceedings and Federal habeas corpus proceedings (i.e. D.C. Attorney General's Office failed to submit records regarding the *1992 Richardson/Rankin* investigation to the Federal court), the injury to Richardson and to the administration of justice system as been so pervasive and the materiality of the undisclosed evidence so clear and convincing that the **reciprocal disciplinary orders and judgment in these *quasi*-criminal reciprocal disciplinary proceedings are void** having been rendered in violation of due process and cannot be given full faith and credit in any U.S. court, State or Federal. Such conduct by bar prosecutors also constitutes **fraud upon the DCCA, its Board, and the Federal courts**.

***[LACK OF JURISDICTION/VOID JUDGMENTS: DCCA DISCIPLINARY JUDGMENTS BY 3-JUDGE COURTS INVALID--DENIAL OF DUE PROCESS (5th Amd.); DCCA CONTEMPT JUDGMENTS BY SINGLE JUDGE COURTS INVALID]***

41.  D.C. Code §11-2503(b), which prohibits the DCCA from suspending an attorney without filing verified charges, personal (or *in lieu* thereof substituted service for cause), and being accorded an evidentiary hearing, is the source of the DCCA's disciplinary jurisdiction and enforceable by it. Furthermore, a hearing must be provided to a party in "contested cases," after reasonable notice, in administrative hearings under the auspices of D.C. government agencies and any provision in an agency's rules of procedure that are different is "supercede[d]" [D.C. Code (2001) §§2-501; 2-509]. And because bar disciplinary proceedings are *quasi*-criminal [*In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222 (1968)], an evidentiary hearing.

42.  The fundamental requirements of due process are notice and the opportunity to be heard and administrative agencies must, as a matter of due process, provide a full, fair and complete hearing when they seek to deprive a person of her/his property.  An evidentiary hearing is guaranteed under D.C. disciplinary and administrative procedure statutes [D.C. Code §§ 11-2503(b); 1-1502(8)], under numerous cases of the DCCA beginning in the late 1800s and under the 5th Amendment as interpreted by the U.S. Supreme Court in *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729 (1975), *Bell v. Burson*, 402 U.S. 535, 542, 91 S.Ct. 1586 (1982), *Barry v. Barchi*, 433 U.S. 55, 99 S.Ct. 2942 (1979), and *Gilbert v. Homar*, 520 U.S. 924, 117 S.Ct. 1807 (1997).

- 14 -

43. In *In re Richardson 1997:429,* the DCCA finally revoked Richardson's license to practice law without notice or an evidentiary hearing having temporarily done so "[o]n June 27, 1995 ... ordered Richardson's temporary suspension, *without [prior notice and] hearing,* pending a final disposition of the proceedings." The June 1995 revocation was reaffirmed under identical circumstances in March 1996. By taking almost two years to finally revoke Richardson's law license, the DCCA violated Richardson's due process rights as enunciated in the U S. Supreme Court cases governing the due process rights of an accused  (a) to a *prompt post-suspension hearing* where suspension  lasts more than 10-days;  (b) to proof by clear and convincing evidence of any disciplinary charge, element thereof, *or* sanction imposed if convicted; and (c) that prohibit conviction of an offense by judicial legislation, presumptions or judicial notice  without according the accused a hearing.    Thus, the *In re Richardson:1997* **judgment is void and cannot be given full faith and credit  by any State or Federal court** having been rendered in violation of the well settled due process rights of plaintiff Richardson.

44. Federal courts have inherent authority to punish  any  contempt of court [D.C. Code §11-741 (The "District of Columbia Court of Appeals, *or a judge thereof,* may punish for disobedience of an order or for contempt *committed in the presence of the court.*")]. Criminal  contempt  cases are "cases  and controversies"  upon which the judicial power of the United States can act [Art. III, U.S. Const.; D.C. Code §§ 11-101(2)(A) and 11-705(b)].

