# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**RECEIVED**

JAN 1 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

T. CARLTON RICHARDSON,      )

        Plaintiff.      )

vs.      )      No. **06CV01665  [RJL]**

DISTRICT OF COLUMBIA, *et al.*    )

        Defendants.    )

---

## PLAINTIFF'S OPPOSITION TO DISMISSAL MOTION OF D.C. COURT OF APPEALS AND DISTRICT OF COLUMBIA

### INDEX

1. PREFACE--[2]
2. SUFFICIENT SERVICE UPON DISTRICT OF COLUMBIA--[2]
3. SUMMARY OF OPPOSITION--[3]
4. *ROOKER-FELDMAN* DOCTRINE INAPPLICABLE--[5]
    4.1 OVERVIEW OF DOCTRINE--[5]
    4.2 PREREQUISITES--A VALID JUDGMENT/FULL FAITH AND CREDIT--[6]
        *(a) Law Statement--[6]*
        *(b) Case Application--[6]*
    4.3 EXCEPTIONS TO DOCTRINE--[7]
        *(a) Law Statement--[7]*
        *(b) Case Application--[11]*
5. *RES JUDICATA* INAPPLICABLE--[18]
    5.1 INTRODUCTION--[18]
    5.2 INAPPLICABILITY OF DOCTRINE--[20]
        (a) BAR BY ESTOPPEL--[20]
        (b) BAR BY ADJUDICATORY PROCESS--[22]
        (c) LACK OF CLAIMS ADJUDICATION--[23]
6. CONCLUSION AND RELIEF REQUESTED--[27]
    ● *Verification--[28]*
CERTIFICATE OF SERVICE--[28]

## PLAINTIFF'S OPPOSITION TO DISMISSAL MOTION OF D.C. COURT OF APPEALS AND DISTRICT OF COLUMBIA[1]

### 1. PREFACE

In this opposition to defendants D.C. Court of Appeals' (DCCA) motion to dismiss individually and 'as agent of' its principal the District of Columbia [*DCCA's Motion to Dismiss 1n.1*], the plaintiff Richardson incorporates by reference the relevant portions of plaintiff's opposition to the motion to dismiss filed by the DCCA's present and former employees (defendants D.C. Board on Professional Responsibility, Becker, Branda, Kello, Shipp, and Shishkevish). DCCA's 4-point grounds for dismissal are summarized as follows, that

> (1) the plaintiff failed to properly serve the District of Columbia in accordance with Fed. R. Civ: P. 40 since service of process on the District not properly made upon the Mayor and the Attorney General [*Motion to Dismiss 1.n1*];
> (2) the plaintiff's claims are barred under the doctrine of *res judicata*;
> (3) that plaintiff is precluded from filing successive habeas petitions; and (4) the district court lacks subject matter jurisdiction and the DCCA is immune from suit under the *Rooker-Feldman*[2] doctrine because the court is called upon to review a DCCA court decision arising out of "judicial" proceedings to discipline its bar members [*Id., 1*].

### 2. SUFFICIENT SERVICE UPON DISTRICT OF COLUMBIA

Defendants concede that the D.C. Major and "the [DCCA] … appears to have been properly served." However, "[1] service of process on the District [of Columbia] has been improper to date because Plaintiff *has not served* the Major **and***  *the Attorney General*" since the [2] "person identified as accepting service for the [D.C.] Attorney General *is not authorized to accept service* for the Attorney General" [*Id., 1n.1*]. Whether the signatory on the return receipt "is not authorized to accept service for the Attorney General" is a jurisdictional fact question that cannot be decided by judicial notice but requires an evidentiary hearing because 'matters outside the record' are being considered [Evid. R.

---

[1] *Emphasis* supplied and citations are to F.R.Civ.P. unless otherwise stated.
[2] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303 (1983) [The *Rooker-Feldman* doctrine embodies the principles that lower federal courts lack subject matter jurisdiction to engage in appellate review of state court determinations or to evaluate constitutional claims that are "*inextricably intertwined*" with the state court's (decision) in a *judicial* proceedings."]
* Emphasis in original.

201(e); Civ. R. 12(b)(6); *Garner v. Louisiana*, 368 U.S. 157, 82 S.Ct. 248 (1961)]. Thus, dismissal of the District of Columbia on grounds of insufficient service of process would be improper and premature.

### 3. SUMMARY OF OPPOSITION

None of plaintiff's claims were at issue or adjudicated in Richardson's bar disciplinary proceedings (1995-1997 license revocation or 1997-1998 civil/criminal contempt) nor collateral federal actions. Neither *res judicata* nor the *Rooker-Feldman* doctrine are applicable because none of the claims were ever before the D.C. Court of Appeals in its disciplinary proceedings, which are limited in scope and could not decide federal civil rights or common law/constitutional tort claims, or a federal court over the decade and one-half of litigation because the existence of some claims were concealed from the plaintiff due to prosecutorial misconduct, obstruction of justice and nondisclosure of evidence and all the federal courts' decisions were based upon a lack of jurisdiction and decided by judicial notice without according the plaintiff an evidentiary hearing on any jurisdictional issue adjudicated.

Plaintiff's claims in Count #1 (reinstatement of his dismissed habeas corpus petition under Civ. R. 60(b) and writ of *coram nobis* principles because of prosecutorial misconduct, obstruction of justice, nondisclosure of evidence) and Count #2 (eclectic civil rights violations) are based upon unconstitutional, illegal, tortious, criminal and unethical actions taken by the judicial and nonjudicial defendants in [1] investigating, prosecuting and convicting him of professional misconduct in D.C. Bar reciprocal disciplinary proceedings (August 1992--April 1997) and post-reciprocal disciplinary activities (April 1997--to date) in or related to the [2] investigation, prosecution and conviction of plaintiff Richardson for civil and criminal contempt, and the [3] prosecution and recent denial of plaintiff's reinstatement petition.[3]

---

[3] The D. C. Court of Appeals (DCCA) rendered a *per curiam* opinion denying Richardson's application for reinstatement in default proceedings [*In re Richardson*, No. 04-BG-919, 874 A.2d 361 (D.C., 2005), *reh'g den.*]. The DCCA struck Richardson's exceptions to the report and recommendation of its Board on Professional Responsibility because it was inadvertently filed one day late, having previously denied

As to the application of the *Rooker-Feldman* doctrine Count #1, (1) the reciprocal disciplinary decisions [two interim suspension orders in June 1995[4] and March 1996[5] and the final judgment of suspension in April 1997[6]] are void having been rendered without jurisdiction and in violation of plaintiff's due process and equal protection rights and were procured under fraudulent and conspiratorial circumstances [specifically prosecutorial and administrative adjudicatorial misconduct involving the obstruction of justice and the nondisclosure of material evidence], thus the doctrine's '*quasi-jurisdictional*' prerequisites[7] are unsatisfied. Moreover, (2) the common law and constitutional torts claimed under Count #1 and #2 are excepted under at least four categories, *viz*: no full and fair hearing, factual predicates that are post-judgment, independent existence 'apart from' the D.C. decisions, and/or arises from tortious *non*judicial functions. Plaintiff asks for denial of this motion to dismiss since neither the principles of res judicata nor those underlying *Rooker-Feldman* are applicable.

---

Richardson's request for a hearing on his constitutional claims and right to discovery of undisclosed 1992 bar disciplinary investigation records in *Richardson/Rankin* BD No. 511-2 whose existence was discovered during the three year (2001-2004) reinstatement proceedings. This reinstatement opinion was rendered in violation of Richardson's due process rights as mandated by the U.S. Supreme Court in *Hovey v. Elliott*,167 U.S. 409, 17 S.Ct. 841 (1897) ['the *Hovey* doctrine' sets forth the general proposition that due process is violated where a court punishes a party by denying the party all right to defend an action and by rendering a decree against such party without any hearing on the merits] as applied in *Duell v. Duell* 178 F.2d 683, 85 App. D.C. 78 (1949) and *Deauville Assoc. Inc. v. Eristavi-Tchitcherine*, 173 F.2d 745 (5th Cir., 1949) prohibiting a court from striking the responsive pleading of a respondent as punishment for noncompliance with a court's order without an express finding of 'bad faith' or 'interference with the administration of justice.' This is merely another aspect of the overall judicial maladministration of justice in his reciprocal disciplinary proceedings (reinstatement proceedings are just a continuation of those proceedings), which shows a continuation of a pattern of conspiratorial conduct to wrongfully and vindictively deny Richardson his license to practice law as a punishment, not for unprofessional conduct or a lack of professional fitness, but because Richardson has not relented in his claims of a right to evidentiary hearings in his reciprocal disciplinary proceedings on his constitutional challenges [*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.C. 2515 (1982) (an attorney must be given an adequate opportunity to raise constitutional claims in disciplinary proceedings)] and of prosecutorial misconduct (obstruction of justice and nondisclosure of material evidence).

[4] Order of interim suspension #1 (06/27/95), *Richardson 1997 (infra)*

[5] Order of interim suspension #2 (03/12/96), *Richardson 1997 (infra)*

[6] *In re Richardson*, 692 A.2d 427 (D.C., 1997)

[7] "Quasi-jurisdictional facts are those which *must be alleged and proved to set the judicial machinery in action* ... . These facts *do not* go to the subject matter of jurisdiction, but to *a preliminary fact necessary to be proven to authorize the court to act*" [*Noble v. Union River Logging R.R.*, 147 U.S. 165, *174*, 13 S.Ct. 271, *274* (1893); *Lubben v. Selective Service System, Local Bd. #27*, 453 F.2d 645, 649 n.14 (1st Cir., 1972) (Internal quotes omitted)].