45. "Cases and controversies shall be heard and determined by *divisions* of the" DCCA and "(e)ach  *division*  of the court shall consist of *three* judges" [D.C.  Code  §11-705(b) (2001ed.)]. "Cases and controversies *shall* be *heard* and *determined* by ['three-judge'] *divisions* of  the [DCCA] unless a hearing or a rehearing before the [DCCA] en banc is ordered" [Id., DC Code].  Contemptuous behavior not "in the *presence* of the court" can be punished only by a 3-judge panel of the DCCA.

46. Moreover, a single-judge order cannot be binding on a three-judge division of the DCCA. And if the contemptuous conduct did not occur in front of the single-judge, **any judgment of contempt by a single DCCA judge is void** since only a 3-judge panel can impose contempt for  contemptuous conduct under such circumstances.

47.  While a three-judge panel can appoint pursuant to statutory authority a single-judge of the D.C. Superior Court to serve as a judge of the DCCA for purpose of making factfindings and legal conclusions, a three-judge panel cannot confer jurisdiction upon a single-judge court for final disposition. That power lies only in the province of a three-judge panel of the DCCA.  And under such circumstances, the single-judge acts merely as a hearing officer without the authority to enter judgment on its own factfindings and legal conclusions, that is the function of the 3-judge panel of the DCCA.

48.  Under D.C. statute, decisions of the DCCA must be rendered by a three-judge panel  when exercising its jurisdiction to regulate the practice of law in the District of Columbia [D.C. Code §11-2501 *et al.*].  Thus, the DCCA must act in three-judge panels where an attorney accused of violating a valid subpoena during disciplinary investigations or a suspension order of the attorney's license to practice law. Where civil or criminal charges of contempt are brought before the DCCA for alleged contemptuous conduct, which by its very nature has occurred *outside the purview* of the DCCA  -- i.e. not "in the presence of the court," they must be heard by a three-judge panel.

49.  In Richardson's civil and criminal contempt actions,  the contempt judgments were rendered by a single-judge, not a three-judge panel. Nor in either case was Richardson given an opportunity to contest the findings and conclusions *or* present argument before a DCCA three-judge panel. As such, not only was the **judgments of the single-judges in Richardson's civil and contempt actions void for lack of jurisdiction**, they also **violated his due process right** since he was given no opportunity to be heard by a three-judge panel. And three-judge panels have the *sole* authority under these circumstances [i.e., disposition of  the alleged contemptuous conduct outside the presence of the court] to enter a civil or criminal contempt judgment.

## *[UNREASONABLE SEARCH AND SEIZURE (4ᵀᴴ AMD.)]*

50.  An illegal search and seizure claim arose in 1996 in a separate investigation based upon a bogus (and later dismissed) misconduct charge of the "misuse of entrusted (client) funds" brought and investigated by defendant Assistant Bar Counsel **DeSilva**.

51. In that investigation, defendant **DeSilva**, without prior court authorization, surreptitiously subpoenaed Richardson's bank records based upon account information on the copy of a check written by Richardson to pay for a C.L.E. course in "Billing Ethics" that defendant Bar Counsel **Shipp** had received surreptitiously and conspiratorially from the director of the D.C. Bar's CLE office, defendant **Shiskevish**.

52. Richardson's 4th Amendment illegal search and seizure claim is that the Office of D.C. Bar Counsel violated his constitutional right to fair trial procedures when it surreptitiously and conspiratorially obtained a copy of a CLE check that Richardson had written to attend a CLE course on "Billing Ethics" from the director of the D.C. Bar CLE's office, defendant **Shiskevish**. This was a part of Richardson's rehabilitation efforts after suspension in June 1995.

53. Information on that check was used to obtain Richardson's bank records pursuant to an *executive* (i.e., without prior judicial review) subpoena by the defendant Assistant Bar Counsel **DeSilva** while simultaneously investigating him for alleged trust account irregularities. Based upon deposits and cancelled checks, defendant **DeSilva** issued an executive (i.e. upon **DeSilva's** own determination of "probable cause") subpoena to plaintiff Richardson to explain those transactions.