## 4. *ROOKER-FELDMAN* DOCTRINE INAPPLICABLE

### 4.1  OVERVIEW OF DOCTRINE

What is now known as the *Rooker-Feldman* doctrine was first announced in *Rooker 1923*

reaffirmed 60-yrs latter in *Feldman 1983*. The doctrine holds that among federal courts, only the U.S.

Supreme Court has subject matter jurisdiction to review State court (including D.C. courts) judgments. It

is premised on the grounds of forging the integration of two coterminous judicial systems-- one federal

and one State --, as well as on the statutory grounds that U.S.C. §28:1257 gives the Supreme Court

exclusive federal jurisdiction to review State court judgments (including non-final orders), while U.S.C.

§§28:1331 and 1334 gives federal district courts original, but not appellate jurisdiction. *Rooker-Feldman*

not only applies to claims that were 'actually raised' before the State court, but also to claims that are

"inextricably intertwined" with State court determinations [*Feldman,* U.S. 460:482 n.16, S.Ct. 103:1303].

Justice Marshall, concurring in the *Pennzoil II (infra)* judgment, defined what is meant by

"inextricably intertwined" when considering a plaintiff's constitutional claims under the *Rooker-Feldman*

doctrine as follows:

> While the question of whether a federal constitutional challenge is *inextricably intertwined* with the merits of the state-court judgment may sometime be difficult to answer, it is apparent as a *first step,* that the federal claim is inextricably intertwined with the state-court judgment if the *federal claim succeeds only to the extent that the state court **wrongly decided** the **issues before it**.* Where federal relief can *only be predicated upon a conviction that the state court was wrong,* it is difficult to conceive the federal proceeding as, in substance, anything other than *a prohibited appeal of the state-court judgment. Pennzoil, Inc. v. Texaco, Inc.,* 481 U.S. 1, *25,* 107 S.Ct. 1519, *1533* (1987) [*Pennzoil II*].

"'Inextricably intertwined' means, at minimum, that where a federal plaintiff had *an opportunity to*

*litigate a claim in a state proceeding* ..., subsequent litigation of the claim will be barred under the

*Rooker-Feldman* doctrine if it would be barred under the principles of preclusion" [*Moccio v. N.Y. State*

*Ofc. of Court Admin.,* 95 F.3d 195, *199-200* (2nd Cir., 1996)]. ].

As a judicially made limitation on the power of the lower federal court,[8] the doctrine is construed narrowly [*Parkview Assocs. v. City of Lebanon*, 225 F.3d 321 (3rd Cir., 2000)]. Appellate review of the applicability of *Rooker-Feldman* to the claims of a federal litigant is *de novo* or plenary [*Moccio:185; Manley v. City of Chicago*, 236 F.3d 392 (7th Cir., 2001)]

## 4.2   PREREQUISITES–A VALID JUDGMENT/FULL FAITH AND CREDIT

*(a)   Law Statement.* A plain reading of *Rooker* reveals that the jurisdictional factual predicate (i.e. "that judgment was rendered in a cause") for application of the doctrine were twofold: (1) that "the [State] court *had jurisdiction of both* the *subject-matter* and the *parties*;" and (2) "that a *full hearing* was had" (Id., U.S. 263:415, S.Ct. 44:150). It was also held by the *Rooker* court that State courts are obligated to adjudicate the constitutional issues if presented: "If the constitutional questions ... *actually arose* in the cause, it was the *province and duty of state courts to decide them*" (Id.). By "province and duty", the *Rooker* court meant that it was the legal obligation of the State court to perform the function to 'decide constitutional questions' that are "actually" presented in a case. It is mandatory, therefore, that the State court entertains the constitutional challenges for the judgment to be given jurisdictional immunity under the *Rooker-Feldman* doctrine.

In other words, a valid State court judgment must be presented to the federal court, a judgment in which the State court has jurisdiction of the person *and* subject matter and a judgment that satisfies the essentials of due process, notice and hearing. Moreover, any grounds, such as fraud in the procurement of a judgment, that would void or invalidate the judgment in State courts also would also void or invalidate that judgment in the federal courts. Thus, preliminarily, if the federal courts cannot give full faith and credit to the State court judgment, jurisdictional immunity under *Rooker-Feldman* does not attach.

Therefore, the *first step* for analysis of a federal plaintiff's claims where the *Rooker-Feldman* doctrine may be implicated is **to determine whether the State court's decision is void or invalid, that is, can the judgment receive 'full faith and credit' [U.S.C. §28:1738] in the federal court regardless of whether or not *Rooker-Feldman* provides a jurisdictional immunity.** It is well settled and

---

[8] *Hachamovitch v. De Buono,* 159 F.3d 687, *696* (2nd Cir., 1998)

fundamental to the exercise of federal jurisdiction that a State court judgment or decision rendered without jurisdiction (personal or subject matter) or in violation of due process (notice and hearing) is void *ab initio* and cannot be given full faith and credit.[9] Likewise, a judgment that is void in a State due to fraud upon procurement or some other irregularity that would invalidate the judgment *ab initio*[10] would prevent the federal court from giving 'full faith and credit' to the State decision in order to determine if *Rooker-Feldman* would be a jurisdictional bar to consideration of a federal plaintiff's claims that have nexus to the State court's decision.

   *(b)   Case Application.* Defendant DCCA proceeds upon the false assumption that for purposes of according 'full faith and credit,' all decisions of the DCCA and federal courts in which the parties have been involved in the past are absolutely (as opposed to presumptively) valid. They are not! It is a "fundamental premise that (a respondent) should not be denied the right to object to the very jurisdictional exercise that causes the injury" [*U.S. Catholic Conference v. Abortion Rights Mobilization*, 487 U.S. 72, 78, 108 S.Ct.2268, 2271 (1988)]. Richardson has consistently argued that the D.C. reciprocal disciplinary decisions, both interim and final, where rendered in violation of his constitutional rights of due process and equal protection,[11] that the DCCA lacked jurisdiction having failed to satisfy the statutory

---

[9] *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, *415,* 44 S.Ct. 149, *150* (1923); *Johnson v. Zerbst,* 304 U.S. 458, *467-468,* 58 S.Ct. 1019, *1024-1025* (1938) [A court has no authority to deprive a person of life, liberty or property without complying with constitutional mandates for due process and fair trial procedures since they are essential jurisdictional prerequisites and noncompliance voids any judgment rendered.]; *Bass v. Hoagland,* 172 F.2d 205, *209* (5th Cir., 1949) [A judgment whether in a civil or criminal case reached without due process is without jurisdiction and void; "the United States is forbidden by the fundamental law to take either life, liberty or property without due process of law, and its courts are included in this prohibition"]; *In re Four Seasons Securities Law Litigation,* 502 F.2d 834, *842* (10th Cir., 1974) [A judgment is void if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process.]; *In re James,* 940 F.2d 46, *52-53* (3rd Cir., 1991) [While federal courts lack jurisdiction to review or reverse a State court judgment on the merits, they do have the power to vacate State court judgments that are considered void *ab initio* or a legal nullity]; *WorldWide Volkswagen Corp. v. Woodson,* 444 U.S., 286, *291,* 100 S.Ct. 559, *564* (1980) [a judgment rendered in violation of due process of law is void in the rendering jurisdiction and cannot be accorded full faith and credit elsewhere].
[10] *Chambers v. NASCO, Inc.,* 501 U.S. 32, *44,* 111 S.Ct. 2123 (1991) [A court has inherent power to vacate its own judgment on proof that fraud has been perpetrated on the court.]
[11] *Richardson 1997,* 429 ["On June 27, 1995 (the D.C. Court of Appeals) ordered Richardson's temporary suspension, *without hearing,* pending final disposition of the proceeding."] It is undisputed that Richardson never was given notice or an evidentiary hearing in the reciprocal disciplinary proceedings.

prerequisites for the exercise of its exclusive jurisdiction -- legislative, executive, and judicial -- to regulate the practice of law in the District of Columbia,[12] and that the reciprocal disciplinary decisions were procured based upon fraudulent representations and conspiratorial activities of bar prosecutors (prosecutorial misconduct) and hearing officials through the obstruction of justice and nondisclosure of evidence. Therefore, this district court must at the outset determine if the court can give 'full faith and credit' to the D.C. reciprocal disciplinary judgments before the court can determine if *Rooker-Feldman* applies, and if so, whether there are exceptions to the doctrine. Such a jurisdictional determination is fact intensive and cannot be adjudicated on a motion to dismiss without according the plaintiff an evidentiary hearing. Consequently, the defendant's motion to dismiss should be denied.