54. Richardson refused to comply with the executive subpoena voluntarily prompting defendant **DeSilva** to commence civil contempt proceedings in 1997. Richardson was not informed of how defendant **DeSilva** obtained a copy of his CLE check nor how the information regarding certain bank transactions was obtained that formed the basis of the subpoena issued to him. Therefore, the *exchange of information* (i.e., his CLE check) between the D.C. Bar CLE office and bar prosecutors constituted an unreasonable search and seizure under the 4th Amendment.

55. In summation, Richardson's 4th Amendment claims are:

- That the sharing of information between the CLE. office of the D.C. Bar and bar prosecutors being without Richardson's consent constituted an unconstitutional search and seizure under the 4th Amendment;

- That all subpoenas issued in the trust account irregularities investigation (later dismissed) were invalid because they lacked the requisite prior review and authorization by a judicial officer for bar prosecutors in *quasi*-criminal bar disciplinary investigations and are prohibited *per se* from determining

probable cause for issuing a subpoena without prior judicial review and approval; and

- That the issuance of the subpoenas for Richardson's bank records in the trust account investigation violated his investigatory due process rights under D.C. Code XI, §6(a)(2), which prohibits discovery until after an accused attorney has responded.

56. The U.S. Supreme Court ruled in *Ferguson v. City of Charleston,* 532 U.S. 67, 121 S.Ct. 1281 (2001) that information sharing between affiliated governmental agencies resulting in subpoenas being issued without prior court approval violates the 4th Amendment. It applied the general rule that an official nonconsensual search is unconstitutional if not authorized by a valid search warrant and was not establishing a new rule of constitutional interpretation. Thus, the exchange of the C.L.E. check between the D.C. Bar and the Office of Bar Counsel, both administrative subdivisions of the DCCA, violated the petitioner's 4th Amendment right to searches and seizures conducted by the government that are not "unreasonable."

57. Moreover, disciplinary investigations are subject to the strictures of the 4th Amendment that legal process sought to invade the privacy of an attorney must first be reviewed and approved by a neutral judicial officer [*United States v. U.S. District Court,* 407 U.S. 297, *317,* 92 S.Ct. 2125, *2136-2137* (1972); *In re Malvin,* 466 A.2d 1220 (D.C., 1983) (To obtain an attorney's bank records, investigative officials must use an "administrative warrant" under Civ. R. 204, D.C. Sup. Ct.); D.C. Bar R. XI, §8(b)]. In *Coolidge v. New Hampshire,* 403 U.S. 443, *454,* 94 S.Ct. 2022, *2032* (1971) *reh'g den.,* the U.S. Supreme Court established a *per se* disqualification rule regarding prosecutors' determining probable cause for issuance of a search warrant or subpoena *duces tecum,* holding: "that searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions … [not relevant here] " [*Id.* (Internal quotes omitted)].

58. D.C. Bar subpoena procedures under D.C. Bar R. XI, §18(a)[4], permitting as it does unreviewed executive discretion in bar prosecutors, is unconstitutional under the 4th Amendment since there is no restraint imposed by a detached and neutral judicial officer.

## *[ILLEGAL DISCIPLINARY SANCTION -- ENHANCEMENT (5TH AMD.) AND DISPROPORTIONALITY (8th AMD)]*

59. In *In re Richardson 1997*, the DCCA imposed a 3-year license revocation for Richardson's resignation of the Florida Bar while under disciplinary investigation for charging an unreasonable fee and an *enhanced* revocation period from June 1995 to April 1997 of approximately 2 years and 10 months for failing to file a registration statement required of suspended attorneys under the *In re Slosberg*, 650 A.2d 1329 (DC, 1994) rule and D.C. Bar Rule XI §14(f).