Moreover, application of *Rooker-Feldman* doctrine (assuming, of course that 'full faith and credit' can be accorded the judgment) requires that the district court [1] assess each of plaintiff's claims to determine whether the claim issue was before the DCCA or any of the federal district courts and if so, [2] did the plaintiff receive a full and fair adjudication of the claim. If these two conditions are met, then the district court [3] must determine whether any exception to the doctrine applies. Such an assessment of plaintiff's claims would be impossible without according an evidentiary hearing, which is not within the providence of a motion to dismiss.   For a pleader under federal 'notice pleading' procedures is not "required to convince the court *in their pleadings*\* that their view of the record is most persuasive" [*Marshall County Health Care Authority v. Shalala*, 988 F.2d 1221, *1228-1229* (D.C. Cir., 1993)]. Denial of defendant DCCA's motion to dismiss is therefore appropriate.

---

While disciplinary proceedings that are domestic, i.e. originate in the D.C. disciplinary system as opposed to being based upon a foreign disciplinary order, an accused attorney received an evidentiary hearing before or in emergencies where an attorney's license is revoked prior to a hearing, within 30-days of the interim revocation.   However, in reciprocal disciplinary proceedings, an accused attorney, as did Richardson, has his licensed revoked without notice and is not given an evidentiary hearing. Such disparate treatment between domestic and foreign or reciprocal disciplinary proceedings violates due process.

[12] D.C. Code §§ 11-2503(b) (governing prerequisites for exercise of disciplinary jurisdiction), §2-501(8) [governing right to a evidentiary hearing in "contested cases" before governmental agencies], and 14-101(a) [requiring all evidence be proved under oath],

### 4.3   EXCEPTIONS TO DOCTRINE

*(a)  Law Statement.*   Of course, *Rooker-Feldman's* jurisdictional immunity does not come to play if the State [=DCCA] court judgment is void *ab initio* because it was [1] rendered without subject matter or personal jurisdiction,  [2] in violation of the due process (whose essential elements are notice and opportunity to be heard), or [3] under any other condition that voids, vitiates or invalidates  the State court decision, such as fraud in procurement.  All three of these circumstances can be discerned from the Richardson's Complaint, thus the district court is prevented from giving 'full faith and credit' to the D.C. reciprocal disciplinary and federal district court decisions in the first instance.  Now we proceed to the *second step* of analysis: assuming *arguendo* that the district court can give 'full faith and credit' to the D.C. reciprocal disciplinary and federal district court decisions, can any of the recognized exceptions to *Rooker-Feldman* be applied.

There are at least six (6) generally recognized exceptions to the application of the *Rooker-Feldman* doctrine to jurisdictionally immunize a State court decision from review by a district court. They are: FIRST,  there was no personal jurisdiction of the federal plaintiff in the prior State adjudication, whether administrative or judicial, i.e. the federal plaintiff was not a party of the adjudicatory proceedings;[13] SECOND,  the jurisdiction of the State adjudication, whether administrative or judicial is one of limited subject-matter, i.e. the federal plaintiff could not receive a full and fair haring because the State adjudicative agency (administrative or judicial) performs specialized functions such in domestic matters, review of administrative agency decisions, bar disciplinary and regulatory matters, and the like and therefore could not resolve the federal claims, e.g. civil rights actions under U.S.C. §42:1983 and other federal statutory or constitutional based tort claims.[14]

---

[13] *Valenti v. Mitchell,* 962 F.2d 288, *297* (3rd Cir., 1992)

[14] *King v. State Educ. Dept,* 182 F.3rd 162, *163* (2nd Cir., 1999) [*Rooker-Feldman* does not bar suit where State action was trial in a court of limited jurisdiction that could not decide claims arising under federal law]; *Hachamovitch v. Debuono,* 159 F.3d 687 (2nd Cir., 1998)  [Preclusion does not apply in a  U.S.C. §42:1983 action where the prior action was brought in a court of limited jurisdiction where claim could not be entertained].

presented for adjudication, or where the federal plaintiff should have presented the claims for adjudication, or where the claims did not exist at the time of the adjudication;[15] FOURTH, there exist a jurisdictional basis independent of the original jurisdiction of the federal courts, i.e. the federal plaintiff's claims constitutes a separate and independent cause of action 'apart from' the State adjudication.[16]

---

[15] In addition to the *Rooker* case itself, other authorities include: *Stanton v. D.C. Court of Appeals*, 127 F.3d 72 (D.C. Cir., 1991) [Federal due process claims were not considered on the merits by the State court and therefore not barred by *Rooker-Feldman*]. It should be noted that the difference between Richardson's claims and Dr. Stanton's is that Stanton was a domestic disciplinary proceedings and he had a *full evidentiary hearing* on the merits of his discipline and his was not suspended until after those disciplinary proceedings were complete; while Richardson did not have a evidentiary hearing prior to revocation of his license or at anytime before final revocation of his license to practice law under the established reciprocal disciplinary bar rules; *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir., 1995) [Prosecutorial and adjudicatory misconduct and conspiratorial conduct have independent bases as civil rights action (U.S.C. §42:1983) and is not barred by *Rooker-Feldman*]; *Moccio v. N.Y. State Ofc. Of Court Admin.*, 95 F.3d 195, *199* (2nd Cir., 1996) [Where claims were never presented in the State court proceedings and the plaintiff had no opportunity to present the claims in those proceedings, the claims are not "inextricably intertwined" and therefore excepted from the operation of the *Rooker-Feldman* doctrine; *Wood v. Orange County*, 715 F.2d 1543, *1547* (11th Cir., 1983) *cert. den.* 467 U.S. 1210, 104 S.Ct. 2398 (1984) [Due process exception]; *Biddulph v. Mortham*, 89 F.3d 1491, *1495.1* (11th Cir., 1996) [Applying "exception to *Rooker-Feldman* doctrine when the plaintiff has no 'reasonable opportunity to raise his federal claim in state proceedings'"]; *Catz v. Chalker*, 142 F.3d 279, *293-295* (6th Cir., 1998) [Allowing plaintiff's due process claims holding that such claims were not "inextricably intertwined" with the State court judgment because due process claims "d[o] not implicate the merits of the ... decree, only the *procedures* leading up to it" and therefore "relief for ... due process claim[s] would not consist of a conflicting judgment on the merits" (Id. 294)]; *Lewis v. East Feliciana Parish Sch. Bd..*, 820 F.2d 143, *146* (5th Cir., 1987) [Due process challenge to state proceedings not barred by *Rooker-Feldman* doctrine because "judgment did not reach the issues presented before" district court]; *Parkview Asso. Partnership v. City of Lebanon*, 225 F.3d 321, *324-325* (3rd Cir., 2000) [Plaintiff's claims were not "actually litigated by the state court" therefore, *Rooker-Feldman* doctrine does not bar those claims because they were not "inextricably intertwined" with adjudication by the state court]; *Lawlor v. Nat'l Screen Svc. Corp.*, 349 U.S. 322, 75 S.Ct. 865 (1955) [Nonexistent claims are not barred by preclusion since they could not be made subject of a prior action.]

[16] *Stanton* [Federal claims due process claims were independent of disciplinary decisions and therefore not barred by *Rooker-Feldman*]; *Lawrence v. Cohn*, 932 F.Supp. 564 (S.D.N.Y., 1996) [Fraudulent misrepresentation is an independent action]; *Manley v. City of Chicago*, 236 F.3d 392 (7th Cir., 2001) [Fraudulent conduct and concealment of evidence are independent civil rights claims under U.S.C. §42:1983]; *Sun Valley Foods Co. v. Detroit Marine Terminals, Inc.*, 801 F.2d 186, *188-189* (6th Cir., 1986) [while a "district court has no authority to review final judgments of a state court in judicial proceedings ..., (a) federal court 'may entertain a collateral attack on a state court judgment which is alleged to have been procured through *fraud, deception*, accident, or mistake'" (Id., 189)]; *Texaco Inc. v. Pennzoil, Inc*, 784 F.2d 1133, 1137, *1141-1147* (2nd Cir., 1986) ; (*Pennzoil I*) [*Rooker-Feldman* does not bar a federal court form exercising jurisdiction over claims that certain state provisions deny plaintiff due process and equal protection as applied] and *Pennzoil, Inc. v. Texaco, Inc.*, 481 U.S. 1, *18-19, 21, 28-29, 31 n.3*, 107 S.Ct. 1519, *1529, 1531, 1534-35, 1536 n.3* (1987) (*Pennzoil II*) [While the Supreme Court did not specifically rule on the 2nd Circuit Court of Appeals *Rooker-Feldman* holding, it was supported by six (6) concurrences (Justices Scalia, O'Conner, Brennan, Marshall, Blackmun, and Sevens) and a

FIFTH, a State court is performing a purely nonjudicial function itself or through third party agents, i.e. where the State court enacts rules of ethical conduct and discipline for attorneys or administers those rules of conduct and discipline through third party agents (individuals or institutions), e.g. where a State court investigates and prosecutes violation of its professional regulations governing the practice of law;[17] SIXTH, a federal litigant seeks prospective injunctive relief against a State adjudicative agency (administrative or judicial).[18]

    *(b)*   *Case Application.* There are exceptions to *Rooker-Feldman.* They include: (1) As to Richardson's 4th Amd. search and seizure claim (i.e. illegally issued subpoenas and illegally seized bank records), that claim or any other similar constitutional claim "would be actionable