60. *Slosberg*, is a *judicial* (as opposed to *legislative*) bar disciplinary rule that allows the DCCA by official notice to enhance a suspension by the period during which an attorney under interim suspension has not complied with its registration and notice requirement under D.C. Bar R. XI, §14(f) without notice or opportunity to be heard. It is not a  Bar disciplinary rule that was *legislatively* determined by the DCCA since the DCCA has limited, but *exclusive* jurisdiction over the practice of law in D.C., which is executive, legislative and judicial.

61. Because there was no notice of such a misconduct charge nor an evidentiary hearing, the imposition in *In re Richardson 1997* of  the *enhanced* sanction pursuant to  the *Slosberg* 'rule' was accomplished by judicial legislation or presumption without a hearing upon *ex parte* evidence, which is not only a constitutional due process violation, but a statutory due process violation since D.C. Code §11-2503(b) requires that "a member of the [D.C.] bar *may not be ... suspended until written charges, under oath* against him have been presented to the court ... ." And this statute is mandatory.

62. It cannot be disputed that Richardson's law license constitutes property within the meaning of the 5th Amendment, requiring that notice and hearing be afforded *before* revocation by the DCCA.

---

[4] "In carrying out [D.C. Bar] rule [IX] ... Bar Counsel in matters under investigation may, subject to Superior Court Rule 45 ['**Subpoena** ... Every subpoena *shall be issued by the  Clerk under seal of the Court*...'] compel by subpoena ... the production of pertinent books, papers, documents, and other tangible objects ..." [Id., §18(a)].

Therefore, the DCCA's action in revoking Richardson's law license, temporarily and finally without notice and hearing in Richardson's case, violated his due process rights and the disciplinary orders and judgment are void being unconstitutionally rendered since the constitutional requirement of due process of law permeates every valid enactment of Congress.

63. Moreover, the DCCA's license revocation action based upon two D.C. Bar Rules, (a) D.C. Bar R. XI, §11(d)[5] allowing interim suspension without a pre- or prompt post suspension hearing and (b) D.C. Bar R. XI, §14(f)[6] and the cases which allow imposition by *ex parte* proof and judicial notice (i.e. judicial or executive legislation) of additional discipline for failure to comply with its registration requirement [Id.] are unconstitutional on their faces or as applied.

64. Therefore, the **district court cannot give 'full faith and credit' to the reciprocal disciplinary orders and judgments rendered in Richardson's situation by the DCCA** because they clearly violate the due process principle that an accused attorney is not to be deprived of his property interest in his license to practice law without *some* form of hearing *before* or *promptly after* the government acts on the deprivation.

---

[5] "*Temporary suspension and show cause order.*   Upon receipt of a certified copy of an order demonstrating that an attorney subject to the disciplinary jurisdiction of [the DCCA] has bee suspended or disbarred by a disciplining court outside the District of Columbia or by another court in the District of Columbia, the [DCCA] *shall forthwith enter an order suspending the attorney form he practice of law in the District of Columbia* pending final disposition of any reciprocal disciplinary proceeding, and directing the attorney to show cause within thirty days from the date of the order why identical discipline should not be imposed. ..." But see, D.C. Bar Rule XI, §3(c), "*Temporary suspension or probation.* (1) On petition of the Board [on Professional Responsibility] by its Chairperson or Vice Chairperson, support by an affidavit showing that an attorney appears to pose a substantial threat of serious harm to the public, the [DCCA] may issue an order, with such notice as the [DCCA] may prescribe, temporarily suspending the attorney or imposing temporary conditions of probation on the attorney, or both. ... An order of temporary suspension issued under this subsection shall preclude the attorney from accepting any new cases or other legal matters, but shall not preclude the attorney from continuing to represent existing clients during the thirty-day period after issuance of the order; ***"

[6]"*Required affidavit and registration statement.*   Within ten days after the effective date of an order of disbarment or suspension, the disbarred or suspended attorney shall file with the [DCCA] and the Board an affidavit [of compliance with the order of disbarment or suspension, listing jurisdictions or agencies admitted to practice, current address, and service upon Bar Counsel] *** .  The court may require the attorney to submit such proof as a condition precedent to the granting of any petition for reinstatement. ***"

65. The 8th Amendment of the U.S. Constitution prohibits penalties that are grossly disproportionate to the offense. Thus, an accused has the Federal constitutional right not to have cruel and unusual punishment imposed, i.e. a requirement of proportionality.