---

majority of the Justices 'rejected Pennzoil's argument that the rationale of *Rooker-Feldman* properly understood, denied the lower federal courts any authority to displace state courts']; *Carey v. Piphus,* 435 U.S. 247, *266,* 98 S.Ct. 1042, *1053* (1978) [Whether the deprivation (e.g. license revocation) was itself erroneous is irrelevant in determining whether a due process violation has occurred, for it is the violation of the due process/fair trial procedures rights that is actionable not the deprivation of the property interest. Claims of due process of law violations therefore can exist whether or not the deprivation is wrong or right. It is to assure the fairness of the adjudicatory process that the right of action is predicated upon, not the correctness of the result.]; *Resolute Ins. Co. v. State of No.Carolina,* 397 F.2d 586, *589* (4th Cir., 1968) [State court judgments obtained by "*fraud, deception,* accident, or mistake" are excepted from *Rooker* doctrine]; *Centres, Inc. v. Town of Bookfield, Wis.,* 148 F.3d 699, *701-703* (7th Cir., 1998) [In civil rights action (U.S. Code §42:1983) the injury alleged by plaintiff, i.e. that a local zoning board decision denying a permit violated due process rights, did not result from the state court judgment itself, but was distinct from that judgment; therefore *Rooker-Feldman* inapplicable]; *Amsden v. Moran,* 904 F.2d 748, *753-754* (1st Cir., 1990) [Summarizing the due process jurisprudence in civil rights actions involving revocation of a professional license.]; *Layne v. Campbell County Dept. of Social Svcs.,* 939 F.2d 217 (4th Cir., 1991) [Civil rights action exists for denial of due process in State employee administrative grievance proceedings.]; *O'Reilly v. Bd. of Appeals for Montgomery County, Md.,* 942 F.2d 281 (4th Cir., 1991) [Civil rights action for denial of taxi license, *held* Board violated licensee's rights under privileges and immunities clause.]; *Johnson v. Supreme Court of Illinois,* 165 F.3d 1140, *1142* (7th Cir., 1999) [4th Amd. search and seizure claim or any other similar constitutional claim "would be actionable *apart from*" the State court disciplinary proceedings].
[17] *Lopez v. Vanderwater,* 620 F.2d 1129 (7th Cir., 1980) citing *Stump v. Sparkman,* 435 U.S. 347, *357,* 98 S.Ct. 1099, *1105* (1978); *Schware v. Bd. of Bar Examiners, New Mexico,* 353 U.S. 232, *248,* 77 S.Ct. 752, *761* (1957); *Feldman,* 460 U.S. at 486, 203 S.Ct. at 1316-1317; *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970 (1984) [Federal district court has subject-matter jurisdiction in civil rights action by a suspended attorney who had been denied reinstatement against judicial regulators alleging various constitutional defects in procedural rules under which the judicial regulators considers petitions for reinstatement of suspended attorneys]; *Freidman v. Supreme Court of Virginia,* 822 F.2d 423 (4th Cir., 1987) [Civil rights action by attorney to invalidate bar rule, *held* bar rule violated privileges and immunities clause].
[18] *Stanton; Pulliam,* U.S. 466:541-541, 104 S.Ct. 104:1980-1981; *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151 (1972); *Centifanti.*

- 11 -

*apart from"* the DCCA disciplinary proceeding and thus excepted from the operation; (2) Allegations underlying the plaintiff's 8th Amendment claim of disparate treatment are grounded in three separate and distinct federal rights: (a) a civil rights claim based upon racial *and* sexual [plaintiff is an Africanic male] discrimination with *religious* [plaintiff is a devout Christian] overtones; (b) a suspension that is disproportionate in direct violation of the 8[th] Amd., and (c) enhancement of a period of suspension without notice or opportunity to be heard. Such claims are 'independent' constitutional torts or civil rights actions unrelated to and not caused by the suspension *judgment* itself, for it is impossible for the 'judgment' to violate the plaintiff's civil rights, impose suspension beyond the period stated on its face, or to be vindictive. Moreover, these claims were not in existence at the time of the entry of the judgment [*Lewis*].

(3) Furthermore, plaintiff clearly makes claims under the due process exception to the *Rooker-Feldman* doctrine [*Long v. Shorebank Dev. Corp.*, 182 F.3d 548, *558* (7th Cir., 1999)] since

> an issue cannot be inextricably intertwined with a state court judgment if the *plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings.* Absent such an opportunity, it is impossible to conclude that the issue was inextricably intertwined with the state court judgment. This limitation on the applicability of *Rooker-Feldman* was first set forth in *Wood v. Orange County*, 715 F.2d 1543, *1547* (11th Cir., 1983)

Accord: *Lynk v. LaPorte Superior Court*, 789 F.2d 554 (7th Cir., 1986); *Biddulph v. Mortham*, 89 F.3d 1491, *1495 n. 1* (11th Cir., 1996) [Applying "exception to *Rooker-Feldman* doctrine when the plaintiff has no 'reasonable opportunity to raise his federal claim in state proceedings'"]

> Where the plaintiff has had *no such opportunity, he cannot fairly be said to have "failed" to raise the issue.* Moreover, an issue that a plaintiff had no opportunity to raise *cannot properly be regarded as a part of the state case.* ... Such a harsh rule might deprive the plaintiff from any forum, state or federal, where he has a reasonable opportunity to present his federal constitutional claims*, a result arguably contrary to the requirements of due process [Wood, 1547].*

Due process claims are not "inextricably intertwined" *per se* with a State court judgment because due process claims "d[o] not implicate the merits of the ... decree, only the *procedures* leading up to it" and

therefore "relief for ... due process claim[s] *would not consist of a conflicting judgment on the merits*" [*Catz v. Chalker,* 142 F.3d 279, *293-295* (6th Cir., 1998)].

Such a due process claim exists as to the DCCA bar proceedings whether the DCCA's actions in suspending him some twelve (12) years ago in 1995 without notice or hearing was right or wrong. Whether the deprivation (e.g. license revocation) was itself erroneous is irrelevant in determining whether a due process violation has occurred, for it is the violation of the due process/fair trial procedures rights *per se* that is actionable not the deprivation of the property interest, in this instance Richardson's license to practice law [*Carey v. Piphus,* 435 U.S. 247, *266,* 98 S.Ct. 1042, *1053* (1978)].   Claims of due process of law violations therefore can exist whether or not the deprivation of his property interest or law license is wrong or right [Id.].   It is to assure the fairness of the adjudicatory process that the right of action is predicated upon, not the correctness of the *result!*

In *Texaco Inc. v. Pennzoil, Inc,* 784 F.2d 1133, 1137, *1141-1147* (2nd Cir., 1986), the appellate court held that *Rooker-Feldman* does not bar a federal court from exercising jurisdiction over claims that certain state provisions deny plaintiff due process and equal protection *as applied.*   While the U.S. Supreme Court did not specifically rule on the 2nd Circuit Court of Appeals' *Rooker-Feldman* holding, it was supported by six (6) concurrences (Justices Scalia, O'Conner, Brennan, Marshall, Blackmun, and Sevens) and  a majority of the Justices '*rejected* Pennzoil's argument that the rationale of *Rooker-Feldman* properly understood, denied the lower federal courts *any authority to displace state courts'* [*Pennzoil, Inc. v. Texaco, Inc.,* 481 U.S. 1, *18-19, 21, 28-29, 31 n.3,* 107 S.Ct. 1519, *1529, 1531, 1534-35, 1536 n.3* (1987)].

If plaintiff Richardson is not heard in the district court, his constitutional right to due process would be forfeited,[19] and the U.S. Supreme Court, Congress, the Executive Branch nor any State under the U.S. Constitution can deprive a citizen of her/his due process rights and replace it with a *discretionary*

---

[19] "[F]ederal courts must hear claims within their exclusive jurisdiction, for otherwise the right alleged would never be fully adjudicated" [*Lawrence:575* citing *Levy v. Lewis,* 635 F.2d  960, *967* (2nd Cir., 1980) (Internal quotes omitted)].

right to appeal to the U.S. Supreme Court for *certiorari*.[20]   *Rooker-Feldman* was never meant, nor has an overwhelming majority of appeals court interpreted it to mean, that the U.S. Supreme Court's statutory appellate jurisdiction is also a bar to a citizen's right to enforce her/his due process rights in federal courts. "Such a rule might deprive the plaintiff from any forum state or federal, where he has a reasonable opportunity to present his federal constitutional claims, *a result arguably contrary to the requirements of due process*" [*Wood: 1547; See also, Rooker, U.S. 263:415, S.Ct. 44:150* (hearing accorded federal litigant in State court proceedings)].

Where there is a conflict between a federal statute and a Constitutional provision, it is the authority of the Constitution that must prevail. If the district court were to decide that Richardson's due process rights are unenforceable *per se* because they arose in the context of disciplinary proceedings brought against him evidences a fundamental misunderstanding of or an intentional disregard of settled *Rooker-Feldman* jurisprudence on this issue. Due process violations are *exceptions* to the application of *Rooker-Feldman* since it is irrelevant whether the State court judgment is correct or not, the inquiry of the district court is whether the *procedures* employed were improper or not, not whether the *result* is correct or not.

Such an inquiry is not a difference without a distinction, but *lack of procedures* is substantively and functionally different from the *denial of a property right* (law license suspension). Accordingly, Richardson's other due process claims are actionable in the district court for the same reasons and summary reversal of the district court's dismissal is warranted under these circumstances.