66. Again, no opportunity was accorded Richardson to contest the nature of the sanction, a 3-year suspension imposed upon him for the alleged misconduct of resigning the Florida Bar while under disciplinary investigation for charging an unreasonable fee *and* a 2-year, 10-month suspension for failing to file a registration statement required of suspended and disbarred attorneys. In other words, over five and ¾ years of license revocation, which has morphed into over 11-years and counting.

67. Richardson has been without his license to practice law for over 11-years (June 27, 1995 to date) for the misconduct (as enhanced) and such a period of suspension is an egregious sanction grossly disproportionate to the misconduct and violates plaintiff Richardson's 8th Amendment right.

## D. CONCLUSION AND RELIEF REQUESTED

68. That the district court declare that one or more of the foregoing grounds [i.e. newly discovered evidence of prosecutorial misconduct involving the obstruction of justice, concealment and nondisclosure of evidence, and fraud upon D.C. and Federal courts; a lack of exclusive limited disciplinary, civil and criminal contempt jurisdiction in the DCCA because of a denial of due process; and the denial of other due process and fair trial procedures (illegal search and seizure, and imposition of grossly disproportionate penalties) are legally sufficient to reopen and reinstate plaintiff Richardson's 1999 habeas corpus proceedings [*Richardson v. Courts Services and Offender Supervision Agency for D.C. and DCCA*, CA No. 99-0657 (Robertson, J.)];

69. That the district court declare that plaintiff Richardson is entitled to an evidentiary hearing on **the grounds for reinstatement of his habeas corpus petition** under U.S. Supreme Court precedent [*Townsend v. Sain*, US 372:293, *312-313*, S.Ct. 83:745, *757* (1963)] and U.S.C. §28:2554(d)(2) (1994) **and to determine if Richardson received a full, fair and adequate hearing before the DCCA in reciprocal disciplinary and contempt proceedings, both civil and criminal;**

70. And grant such further relief as the district court deems fair and just under the circumstances

- 21 -

## IV.  COUNT #2:  FEDERAL CIVIL RIGHTS AND RELATED CLAIMS

### A.  NATURE OF CLAIMS

71.  That the plaintiff restates the allegations contained in ¶¶ 8 to 67 of Count #1 and incorporate them by this reference herein.

72.  That by having engaged in the conduct described in the restated allegations, the defendants conspired among themselves and with person or persons unknown to deprive plaintiff Richardson of his due process rights and rights to equal protection of the law or of the equal privileges and immunities under law, all in violation of the Federal civil rights laws.

73.  That conspiracy resulted in injury to the plaintiff's right:

   a)  to be free from discrimination based upon his being a Christian Africanic person or a member of the D.C. Bar accused of foreign disciplinary misconduct instead of domestic disciplinary misconduct,

   b)  to enjoyment of his due process right to notice and opportunity to be heard during disciplinary investigations and prior to the deprivation of is license to practice law,

   c)  to be secure from unreasonable search and seizure by the D.C. bar officials of his bank records, and

   d)  not to suffer the imposition of a penalty grossly disproportionate to the misconduct expressly stated in the D.C. Bar Rules of Professional Conduct and proved according to the common law as to *all* elements of the offense(s) charged.

### A.  JURISDICTION

74.  That the jurisdiction of the district court lies in one or more of the following provisions of the United States Code, *viz*:  §28:1331 (Federal question), §28:1343(a) (3) and (a)(4) [deprivation of civil rights and equitable relief], §42:1985(2) (civil conspiracy), and §§28:2201 and 28:2202 (declaratory judgments).