(4) Another claim is based upon prosecutorial misconduct is excepted from the operation of the *Rooker-Feldman* doctrine. In essence, prosecutorial misconduct is Richardson's core claim, based upon (a) nondisclosure of evidence and obstruction of justice; (b) failure to provide due process guarantees mandated under D.C. Bar rules during the investigatory phase of an alleged misconduct; and (c) deceptive practices and conspiratorial activities to prevent discovery of evidence and procedural irregularities.

---

[20] The "United States is *forbidden* by the fundamental laws to take either life, liberty or property without due process of law, and its *courts are included in this prohibition*" [*Bass, F.2d 265:209*].

In order for the *Rooker-Feldman* doctrine to apply, a claim must arise out of a *judicial* function [*Lopez v. Vanderwater*, 620 F.2d 1129 (7th Cir., 1980) citing *Stump v. Sparkman*, 435 U.S. 347, *357*, 98 S.Ct. 1099, *1105* (1978)]. While a federal litigant must prove that her/his claim are *excepted* from the operation of the *Rooker-Feldman* doctrine (i.e. is not "inextricably intertwined" with the State court decision), it is the judicial defendant or its agents that bear the burden that such immunity is justified [*Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S.Ct. 2606, *2611* (1993) (discussing immunity in the context of civil rights cases)]. Any immunity defense regardless of its source in statute (civil rights) or case law (*Rooker-Feldman)* should be adjudicated on a motion for summary judgment, not a motion to dismiss or in Show Cause Order proceedings where the defendants are not represented [*Harlow v. Fitzgerald*, 457 U.S. 800, *818*, 102 S.Ct. 2727, *2738* (1982)].

When determining whether immunity is appropriate, the role of the district court is not to make a freewheeling policy choice, but to identify a common-law tradition of immunity for a given *function* and considering whether such immunity is consistent with the history and purpose of the statutory or judicial rule underlying the immunity [Cf. *Buckley*]. Likewise, in determining whether particular actions of government officials are immunized, the proper approach is a *functional* approach, which looks to the *nature of the function* performed, not the *identity of the actor* who performed it [Id., at 2613].

Finally, when a court performs investigative and prosecutorial functions, it loses any claim to immunity [Id.]. It has been held that where *nonjudicial* functions are performed by a judicial defendant in investigating and prosecuting an attorney for contempt that caused constitutional injuries, when the judicial defendant performs its *adjudicatory* functions that would normally be absolutely immune, a *qualified* immunity attaches to those *adjudicatory* functions as well. Such was the holding in *Lopez* where in adjudicating the defendant's guilt for contempt, a judge who performed investigatory and prosecutory functions that caused the denial of a defendant's constitutional right to a trial by jury, right to counsel, and right to an impartial tribunal *was liable in a civil rights action.*

While a "district court has no authority to review final judgments of a state court in judicial proceedings ..., [a] federal court 'may entertain a collateral attack on a state court judgment which is

- 15 -

alleged to have been procured through *fraud, deception*, accident, or mistake'" *Sun Valley Foods Co. v. Detroit Marine Terminals, Inc.,* 801 F.2d 186, *188-189* (6th Cir., 1986)]. Moreover, State court judgments obtained by "*fraud, deception*, accident, or mistake" are excepted from *Rooker* doctrine [*Resolute Ins. Co. v. State of No.Carolina,* 397 F.2d 586, *589* (4th Cir., 1968)].

Richardson's prosecutorial misconduct claim is based upon investigatory and charging activities that occurred surreptitiously between 1992 thorough 1995 and was not discovered until 2003, some eight (8) years after Richardson's suspension began in June 1995. It is inconceivable that Richardson could have presented this claim in his reciprocal disciplinary or his 2002 reinstatement proceedings since he had no knowledge of the claim. Likewise, *Rooker-Feldman* jurisprudence holds that a due process challenge to State court proceedings are not barred by the *Rooker-Feldman* doctrine if the State court's "judgment did not reach the issues presented" before the district court [*Resolute*].

Granted that Richardson's "suspension" (i.e. the *adjudicatory* phase -- i.e. from filing of charges and entry of suspension -- that revoked his license to practice law) was a *judicial* function, although it was accomplished by the defendants in violation in his due process rights. However, the investigation and charging activities that *preceded* the *adjudication of suspension* or license revocation are not judicial activities, notwithstanding the fact that in bar disciplinary proceeding these prosecutorial functions are performed by employees of the judicial defendant DCCA. Under D.C. statutes, the defendant DCCA has executive, administrative, legislative, and judicial power in the area of the practice of law, as is generally the case in all jurisdictions.

Moreover, if Richardson's claims of prosecutorial misconduct (nondisclosure of evidence and obstruction of justice) are immune under *Rooker-Feldman* falls under the nonjudicial function exception to that doctrine. The district court must consider this nonjudicial function exception, because the investigatory/charging and adjudicatory phases of bar disciplinary proceedings are not one '*judicial* function,' although prosecutors in bar disciplinary proceedings are employees of the DCCA because it has legislative, executive, and judicial authority over the practice of law. Otherwise, in criminal matters (and

bar disciplinary matters are *quasi-criminal* in nature[21]) prosecutory investigations and charging phases would be considered judicial and a part of the trial (adjudication) itself. Of course, they are not.

Clearly then, the investigatory/charging and adjudicatory phases of bar disciplinary proceedings are separate and distinct, one is executive (prosecutorial) and the other is judicial (adjudication of suspension). The district court cannot merger the two functions performed by the judicial defendant or its agents here, it is not warranted and finds no support in law or practice under our system of criminal, quasi-criminal or administrative law. Thus, Richardson's prosecutorial misconduct claims are not barred by *Rooker-Feldman* and district court's dismissal of plaintiff's complaint should be reversed.

*Feldman* expressly recognizes that the *legislative* function, i.e. promulgation and administration of bar disciplinary rules, is not subject to *Rooker-Feldman* immunity. Where a plaintiff challenges either the rule-making authority or the administration of the rules promulgated under the authority of the State, there is an exception to *Rooker-Feldman*. [*Feldman*, 460 U.S. at 486, 203 S.Ct. at 1316-1317; *Schware v. Bd. of Bar Examiners, New Mexico,* 353 U.S. 232, *248,* 77 S.Ct. 752, *761* (1957); *Centifanti v. Nix,* 865 F.2d 1422 (3rd Cir., 1989) (Federal district court has subject-matter jurisdiction in civil rights action by a suspended attorney who had been denied reinstatement against judicial regulators alleging various constitutional defects in procedural rules under which the judicial regulators considers petitions for reinstatement of suspended attorneys); *Freidman v. Supreme Court of Virginia,* 822 F.2d 423 (4th Cir., 1987) (Civil rights action by attorney to invalidate bar rule, *held* bar rule violated privileges and immunities clause.)] Likewise, there is an exception when performing a nonjudicial function as stated above.

Under the legislative function exception of *Rooker-Feldman*, Richardson is entitled to have his challenge to that non-rule heard. While there is no D.C. Bar Rule, the suspension enhancement is *judicially* mandated in *In re Slosberg,* 650 A.2d 1329, *1331-1332* (DC, 1994). Richardson can challenge the application of *Slosberg* to him under the *Rooker-Feldman* non-party exception, i.e. where a federal litigant was not a party to the judgment of the State court being challenged the doctrine does not bar the

---

[21] *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222 (1968).

litigant's challenges [*Valenti v. Mitchell*, 962 F.2d 288, *297* (3rd Cir., 1992)].   This suspension enhancement procedure also falls under the legislative exception to *Rooker-Feldman* where a federal plaintiff challenges either the rule-making authority (here the D. C. Court of Appeals legislated a bar rule in a specific case, which it cannot do) or the administration of the rules promulgated under the authority of the State (here the DCCA has applied a 'common law' uncodified bar rule, which it cannot do), e.g. the constitutionality of State court rules of procedure, including professional rules of conduct governing attorneys [*Feldman*, 460 U.S. at 486, 203 U.S. at 1316-1317; *Schware, Centifanti*, and *Freidman, infra.*]. A motion to dismiss is not the proper vehicle for making such determinations of various claims.

## 5. *RES JUDICATA* INAPPLICABLE

### 5.1 INTRODUCTION

Plaintiff Richardson argues that the district court must [1] conduct a 'full faith and credit' assessment[22] of the underlying D.C. court reciprocal disciplinary and related federal district court decisions. [2] And cannot proceed upon the assumption[23] that the decisions are valid, i.e. rendered with jurisdiction of the subject matter and parties, without a denial of substantive and procedural due process at all relevant stages of the DCCA's reciprocal disciplinary proceedings or federal district court litigations, and without any fraud or similar illegal or unconstitutional vitiating circumstances before making a

---

[22]Where prior adjudications are implicated and challenges against those prior adjudications are made upon grounds that the adjudications are void for want of jurisdiction and due process, the federal court must first determine if the adjudication can be given 'full faith and credit' [*American Surety Co. v. Baldwin*, 287 U.S. 156, *166*, 53 S.Ct. 98, *101* (1932)]. In *American Surety Co.* the Supreme Court held that the "full faith and credit clause, Const. art. 4, §1, together with the legislation pursuant thereto, *applies to judicial proceedings of a state court drawn into question in an independent proceeding in the federal court*" (Id.). The Court also held that the "principles of res judicata apply to questions of jurisdiction as well as to other issues," but that it was also "true that entry of judgment without notice may be *a denial of due process even where there is jurisdiction* over the person and subject-matter" [Id., U.S. 287:168, S.Ct. 53:102] and that "[d]ue process requires that there be *an opportunity to present every available defense...*" (Id.).
[23] In other words, the district court cannot "reach its decision by *merely assuming the point in issue* or by deeming itself concluded by the fact that the trial court took jurisdiction" which is impermissible [*American Surety Co.*, U.S. 287:168, S.Ct. 53:102].