### B.  STATEMENT OF CLAIMS

75.  That plaintiff Richardson's claims arise out of investigatory and adjudicatory activities by the DCCA through its agencies and/or employees of the defendants D.C. Bar Counsel's Office, Board, and

- 22 -

the D.C. Bar. They occurred in or arose out of reciprocal disciplinary, civil and criminal contempt matters, and involve illegal and wrongful conduct by the DCCA operatives in violation of Federal constitutional and civil rights laws, D.C. statutory, common, criminal, ethical laws, rules or regulations by the defendants and their co-conspirators. Events underlying these claims occurred between 1992 to date.

76.    Civil rights violations of a due process and equal protection nature arise out of the nondisclosure and concealment of illegal disciplinary investigations and procedures conducted by bar prosecutors and the Board.   Those investigations and procedures involved the denial of certain due process and equal protection rights mandated by statute and secured under various D.C. Bar rules to notice and right to respond by the plaintiff, an attorney subject to the limited, but exclusive, jurisdiction of the DCCA over the practice of law in the District of Columbia, when an investigation is commenced. And processed by bar prosecutors pursuant to Board and D.C. Bar Rules based upon allegations of an attorney's misconduct.

77. In plaintiff Richardson's situation, allegations of misconduct were made against him in 1992 by a claimant (a Florida attorney, Dr. David P. Rankin, Esq.) that he charged an unreasonable fee to a private trust settled and administered in Florida and otherwise breached his fiduciary duties as a trustee. These 1992 allegations were determined by defendant **Branda** not to constitute probable cause for opening ('docketing') a bar disciplinary investigation and was assigned a case ["BD"=Bar Docket] number closed without informing the Richardson that the allegations existed, i.e. *Richardson/Rankin*, BD No. 511-92.

78. However, between 1992 and 1994 defendant **Branda** continued to collect materials in support of the 1992 allegations *(Richardson/Rankin)* of this 'undocketed' complaint.   Then in 1994, defendant **Branda** commenced a 'docketed' investigation *(Richardson/Bar Counsel,* BD No. 180-94) based on the 1992 allegations *(Richardson/Rankin)* of Richardson's misconduct of charging an unreasonable fee. The 1994 'docketed' investigation *(Richardson/Bar Counsel)* was based *solely* upon a resignation order of the Florida Supreme Court granting Richardson's petition to resign the Florida Bar while disciplinary investigations were pending.

79. The Florida resignation proceedings arose out of the same allegations filed by the same complainant (Dr. Rankin) as those filed in the 1992 'undocketed' investigation *(Richardson/Rankin)* with the D.C. Office of Bar Counsel. In other words, both the Florida and D.C. disciplinary complaints of misconduct were based upon the same allegations and documentary evidence and submitted by the same complainant, Florida attorney Rankin, as a part of Atty. Rankin's fee refund collection litigation strategy.

80. Then, in cooperation with and after the approval of an unidentified member of the Board assigned to oversee the 'undocketed' investigation, i.e. its 'Contact Member,' merged the 1992 'undocketed' investigation *(Richardson/Rankin)* with a new 1994 'docketed' investigation *(Richardson/Bar Counsel)*, without notifying Richardson of this merger transaction either.

81. Thereafter, by a disciplinary letter of inquiry, Office of D.C. Bar Counsel by its prosecutor, defendant **Branda**, notified the plaintiff of the 1994 'docketed' investigation *(Richardson/Bar Counsel)* without disclosing any reference [a] to the 1992 'undocketed' investigation *(Richardson/Rankin)* and its merger with the 1994 'docketed' investigation *(Richardson/Bar Counsel)*, nor [b] to the existence of documents collected between 1992 and 1994 from Florida attorney Rankin.

82. In 1995 after receiving the plaintiff's reply to the notice of misconduct charges in the 1994 'disciplinary letter of inquiry' based *solely* upon the August 1992 Florida resignation order, the defendant **Office of D.C. Bar Counsel** by chief prosecutor and Bar Counsel at the time, defendant **Becker**, notified the defendant **DCCA** that Richardson had resigned the Florida Bar while being investigated for the misconduct of charging an unreasonable fee and should be temporarily suspended under the D.C. Bar Rules without notice or opportunity to be heard *prior to* interim suspension.