'*Rooker-Feldman*'[24] assessment. The plaintiff's claims under Count #1 and #2 of the Complaint can be categorized as follows:

- *prosecutorial misconduct*[25] (failure to accord due process rights in disciplinary investigations, nondisclosure of material evidence, obstruction of justice, and illegal search and seizure in disciplinary investigations and proceedings and collateral or related actions), and
- *civil conspiracy*[26] [bar disciplinary and DCCA officials conspired (and/or continues to conspire) to deny plaintiff's due process rights in investigations, rights to discovery, and to unconstitutionally deprive the plaintiff of this law license].
- *violation of civil rights* (denial of due process in various particulars: lack of notice and hearing, insufficiency of proof, biased decision-maker, nonexistent disciplinary rule, etc.),
- 4th Amd. *illegal search and seizure* (improper exchange of information between governmental agencies),
- 8th Amd. *disproportionate penalties* (improper and excessive imposition and enhancement of disciplinary penalties),
- *denial of equal protection* [hearing and notice for domiciliary disciplinary proceedings, but nor for reciprocal disciplinary proceedings, and other discriminations based upon race or religion (disproportionate penalty based upon suspect classifications and associations)],

Defendants in their Motion to Dismiss argue that 'alternatively' the *res judicata*[27] doctrine of preclusion (common-law based) or *Rooker-Feldman* doctrine of preclusion (statutory-jurisdictional

---

[24] Under the *Rooker-Feldman* doctrine, lower federal courts do not have subject matter jurisdiction over claims seeking review of State court judgments [*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, *415-416*, 44 St. Ct. 149 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, *482-486*, 103 S.Ct. 303 (1983)]. The doctrine requires a party seeking review of a State court judgment or presenting a claim that a State *judicial* proceeding has violated their constitutional rights to pursue relief through the State court system and ultimately to the Supreme Court.

[25] Prosecutorial misconduct is grounds for an independent federal civil rights action [*Briggs v. Goodwin*, 186 U.S. App. D.C. 179, 569 F.2d 19 (DC Cir., 1977) *cert. den.* [prosecutor who gave knowingly false testimony to a district court was not immune from suit by injured parties and could only claim '*qualified* immunity' under that particular circumstance.]

[26] Conspiracy to deprive one of their federal rights is misconduct actionable under U.S.C. §42:1983 [*Anderson v. D.C. Public Defender Office*, 980 F.2d 746 (D.C. Cir., 1992) ].

[27] "The preclusive effects of former adjudications ... are referred to collectively by most commentators as the doctrine of 'res judicata.' ... *Res judicata* is often analyzed further to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion.' Issue preclusion refers to the effect of a judgment in foreclosing relitigating of a matter that has been litigated and decided. ... This effect also is referred to as direct or *collateral estoppel*. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merge and bar" [*Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, *77 n. 1*, 104 S.Ct. 892, *294 n.1* (1984) (Federal court must give to a State court judgment the same preclusive effect as would be given that judgment under the law of the

based) bars *all* the plaintiff's claims. That contention is analytically incorrect, for *res judicata* applies only if *Rooker-Feldman* does not, they are 'sequential' doctrines of preclusion, not 'alternative'. Moreover, the defendants have failed to present a 'full faith and credit' assessment of the underlying D.C. court reciprocal disciplinary and federal district court decisions, i.e. that the rendering courts had jurisdiction, accorded due process throughout their proceedings, or that the decisions were not procured under fraudulent conditions. While the defendants make a general challenge on *res judicata* grounds to plaintiff Complaint in its Motion to dismiss, they fail to present a systematic *res judicata* assessment of plaintiff's claims.

In summary, plaintiff opposes dismissal because defendants' motion does not address the (1) jurisdictional prerequisites for the district court to accord 'full faith and credit' to *any* of the D.C. or federal court decisions – direct [the three reciprocal disciplinary decisions] or collateral (the related/collateral cases) to Richardson's reciprocal bar disciplinary proceedings -- raised as the basis for their *res judicata* bar [the 'full faith and credit' assessment], or (2) principles underlying *res judicata* that must be operative for the doctrine to apply, *viz*: valid adjudications by adjudicatory bodies having 'competent' jurisdiction, identity of issues or claims in the present and former adjudications, identify of parties or their successors in interest, and a full and fair opportunity being accorded the plaintiff (losing party in prior cases).[28] .

## 5.2 INAPPLICABILITY OF DOCTRINE

**(a) BAR BY ESTOPPEL**. Defendants are estopped from making the *res judicata* defense because the cases cited as dispositive of plaintiff's claims in Exhibit #1 of Defendants' Board-Branda-

State in which the judgment was rendered.)]  "Res judicata" is used here to refer to principles of both issue and claim preclusion, direct or collateral.

[28] To constitute *res judicata all* of the following prerequisites *must* have occurred *prior to* the federal action: (1) an adjudication, (2) of the same issues involved in the federal action, (3) under full and fair procedures, and (4) between the same parties or their privies [*United States v. Int'l Bldg. Co.*, 345 U.S. 502, *504*, 73 S.Ct. 807, *808-809* (1952); *Lawlor v. Nat'l Screen Svc.*, 349 U.S. 332, *326*, 75 S.Ct. 865, *867* (1955); *United States v. 42 Jars, Etc.*, 160 F. Supp. 818, *820* (D.C. N.J., 1958), *aff'd* 264 F.2d 666, *668-669* (3rd Cir., 1959); *Moore v. Deal*, 203 F.Supp. 66, *69 n.9* (D.C., E.D.Pa., 1962) ("Res judicata is not available without adjudication"); *Montana v. U.S.*, 440 U.S. 147, *163-164*, 99 S.Ct. 970, *979* (1979) (Res judicata is inapplicable where "unfairness or inadequacy in the state procedures" is alleged thereby preventing a "full and fair opportunity to press … constitutional challenges")].

Becker-Kello-Shipp-Shishkevish *Motion to Dismiss* were all decided *before* the 2003 prosecutorial misconduct incident that revealed the nondisclosure of evidence, denial of investigative due process, obstruction of justice, and civil conspiracy between bar prosecutors and bar adjudicators in the nondisclosure and obstruction.[29]  However, defendants' crafty chronicle (and attached schedule) of cases does them no good whatsoever because *all* of those cases were decided between 1995 and 2001 *prior to* plaintiff's discovery of the prosecutorial misconduct (nondisclosure of evidence, failure to accord investigatory due process rights, obstruction of justice, and civil conspiracy involving bar prosecutors and hearing officials) in *2003* and thus cannot be given 'full faith and credit' because to do so would further perpetrate a fraud upon the federal courts.  In other words, D.C. bar prosecutors and/or administrative hearing officials involved in each of the cases had a constitutional and ethnical duty to disclose the existence of the secret and illegal reciprocal disciplinary investigation between 1992 and 1994 and the secret and illegal -- i.e. done without informing Richardson or the DCCA -- merger of that investigation into an open investigation in 1994 in the unreasonable fee charge misconduct proceeding.

The conduct of that illegal investigation (including denial of due process rights that are triggered whenever an *investigation* is commenced) for over two years (1992-1994) was material.  Why?  Because under bar rules Richardson has an *expressed* right to know of their existence and to access any investigatory materials collected; and that right to access was and is continuously being denied even as these district court proceedings are being prosecuted. Moreover, bar disciplinary proceedings are *quasi-criminal* in nature [*In Re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222 (1968)] bringing into play on Richardson's

---

[29] Preliminarily, it should be noted that the cases *before* that period (1995-2001) dealing with the 'Jones' matter,' a previous unreasonable fee misconduct, is irrelevant, *except* that the *same* unconstitutional due process procedures – temporary and final suspension without notice or hearing – were employed in those reciprocal disciplinary proceedings. And any attempt by the defendants to raise these cases as evidence of Richardson's bad character (thus bar prosecutors were somehow justified in employing illegal investigatory techniques, nondisclosure of evidence and obstruction of justice or a 4th Amd. illegal search and seizure) is unavailing because those *pre*1995-2001 D.C. reciprocal disciplinary cases cannot survive a 'full faith and credit' assessment. Seems as if defendants are seeking to 'argue' plaintiff's *character* (alleged bad faith litigious nature) and not to 'argue' the *legal predicates* in support of their motions to dismiss or in opposition to plaintiffs claims, *viz.*: federal civil rights, constitutional and common law torts generally, and in these summary disposition appellate proceedings, the federal doctrines of preclusion, *Rooker-Feldman* and *res judicata*.

behalf the plethora of constitutional protections accorded to a criminal defendant that were denied him in the reciprocal disciplinary proceedings, chief being notice and opportunity to be heard. Since those deceptive and conspiratorial actions by D.C. bar prosecutors and adjudicatory officials were unconstitutional, tortuous, criminal and unethical,  estoppel applies to the defendants' clever and imaginative attempt to integrate those 16-cases in their appellate argument in support of *res judicata* or evidence of Richardson's bad faith or frivolous litigation tactics for which he should be sanctioned.