83. This action was taken by bar prosecutors without informing Richardson nor the DCCA of the 1992 'undocketed' investigation *(Richardson/Rankin)* and its merger into the 1994 'docketed investigation' *(Richardson/Bar Counsel)* and with full knowledge that the alleged unreasonableness of the fee charged by Richardson to the Florida private trust was unproven **and that resignation of a foreign bar membership while under disciplinary investigation in the foreign jurisdiction where there has**

been no finding or admission of misconduct on the part of the accused attorney (plaintiff in this instance), is not grounds of misconduct under the D.C. Bar Rules.

84. Under D.C. Bar Rules, in reciprocal disciplinary matters, interim suspension is effectuated through an *ex parte* judicial notice procedure without according an accused attorney notice or opportunity to be heard. This however, is not the case for domiciliary disciplinary matters, which are commenced by filing verified charges and the accused attorney is given an evidentiary hearing before revocation of the attorney license to practice law in non-emergency situations. Even in emergency situations, a domiciliary responding attorney retains certain proprietary rights in the attorney's license under an expedited hearing procedure.

85. Not until *February 2003* after the close of an evidentiary hearing before a hearing committee of the Board in Richardson's 2001 reinstatement proceedings did Richardson discover the existence of the 1992 'undocketed' investigation *(Richardson/Rankin)* and its merger with the 1994 'docketed' investigation *(Richardson/Bar Counsel)* that resulted in Richardson suffering interim suspensions in June 1995 and March 1996 and a final suspension in April 1997.

86. All three (3) suspensions were effectuated without notice and an evidentiary hearing as required by the due process clause of the 5th Amendment of the U.S. Constitution and D.C. Code provisions governing the regulation of the practice of law [§11-2503(b) (2001 ed.)], administrative procedures [§2-509 (2001 ed.)], and evidentiary procedures [§14-101(a) (2001 ed.)].

87. Discovery of the contents of records of the 1992-1994 'undocketed' investigation *(Richardson/Rankin)* and the bar prosecutors and Board member(s) involved have *never* been provided Richardson although demanded. **Nor has the defendant DCCA allowed an evidentiary hearing on the due process, equal protection, and other constitutional claims under the circumstances made by Richardson in any disciplinary, reinstatement, or other post-judgment (*coram nobis*) proceeding.**

88. In addition to the prosecutorial misconduct of a criminal, unethical and tortious (constitutional or local common law based) nature, involving the obstruction of justice that resulted from [a] the nondisclosure and concealment of the 1992-1994 'undocketed' investigation *(Richardson/Rankin)*

- 25 -

and [b] the denial of notice and an evidentiary hearing *prior to* the June 1995 and March 1996 interim and the April 1997 final suspension, the plaintiff suffered [c] the imposition of disproportionate suspension penalties and [d] was convicted of civil and criminal contempt based upon illegally seized bank records and subpoenas issued by bar prosecutors without prior judicial review.

89.  The disproportionate suspensions involved [a] a period of 1.83 [one and 83/100] years (June 1995 - April 1997=1 yr., 10 mos.) for noncompliance with a D.C. Bar Rule requiring a suspended attorney to file a registration statement, and [b] for resignation of the Florida Bar/unreasonable fee charge for a period of  seven plus (7+ years) (April 1997 to date and continuing). A total disciplinary sanction of eleven plus (11+) years and counting. The penalty for noncompliance was also effectuated without notice and opportunity to be heard.