**(b)  BAR BY ADJUDICATORY PROCESS.**  *Res judicata*  does not come to play unless *Rooker-Feldman* is somehow inapplicable. *Rooker-Feldman* and *res judicata* do not apply to a plaintiff's claims concurrently or alternatively, they exist or are to be applied *sequentially*. In other words, (1) after the determination that a valid State (DCCA) adjudication is involved, and (2) after the determination that *Rooker-Feldman* is excepted or is inoperable.  Therefore, a prevailing party in State (DCCA) adjudication has 'two bites' at the proverbial apple. One 'bite' occurs when the *Rooker-Feldman* preclusion doctrine is 'jurisdictionally' applied to the losing plaintiff's claims. The second 'bite' occurs if the losing party in State (DCCA) adjudication or plaintiff  in a subsequent federal action that implicates the State adjudication, is able to find exceptions to *Rooker-Feldman*.  Under such circumstances, the district court is  permitted to hear the federal action where the prevailing party in the prior adjudication can raise the affirmative defense of a *res judicata* preclusion  to bar the losing plaintiff's claims or issues 'actually' decided.

In the present motion to dismiss, unless and until the defendants can prove that the D.C. disciplinary and related federal district court decisions are valid (tactically, that is,  in response to plaintiff's proof that the decisions are invalid) then the plaintiff's claims must be heard without further interposition of either *Rooker-Feldman* or *res judicata* [-- a 'first bite' at the proverbial apple].  However, if the D.C. disciplinary/federal district court decisions are valid – i.e. not void *ab initio* for lack of jurisdiction or due process, or procurement under fraudulent or similar conditions –  then the plaintiff must prove that some exception to *Rooker-Feldman* applies. If an exception applies to one or more claims, then the defendants can interpose the affirmative defense of *res judicata* to preclude the plaintiff's

- 22 -

excepted claims or issues if the principles underlying the *res judicata* doctrine apply -- a 'second bite' at the proverbial apple. Denial of defendants' motion to dismiss is necessary so that the defendants can have their 'two' bites at plaintiff's claims, the proverbial apple!

In other words, assuming *arguendo* that all of the exceptions raised by Richardson were sustained, then the defendants can argue *res judicata* on *any* issue or claim that was 'actually,' could have, or should have been raised by Richardson within the jurisdictional competence of the State (DCCA) adjudicative body[30] in the prior litigation (bar disciplinary proceedings) as a bar, whether the parties are the same or not. However, no such problem-solving and truth-seeking proceeding was conducted in the district court – or any federal or DC court for that matter -- that even comes close to the type of critical examination required for such a claims assessment involving *Rooker-Feldman* and *res judicata* principles.

While *res judicata* applies to prevent a relitigation of facts, whether jurisdictional or not, a judgment "is a conclusive adjudication of everything *except the jurisdictional facts* upon which it is founded" [*Williams v. North Carolina*, 325 U.S. 226, *230, 232*, 65 S.Ct. 1092, *1095, 1096* (1945)]. The burden of proof as to the lack of jurisdiction is "properly charged against the party challenging the legitimacy of the judgment" and "such issue of fact [is] left for fair determination by appropriate procedure" [Id, U.S. 325:234, S.Ct. 65:1097]. Thus, the burden of demonstrating a lack of jurisdiction, an "issue of fact," is upon the plaintiff in an "appropriate" and "fair" procedure in the district court [Id.].

When a State adjudication is involved, there is a *three*-step process in determining the preclusive nature of the adjudication upon a plaintiff's federal claims:

---

[30] The DCCA is an *appellate* court and not a *trial* court capable of adjudicating plaintiff's federal rights, only the D.C. Superior Court has jurisdiction to do that. Within the context of its exclusive jurisdiction over the regulation of the practice of law in the District of Columbia, the DCCA has *limited* jurisdiction and would consider *constitutional* claims only to the extent that they affect its bar disciplinary functions or bear upon its disciplinary jurisdiction. The DCCA does not have *general* jurisdiction to adjudicate plaintiff claims, i.e. civil actions (torts, conspiracy, prosecutorial misconduct, etc.), civil rights (denial of due process and equal protection, 4th Amd. illegal search and seizure claims, etc.), or other constitutional based torts. However, for *res judicata* purposes, any findings of fact made under 'full and fair' hearing procedures could be given 'full faith and credit' in a federal court in collateral proceedings to enforce federal rights based upon federal original, civil rights or pendent jurisdiction, thus preserving one of *res judicata's* functions, that of judicial economy by not relitigating *fact* issues previously decided.

- 23 -

(1) a determination of the validity of the State adjudication (a 'full faith and credit' assessment);

(2) if the adjudication is valid, then a determination of the applicability of *Rooker-Feldman*; if not, then the jurisdictional inquiry ends without consideration of any *Rooker-Feldman* issues (a *Rooker-Feldman* assessment); and

(3) if *Rooker-Feldman* is inapplicable, then a determination of whether principles of *res judicata* applies under the circumstances to bar relitigation of any or all claims or issues 'actually' tried in the State adjudication (a *res judicata* assessment).

Since the *three*-step process was to be employed by the district court in assessing Richardson's claims. Until that that assessment is done, no dismissal can be granted. Thus, the district court should deny defendants' motion to dismiss so that such an assessment with the full participation of the defendants and plaintiff can be made since both parties carry burdens of proof at various stages of the *three*-step process.

(c) **LACK OF CLAIMS ADJUDICATION.** For *res judicata* to be operative upon the claims of a federal plaintiff who previously litigated in other State or federal actions a federal court must make the following inquiries:

(1) Does a valid adjudication exist (a 'full faith and credit assessment')?

(2) Are the parties (or their successors in interest) the same?

(3) Are the same issues or claims actually litigated in the prior proceedings?

(4) Did the party against whom the doctrine applies have a 'full and fair opportunity' to litigate the issues or claims to be barred?

There is no dispute that the parties are the same or in 'privity' (successors in interest). However, as to the other elements of the doctrine there are unresolved contentions between the parties. Richardson argues (1) that no valid adjudication exists (i.e. no 'full faith and credit' can be accorded the D.C. reciprocal disciplinary decisions); (2) that the claims and issues were not 'actually litigated'; and (3) that the DCCA is a court of limited jurisdiction and has only appellate jurisdiction and regulatory jurisdiction of the practice of law, but no general trial court jurisdiction.

Finally, Richardson received no full and fair opportunity to litigate his constitutional claims in the DCCA reciprocal disciplinary system. The DCCA and its bar hearing officials (defendant D.C. Board on Professional Responsibility) *both* expressly denied Richardson [1] the opportunity to raise his constitutional claims in reciprocal disciplinary and reinstatement proceedings and [2] to discover the

- 24 -

contents of investigatory records collected in the aborted, illegal and secret investigation between 1992-1994.    Defendants do not, in fact *cannot* without committing perjury and professional misconduct, contest the fundamental and *jurisdictional* fact that Richardson was never given any notice or evidentiary hearing prior to or shortly after the entry of the license revocation decisions temporarily in 1995 and 1996 and finally in 1997, a minimum three (3) year suspension, plus a 1.83 years enhancement that has now morphed into some 12-years of suspension.[31]    The DCCA made that express statement    in *In re Richardson,* 692 A.2d 427, *429* (DC, 1997) declaring: "On June 27, 1995 we ordered Richardson's temporary suspension, *without hearing,* pending final disposition of these proceedings" [without notice or an evidentiary hearing].

D.C. statutes governing the practice of law (DC Code § 11-2501 et seq.) and administrative procedures [Id. §2-501(8)] accord Richardson a right to a prescribed notice and an evidentiary hearing, and neither of these essential due process requirements were satisfied in his reciprocal disciplinary proceedings. In the D.C. Code provisions governing attorney disciplinary proceedings, the   required notice and an evidentiary hearing are "mandatory" *jurisdictional* requirements and must be followed in order to invoke the disciplinary jurisdiction of the DCCA [D.C. Code §11-2503(b); *Matter of Colson,* 412 A.2d 1160, *1164* (DC, 1979) (*En banc*) ("the statute is mandatory in its terms"); *In re Laughlin*, 474 F.2d 444, *447 n. 3* (D.C.Cir., 1972)].

Due process essentials -- notice and hearing -- are well-settled prerequisites under D.C. law governing revocation of an attorney's license.[32] They are constitutionally required under the due process

---

[31] Due process is denied  a licensee who suffers a lengthy termination of the license without notice and hearing [*Gilbert, infra,* U.S. 520:932-934, S.Ct. 117:1813-1814].