90.  Because the June 1995 and March 1996 interim suspension orders and the April 1997 final order of suspension were rendered in violation of the plaintiff's due process and equal protection rights to notice and opportunity for an evidentiary hearing under [a] the due process clause of the 5th Amendment and [b] the D.C. statutes and rules governing bar disciplinary proceedings specifically,  [c] administrative forfeiture proceedings generally, and [d] evidentiary requirements in judicial and administrative proceedings, **those disciplinary orders and judgment cannot be given full faith and credit in these Federal court proceedings.**

91.  Denial of equal protection is predicated upon not only the unequal treatment that plaintiff Richardson received as an attorney accused of misconduct in a foreign jurisdiction *vis-à-vis* a similarly situated attorney accursed of misconduct in the District of Columbia, but also upon profiling and selective investigations involving defendants **Becker, Branda, DeSilva, Shiskevish, and Shipp** based upon the fact that plaintiff Richardson is an well-known Africanic person, a sole practitioner, and a openly devout Christian and the excessive penalties sought and obtained against plaintiff -- eleven plus (11+) years of law license suspension and probation for two years as a convicted criminal -- that non-Africanic persons, persons of other religious persuasions and in large law firms have never suffered for similar misconduct and with similar professional credentials and notoriety.

- 26 -

## C. CONCLUSION AND RELIEF REQUESTED

### (JURY DEMAND)

92.  That a trial by jury of twelve (12) persons on all issues of fact is hereby demanded.

### (DECLARATORY AND INJUNCTIVE RELIEF)

93.  That the following declarations be made by the district court:

(a)  That there exists a justiciable controversy between the plaintiff and defendants;

(b)  That judgment should be entered against the defendants, jointly or severally, individually or in their representative capacities as their liabilities may appear, for violation of plaintiff civil rights under the Constitution and laws of the United States as claimed above;

(c)  That certain cited D.C. statutes or Bar Rules, including, but limited to-- D.C. Code §11-2501 et seq. and D.C. Bar Rules XI, §§ 11(d), 14(f), and 18(a), whether legislatively or judicially determined, governing reciprocal disciplinary proceedings, subpoena of an accused bank records, and  enhancement of disciplinary suspensions for failure to register when suspended, be declared unconstitutional on their faces or as applied;

(d)  And for such further declarations as the court deems necessary and proper.

94.  That the following equitable and injunctive relief be granted:

(a)  Enjoin the DCCA from denying Richardson reinstatement as an active member of the D.C. Bar *unless* the DCCA provides an opportunity for Richardson to challenge the constitutionality of its June 1995 and March 1996 interim suspension orders and the April 1997 final suspension judgment on denial  due process or other fair trial procedures grounds; and

(b)  Enjoin the DCCA from enforcing any D.C. statutes, Bar or Board Rules, whether legislatively or judicially determined, governing reciprocal disciplinary proceedings, subpoena of an accused bank records, and  enhancement of disciplinary suspensions for failure to register when suspended; and

(c)  Enjoin any court or administrative agency elsewhere, whether State or Federal from giving full faith and credit to a DCCA  judgment or order *in re* plaintiff Richardson found to have been rendered in spite of the due process violations (denial of notice and hearing in reciprocal disciplinary matter, imposition of suspension enhancement without notice or hearing), 4th Amendment unreasonable search and seizure prohibition (nonconsensual exchange of information between D.C. Bar Counsel and any other administrative division of the DCCA, its Board and the D.C. Bar), and the 8th Amendment requirement of proportional sanctions.

## *(COMPENSATORY AND PUNATIVE DAMAGES)*

95. Award plaintiff special, exemplary, or punitive damages and payment of attorney's fees and litigation costs to the fullest extent allowed by law.

## V. VERIFICATION AND EXECUTION

96. **This certifies under penalty of law that the foregoing facts are true to the best of the undersigned complainant's (T. Carlton Richardson) knowledge, information and belief. Respectfully submitted on this 28th day of September 2006.**

*[signature]*

**T. CARLTON RICHARDSON**
**Plaintiff** *Pro Se*
**1505 Pennsylvania Avenue, SE**
**Washington, DC 20003-3117**
**202/546-3505**

| SCHEDULE OF APPENDIX | |
|---|---|
| **A** | Memorandum order dismissing petition (July 11, 2001, Robertson, J.) |
| **B** | Memorandum order denying motion to reconsider dismissal (July 31, 2001, Robertson, J.) |