[32] An *evidentiary* hearing is guaranteed *prior to* attorney license revocations whether initiated in domiciliary or reciprocal disciplinary procedures under D.C. disciplinary [D.C. Code §§ 11-2503(b) and administrative procedure [D.C. Code § 2-502(8)] statutes,  and under numerous D.C. Court of Appeals cases beginning in the late 1800s [*United States ex rel Wederburn v. Bliss*, 12 App.D.C. 285, *493* (1898):

> Nor is there controversy as to *what, in  general, would constitute due process of law* in (bar disciplinary) cases ... . Specific charges, due notice of such charges, an opportunity to make specific answer to them, an opportunity to cross-examine the witnesses in support of them, an opportunity to adduce testimony in contradiction of them, an opportunity for argument upon the testimony and upon the law and the facts, -- and *all this before the proper tribunal,* competent to render judgment, and which does, in fact,

clause of the 5th Amd.[33]  State or federal adjudications rendered in violation of due process are void in the

rendering jurisdiction and cannot be given full faith and credit elsewhere [*World-Wide Volkswagen Corp.*

*v. Woodson*, 444 U.S. 286, *291*, 100 S.Ct. 559, *564* (1980)].    The district court has to make a

determination as to whether Richardson was accorded due process *throughout* the reciprocal disciplinary

proceedings, for even if due process existed at the outset (which it did not!),  if during the adjudicative

process  due process was not continually maintained, then the DCCA would lose jurisdiction previously

obtained.[34]

---

> render judgment -- this undoubtedly *constitutes due process of law under ordinary*
> *circumstances* to its fullest extent ... ." Id.];

*Garfield v. United States ex rel Spaulding*, 32 App. D.C. 153, *158* (1908), *Phillips v. Ballinger*, 37 App.
D.C. 46, *51-52* (1911), *Goldsmith v. U. S. Bd. of Tax Appeals*, 270 U.S. 227, *123*, 46 S.Ct. 214, *217-218*
(1929) (citing authoritatively: *Bliss*, *Garfield*, and *Phillips* for due process requirements is bar disciplinary
matters), *Laughlin v. Wheat*, 95 F.2d 101 (U.S. Cir., App. D.C., 1937) and *In re Cummings*, 466 A.2d
1124 (D.C., 1983)].

   In *Laughlin v. Wheat* interpreting similar language in the predecessor to D.C. Code §11-2503(b), this
appeals court sitting as the appellate court for the District of Columbia declared that a summary law
license revocation procedure -- identical to that used in Richardson reciprocal disciplinary proceedings --
without notice to the accused attorney and  involving *ex parte* proof by bar prosecutors under judicial
notice proceedings was unconstitutional.  The court said that such a revocation procedure was

> a *legislative decree*, by which the *mere filing of accusations against an attorney operates*
> *automatically to suspend him from practice without hearing or judgment*.  This is
> contrary to one of the cardinal principles of the administration of justice, that *no man can*
> *be condemned or divested of his right until he has had the opportunity of  being heard.*
> *** While ...a court has jurisdiction  even in an informal hearing in a proper case to
> strike the name of an attorney from its rolls, *we know of no case in state or federal court*
> *in which it was held it  could be done without affording the attorney reasonable notice*
> *and an opportunity to be heard in his defense.* ... We are therefore of the opinion that the
> *statute of the District* [now D.C. Code §11-2503(b)]  *should be so construed as to require*
> *both notice and a hearing before suspension* even though the notice and the hearing be
> informal and speedy  (Id., at 102).

[33] Under the 5th Amendment as interpreted by the U.S. Supreme Court in *Goss v. Lopez*, 419 U.S. 565, 95
S.Ct. 729 (1975); *Bell v. Burton*, 402 U.S. 535, 542, 91 S.Ct. 1586, 1591 (1982) [Government "must
afford notice and opportunity for a hearing appropriate to the nature of the case *before* the termination
becomes effective". (*Emphasis* in original)]; *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983 (1972); *Davis*
*v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012 (1984) [For a comprehensive summary of U.S. Supreme Court
cases on the right to a pre-termination hearing since 1925 see the dissenting opinion.]; *Barry v. Barchi*,
433 U.S. 55, 99 S.Ct. 2642 (1979) [Interim suspension is unconstitutional for lack of prompt post-
suspension hearing.]; *Gilbert v. Homar*, 520 U.S. 924, 117 S.Ct. 1807 (1997) [Interim suspension with
summary probable cause proceedings permissible, remanded to determine the promptness of post-
suspension hearing.]

[34] A "court's jurisdiction at the beginning of trial may be lost in the course of the proceedings due to
failure to complete the court," i.e. if the requirements of due process are "not complied with, the court no

## 6. CONCLUSION AND RELIEF REQUESTED

On a motion to dismiss, the district court must analyze the nature of plaintiff Richardson's claims and their respective exceptions to the *Rooker-Feldman* doctrine that immunizes State court judgments from review by lower federal courts where the State court acts in its *judicial* capacity. Assessment of federal claims in order to determine if there is jurisdictional immunity under *Rooker-Feldman* is a two-step procedure: First, the district court must determine if 'full faith and credit' applies to the State adjudication, i.e. is the State adjudication void *ab initio* for lack of jurisdiction, denial of due process, or procurement by fraud or other vitiating condition;

Second, if 'full faith and credit' is accorded the State adjudication, then the district court must determine if any of the recognized exceptions to *Rooker-Feldman* immunity apply. Richardson contends that the DCCA's reciprocal disciplinary and other related federal court decisions cannot be given 'full faith and credit' having been rendered without jurisdiction, in violation of his due process rights, and/or under fraudulent conditions (obstruction of justice and nondisclosure of material evidence by bar prosecutors aided and abetted by bar hearing officials). Plaintiff has identified the following exceptions as applicable to his claims that precludes the application of *Rooker-Feldman:* (1) *non-party* or *non-claim* exceptions (challenge to judicially mandated bar rule; claims unable to be or not adjudicated in State court proceedings on jurisdictional or due process grounds), (2) *independent* claim exception [denial of due process -- notice and reasonable opportunity to be heard -- in license revocation; violation of civil rights to race/religious nondiscrimination; prosecutorial misconduct (nondisclosure of evidence; obstruction of justice; fraud and deception in denying due process rights in investigation); 4th Amd. search and seizure (illegally obtaining bank records; 8th Amd. excessive penalty), (3) *nonjudicial function* exception (prosecutorial misconduct), and (4) *judicial maladministration* exception (defective promulgation and administration of bar rules). It is therefore requested that the district court (1) deny the defendants' motion to dismiss, and (2) grant such further relief as the court deems necessary and proper.

---

longer has jurisdiction to proceed" and the judgment of "a court without jurisdiction is *void*." [*Johnson v. Zerbst*, 304 U.S. 458, *468*, 58 S.Ct. 1019, *1024-1025* (1938)].

Justice requires, and it is therefore incumbent upon this district court to assure, that Richardson has his day in *federal* court that has been denied him for so many years and on so many occasions. And to resolve these threefold inquiries re: (1) *Full faith and credit*-- Was the D.C. reciprocal disciplinary and federal district court decisions rendered by the courts with both jurisdiction of the subject matter and person? Was Richardson given adequate notice and a full and fair opportunity to be heard? Was there any fraud or other vitiating occurrence that would otherwise void the decisions? (2) *Rooker-Feldman*-- if the decisions are valid, then are any of the recognized exceptions to *Rooker-Feldman* identified in the claims of the plaintiff listed above? (3) *Res judicata*-- If exceptions exist, then does the doctrine of *res judicata* apply to bar any of those claims or issues involved?

Denial of defendant's motion to dismiss  is therefore appropriate under these circumstances, for the district court has yet to assess plaintiff's federal claims, i.e. the court has not made such  assessments regarding  (1) the court's ability to give *'full faith and credit'* to the D.C. reciprocal disciplinary decisions in the first instance, i.e. were they rendered with *both* personal and subject matter jurisdiction, notice and hearing being accorded the plaintiff, and without any fraud or other illegal activity being involved in the decision-making process; (2) the applicability of *Rooker-Feldman* and if exceptions exist; and (3) whether *res judicata* would bar any of those excepted claims in whole or part.  In addition to  denial of defendants' motion to dismiss, the district court is asked to grant such further relief as the court deems necessary and proper.

● *Verification.* Any statement of fact is made with full knowledge of the penalty for perjury and upon the best of his knowledge, information and belief.

## CERTIFICATE OF SERVICE

This certifies that  the foregoing document was delivered by U.S. first-class mail to:

| **Dr. Timothy K. Webster, Esq.**<br>Attorney for Defendants *Branda, Becker, D.C. Bd. on Professional Responsibility, Kello, Shipp,* and *Shishkevish*<br>Sidley Austin LLP<br>1501 "K" Street, NW<br>Washington, DC  20005 | **Dr. George Rickman, Esq.**<br>**Office of D.C. Attorney General**<br>Attorney for Defendants *District of Columbia*  and *D.C. Court of Appeals.*<br>1350 Pennsylvania Avenue, NW, #409<br>Washington, DC 20004 |
|---|---|

| Dr. Richard J. Oparil, Esq. | Dr. Jeffrey A. Taylor, Esq. U.S. Attorney, DC |
|---|---|
| Attorney for Defendant *DeSilva* | Dr. Rudolph Comtreras, Esq. Asst. U.S. Atty., DC |
| Patton Boggs LLP | Dr. Michelle N. Johnson, Esq., Asst. U.S. Atty., DC |
| 2250 "M" Street, NW | 555-4th Street, NW, Rm. E4212 |
| Washington, DC 20037 | Washington, DC 20530 |

Executed on this **18th** day of **January** 2006.

T. CARLTON RICHARDSON
Plaintiff *Pro Se*
1505 Pennsylvania Avenue, SE
Washington, DC  20003-3117
202/546-3505