Received from Calvin, Plaintiff brought date stamped copy in 8-3-07. TD

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

RECEIVED

'07 JUL 25 PM 9: 17

NANCY M.
MAYER-WHITTINGTON
CLERK

T. CARLTON RICHARDSON,    )

        Plaintiff.    )

vs.    )    No. **06CV01665  [RJL]**

**DISTRICT OF COLUMBIA, et al.**    )

        Defendants.    )

---

## MOTION TO RECONSIDER DISMISSAL

### *INDEX TO MOTION\**

A. PREFACE--[2]

B. IMPROPER ADJUDICATION ON MOTION TO DISMISS--[3]
    1.0 Standards of Review--3
    2.0 Denied Due Process--3
    3.0 Yielded Erroneous Facts--6

C. *CORAM NOBIS* APPLICATION OVER-LOOKED--[7]

D. CIV. R. 60(B) MISAPPLIED OR MISAPPRE-HENED--[11]
    1.0 Claim of *Brady* Violation Constitutes "Extra-ordinary Circumstances"--11
    2.0 Estoppel Bars "Reasonable Time" Limitation on Claims--12

E. PRECLUSION DOCTRINE MISAPPREHENDED AND MISAPPLIED--[16]
    1.0 Preclusion (Res Judicata/Collateral Estoppel) Inapplicable--16
    2.0 Jurisdictional Preclusion Misapprehended and Misapplied--17
    2.1 'Precise' Jurisdictional Issues Never Adjudicated in Prior Cases--18

    2.2 Adjudication of Jurisdictional Prerequisites -- i.e. Valid D.C. Disciplinary Judgment -- for *Rooker-Feldman* Preclusion or Immunity is Lacking in Prior Cases--19
        (a) Nature of *Rooker-Feldman* Doctrine--19
        (b) Prerequisites to *Rooker-Feldman* Proceedings--20
        (c) Standards of Review--21
        (d) Case Application--22
    2.3 Adjudication of Other Exceptions to *Rooker-Feldman* Doctrine is Lacking in Prior Decisions--23
        (a) Exceptions to *Rooker-Feldman* Doctrine--23
        (b) Due Process Exception--26
        (c) Independent Claim Exception--27
        (d) Case Application--29

F. CONCLUSION--[30]

■ CERTIFICATE OF SERVICE--[31]

■ APPENDIX--[32]
A--Memorandum Opinion--32
B--Final Judgment--36

---

\**Emphasis*  supplied and "Civ.R." refers of *Federal Rules of Civil Procedure* unless otherwise stated.

## A. PREFACE

Plaintiff Richardson seeks reconsideration pursuant to Civ. R. 59 of the district court's dismissal (App. A & B: Mem. Op. and Final Judgment) of his complaint to reopen dismissed habeas corpus proceedings and to remedy violations of certain civil rights arising out of and related to an unconstitutional deprivation of his license to practice law in the District of Columbia under statutory and judicial bar disciplinary procedures that denied due process and permitted other unconstitutional and tortious actions by bar prosecutors and other bar officials. Grounds for reconsideration are addressed under four categories that convincingly demonstrate that the district court has misapplied, misapprehended, or overlooked relevant factual predicates and legal principles thereby requiring that the court vacate its dismissal and accord the plaintiff an evidentiary hearing or such further proceedings as the court deems necessary and proper.

The arguments are presented as follows: (1) that the court improperly adjudicated case facts and made erroneous fact-findings that are impermissible on a motion to dismiss; (2) that the court overlooked the *coram nobis* basis for plaintiff's claims; (3) Under Civ. R. 60(b) "extraordinary circumstances" are shown by the plaintiff's allegation of the violation of the *Brady*[1] principles which compel disclosure by prosecutors of exculpatory facts and the "reasonable time" limitation on plaintiff's claims are barred under the doctrine of equitable estoppel; and (4) the doctrine of preclusion and its related and limited companion, the *Rooker-Feldman* doctrine[2] are inapplicable as to any of plaintiff's jurisdictional or civil rights claims. Let us begin our exploration of these arguments:

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).
[2] Under the *Rooker-Feldman* doctrine, lower federal courts do not have subject matter jurisdiction over claims seeking review of state court judgments [*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, *415-416*, 44 St. Ct. 149 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, *482-486*, 103 S.Ct. 303 (1983)]. The doctrine requires a party seeking review of a state court judgment or presenting a claim that a State judicial proceeding has violated their constitutional rights to pursue relief through the state court system and ultimately to the Supreme Court.

## B. IMPROPER ADJUDICATION ON MOTION TO DISMISS

### 1.0 STANDARDS OF REVIEW

In granting the defendants' motion to dismiss the district court concludes that dismissal is compelled because (1) the court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine [¶¶ 3-1, 9-1] and (2) the complaint is legally insufficient [¶1-3], "plaintiff [having] failed to set forth any basis" for his claims. In analyzing a motion to dismiss, federal courts will not dismiss a complaint unless it is clear there are "no set of facts" that a plaintiff could prove consistent with the pleadings that would entitle the plaintiff to relief [*Hishon v. King & Spaulding*, U.S. 467:69, *73*, S.Ct. 104:2229, *2232-2233* (1984); *Conley v. Gibson*, U.S. 355:41, *45-46*, S.Ct. 78:99, *101-102* (1957)]. Furthermore, all inferences of fact from the papers before the court must be against the movant and "in the light most favorable to the party opposing the motion" [*United States v. Diebold, Inc.*, U.S. 369:654, *655*, S.Ct. 82:993, *994* (1962). *Anderson v. Liberty Lobby, Inc*, U.S. 477:242, *255*, S.Ct. 106:2505, *2513* (1986)].

Moreover, while a district court can grant a Civ. R. 12(b)(1) motion to dismiss based on the legal insufficiency of a claim, dismissal is proper only when the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or … is wholly insubstantial and frivolous" [*Bell v. Hood*, 327 U.S. 678, 88 S.Ct. 773, *775-776* (1946); *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, *666*, 94 S.Ct. 772, *776* (1974)]. The claim must be so "insubstantial, implausible, *foreclosed by prior decisions* of (the Supreme) Court, or otherwise completely devoid of merit as not to involve a federal controversy" (*Oneida*).

### 2.0 DENIAL DUE PROCESS

The district court decided the defendants' motion to dismiss without an evidentiary hearing. This constitutes adjudication by "judicial notice" procedures. Such use of judicial notice without according a hearing to a party adversely affected by an evidentiary assumption or presumption violates that party's due process rights[3] [Evid. R. 201(e)]. Furthermore, consideration of any facts by the district court,

---

[3] Due process of law "refers to certain fundamental rights which that system of jurisprudence, of which ours is derivative, has always recognized. If any of these are disregarded in the proceedings by which a

whether jurisdictional (such as according full faith and credit to a State court judgment under Article IV, §1 of the Constitution and 28 U.S.C. §1738) or related to the merits of the action (such determining the defendants' immunity from suit or the district court's lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine), constitutes an impermissible use of its judicial notice authority under the Federal Rules of Evidence. Under Evid. R. 201(e), a party adversely affected by a fact to be or that has been judicially noticed must be accorded a hearing *prior to* the court's taking notice or upon request thereafter.

There is also a 5th Amendment constitutional right to be heard when a court is going to take judicial notice [*Garner v. Louisiana*, 368 U.S. 157, 82 S.Ct. 248 (1961)]. In *Garner*, Chief Justice Warren writing for a unanimous Court (Justice Frankfurter concurring in the judgment) stated:

> To ... allow the prosecution to do through argument ... what it is required by due process to do at the trial, ... would be "to turn the doctrine [of judicial notice] into a *pretext for dispensing with a trial*". ... Furthermore, unless an accused is informed at the trial of the facts of which the court is taking judicial notice, not only does he not know upon what evidence he is being convicted, but, in addition, he is *deprived of any opportunity to challenge the deductions drawn* from such notice *or to dispute the notoriety or truth of the facts allegedly relied upon*. Moreover, there is no way by which an appellate court may review the facts and law of a case and intelligently decide whether the findings of the lower court are supported by the evidence where the evidence is unknown. Such an assumption would be a *denial of due process*. Id., U.S. 368:*173*, S.Ct. 82:*256-257* [Internal quotations omitted.]

---

person is condemned to the loss of life, liberty, or property, then the deprivation has not been by 'due process of law' " [*In re Bennett*, F. 84:324, *326* (N.D. Ca., 1897) (Internal quotes omitted.)] Furthermore, an attorney is not "relegated to a *watered-down version* of constitutional rights" [*Garrity v. New Jersey*, U.S. 385:493, S.Ct. 87:616 (1967)]. Essential ingredients of procedural due process are comprised of notice and an opportunity to be heard [*Mathews v. Eldridge*, U.S. 424:319, *348*, S.Ct. 96:893, *909* (1976)]. The hearing must be "at a meaningful time and in a meaningful manner" (Id.). Providing a "hearing" must, at minimum, consist of an opportunity to submit written defenses to the proposed adverse action and an opportunity to present oral argument and testimonial or documentary evidence [*Goldberg v. Kelly*, U.S. 397:254, S.Ct. 90:1011 (1970); *Willner v. Committee on Character and Fitness*, U.S. 373:96, S.Ct. 83:1175 (1963)]. In *Morgan v. United States*, U.S. 298:468, *480-481*, S.Ct. 56:906, *911* (1936) it was observed that "(i)f one who determines the facts which underlie the order has not considered evidence or argument, it is manifest that the hearing has not been given." Notice of issues to be resolved by the adversary process is a fundamental characteristic of "fair procedure" [*Lankford v. Idaho*, U.S. 500:110, S.Ct. 111:1723 (1991)]. In a variety of contexts, the U.S. Supreme Court has repeatedly emphasized the importance of giving the parties sufficient notice to enable them to identify the issues on which a decision may turn [e.g., *Lankford* (criminal case); *Burns v. United States*, U.S. 501:129, S.Ct. 111:2182 (1991) (same); *Fountain v. Filson*, U.S. 336:681, S.Ct. 69:754 (1949) (*per curium*) (summary proceedings)].

When subject matter jurisdiction is challenged under Civ. R. 12(b)(1), the *plaintiff* must bear the burden of persuasion [*Mortensen v. First Fed. Sav. & Loan Ass'n*, F.2d 649:884, *891* (3rd Cir., 1977)]. In this case, the district court took judicial notice ostensibly under Evid. R. 201 of its own decisions and those of other federal courts, which of course the court can do. However, in doing so in this case, the district court has involved itself in judicial decision-making by presumption without according Richardson an Evid. R. 201(e) opportunity to be heard as to as to whether the complaint challenges an immunized judicial *function* of the D.C. Court of Appeals which is a factual inquiry [*D.C. Court of Appeals v. Feldman*, U.S. 460:462, *476-479*, S.Ct. 103:1303, *1311-1313* (1983)]. This hearing right applies to any evidentiary assumption or presumption, whether jurisdictional or not.

Moreover, the due process clause of the 5th Amendment sets limits upon the power of a court to make proof of one fact or group of facts evidence of the existence of the ultimate fact on which the court's decision is predicated [*Tot v. United States*, U.S. 319:463, *467*, S.Ct. 63:1241 (1943)]. For the district court to determine any fact, jurisdictional or not, without an evidentiary hearing would constitute a misuse and abuse of its judicial notice power and improper judicial decision-making by presumption that would deprive the plaintiff of a valuable *right* of U.S. citizenship -- access to the federal courts for the determination or vindication of his rights under the U.S. Constitution and Federal laws.

Without the requirements of due process, a court is denied the benefit of the adversary process [*Burns v. United States*, U.S. 501:129, S.Ct. 111:2182 (1991)]. Moreover, where the adversary processes is not permitted to function properly, there is an increased chance of error and with that the possibility of an incorrect result (*Id.*). Moreover, strict adherence to due process of law is our society's only assurance of "equal justice under law."[4]

---

[4] "No [hu]man in this country is so high that [s/]he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government from the highest to the lowest, are creatures of law, and are bound to obey it" [*Butz v. Economou*, U.S. 438:78, S.Ct. 98:2894, *2910* (1978)].

## 3.0 YIELDED ERRONEOUS FACTS

In its deciding the motion to dismiss by improper judicial notice procedures, the district court made erroneous factual determinations *per se* or by omission. "An omission may be equally as misleading as a false declarative statement."[5] While the district court

> did not misstate an empirical fact, [the court] did omit facts that were highly relevant to an accurate characterization of the fact that were stated. ... The presentation amounts, in its totality, to a half-truth that can be just as misleading, sometime more misleading, than an absolutely false representation.[6]

For example:

| Memorandum Opinion | Correct Fact |
|---|---|
| "Plaintiff ...filed this action ... to *challenge his suspension* from the practice of law ..." [¶¶1-1; 1-2] | Plaintiff filed this action to reopen dismissed habeas corpus proceedings in order to vacate civil and criminal contempt D.C. Court of Appeals judgments arising out of alleged violations of his suspension under unconstitutional reciprocal disciplinary procedures (imposition of interim and final law license suspensions without notice or opportunity to be heard) and civil rights violations arising out of or related to that suspension, including but not limited to--prosecutorial misconduct, denial of due process rights in investigatory and adjudicatory phases of reciprocal disciplinary proceedings, violations of 4th Amd. prohibition against unreasonable searches and seizures involving an unlawful search of his bank records based upon improper use of C.L.E. check information, violations of 8th Amd. right to cruel and usual punishment and racial and/or religious discrimination under the equal protection clause of the 14th Amd. (made applicable to DC residents by the 5th Amd.'s Due Process Clause) in imposing an excessive suspension now in its 12th year (June 1995 to date), etc. |
| "In 1997, the plaintiff was suspended from the practice of law for three years by the Board of Professional Responsibility as reciprocal discipline for his actions while a member of the Florida Bar" [¶2-2] | It is undisputed that plaintiff was subject to interim suspension of his law license in June 1995 without notice or hearing, which was reaffirmed in March 1996, and became a final suspension in April 1997 by the D.C. Court of Appeals as reciprocal discipline for resignation of the Florida Bar while under disciplinary investigation for charging an unreasonable fee without a finding of misconduct by the Florida court. The interim period of suspension was for a 1 yr.-10 mons. period (June 1995-April 1997), and final suspension for some 10 years (April 1997 - date and continuing). Plaintiff contends that his due process rights under D.C. statutory and bar disciplinary rules governing interim and final suspensions and interpretative case law, D.C. Administrative Procedures Act governing "contested cases" of license revocations by D.C. governmental agencies, and the 5th Amd. Due Process Clause were |

---

[5] "G. Omissions," Joseph, *Sanctions: The Federal Law of Litigation Abuse* 1989:139.

[6] *In re Ronco, Inc.*, F.2d 838:212, *218* (7th Cir., 1988) [A Civ. R. 11 sanctions case holding that if a paper is rendered misleading by virtue of the omission of relevant and unpriviledged facts, the signer may be subject to sanction.]

| | violated and that the reciprocal disciplinary procedures are unconstitutional either *per se* or as applied. |
|---|---|
| "Plaintiff was convicted of criminal contempt for violating this suspension" [¶2-3] | Plaintiff was first convicted of civil contempt for disobedience of an order to compel production of documents under an executive subpoena (issued by Assistant Bar Counsel DeSilva) for financial and case records based upon information gleaned through an illegal search and seizure of his bank records by use of information from a C.L.E. check given for a course in billing ethics; and was next convicted of criminal contempt based upon review of the materials produced in the civil contempt proceedings. Plaintiff contends that D.C. Bar prosecutor DeSilva violated the *Brady* principles for full and complete disclosure of exculpatory evidence in both the civil and criminal contempt proceedings. Bar disciplinary proceedings being *quasi*-criminal in nature.[7] |
| "[P]laintiff claims that various defendants committed fraud by not revealing the existence of a report related to a 1992 investigation into plaintiff's conduct as a member of the Florida Bar in response to allegations that plaintiff charged clients an unreasonable fee for his services (the '*Richardson/Rankin* report')" [¶5-2] | Plaintiff claimed that bar prosecutors violated his investigatory due process rights expressed in the D.C. Bar disciplinary rules that required notice to the accused attorney when an investigation is 'docketed' or commenced, violated disclosure principles under *Brady* and bar ethical principles governing prosecutorial disclosures, committed fraud against the D.C. Court of Appeal judges by nondisclosure when commencing interim suspension and adjudicating civil and criminal contempt, failed to disclose the 'contact member' on the D.C. Board of Professional Responsibility who did not recluse her/himself from plaintiff's reciprocal disciplinary proceedings as required by the Bar rules and due process principles governing fair procedures and an impartial decision-maker, and that these non-disclosures continue to date. Plaintiff also claims that the D.C. bar prosecutors conspired to deprive him of his law license and later illegally charged him with civil and criminal contempt violations arising out of his unconstitutional suspensions based upon the illegal search and seizure of his bank records by use a C.L.E. check. |
| "Plaintiff claims that he was not made aware of this investigation despite requests for documents…" [§5-3] | Plaintiff has due process rights to such disclosure of investigations upon commencement under D.C. Bar rules, the D.C. Administrative Procedures Act, and the 5th Amd. of the U.S. Constitution; and such fraudulent and conspiratorial nondisclosure was perpetrated on the D.C. Court of Appeals judges in Richardson's reciprocal disciplinary and civil/criminal contempt proceedings and the Federal courts' civil actions and habeas corpus proceedings. |

Such improper adjudication compels the district court to reconsider the court's dismissal and vacate it.

## C. *CORAM NOBIS* APPLICATION OVERLOOKED

In the district court's dismissal of plaintiff's complaint, the court failed to address the plaintiff's jurisdictional basis of *coram nobis* although the court cites the jurisdictional paragraph 7 [App. A: Mem. Op. ¶4-1]. The district court's jurisdiction

---

[7] *In re Ruffalo*, U.S. 390:544, *551*, S.Ct. 88:1222, *1226* (1968).

lies in **F.R.Civ.P. 60(b)** permitting the court to vacate judgments under certain enumerated circumstances (e.g. newly discovered evidence, fraud upon court, lack of jurisdiction, or "any other reason justifying relief from the operation of the judgment"), *US §28:1651 allowing the court to issue on motion a writ of coram nobis or other extraordinary writs necessary in aid of the district court's habeas corpus jurisdiction,* ... [Compl. ¶7]

A writ of *coram nobis* is an appropriate remedy by which the district court can correct errors in criminal convictions where other remedies are not available [*Korematsu v. United States,* F.Supp 584:1406, *1411-1413* (N.D. Cal., 1984)]. Although Civ. R. 60(b) abolishes various common law writs, including the writ of *coram nobis* in civil cases, the writ still obtains in criminal proceedings were other relief is wanting (Id.). While habeas corpus provisions of U.S.C. §28:2255 supplant most of the functions of *coram nobis,* habeas corpus alone is not an adequate remedy. Richardson's sentenced has been served. Nor can he meet the "in custody" requirements of §28:2255 under any interpretation of the section. It is in these unusual circumstances that an extraordinary writ such as the writ of *coram nobis* is appropriate to correct fundamental errors.

The source of the district court's power to grant *coram nobis* relief lies in the All Writs Act, U.S. C. §28:1651(a). Such a writ application is appropriately heard by the district court in which the denial of habeas corpus was obtained (Id.). This is so even though the decision may have been appealed and affirmed by a federal appellate court (Id.). "Appellate leave is not required for a district court to correct errors occurring before it. It is clear that care must be taken and a hearing afforded when a palpable claim is raised by the [plaintiff] and there is an inadequate record or disputed factual issues" (Id., *1412*).

Count #1 seeks to open post-judgment proceeding, that is, to obtain the reinstatement of the dismissed habeas corpus petition, through the *dual* application of writ of *coram nobis* and Civ. R. 60(b) principles. Generally, the writ of *coram nobis* is sought on the grounds that (1) newly discovered evidence obtained in Richardson's 2001-2004 reinstatement proceedings [*In re Richardson,* A.2d 874:361 (D.C. 2005)] compellingly demonstrates that prosecutorial misconduct in the nature of the obstruction of justice by concealment from the plaintiff and DCCA bar officials (its Board, and 3-judge panels or single-judges) of the existence of a disciplinary investigation and its records as required by the

D.C. Bar Rules; and nondisclosure or suppression of material evidence in the investigatory, prosecutory and adjudicatory phases of Richardson's reciprocal disciplinary proceedings (and in collateral civil and criminal contempt proceedings in the DCCA and civil and habeas corpus proceedings in the federal courts) that continues even today with the refusal of the DCCA's Board to provide access to undisclosed or suppressed investigatory records. And (2) other errors of fact and due process that fundamentally affect the constitutional validity and regularity of the disciplinary orders and judgment rendered in the reciprocal disciplinary proceedings, which require the district court to issue a writ of *coram nobis* in order to correct an egregious "miscarriage of justice" that resulted in the Richardson's habeas corpus petition being summarily denied without an evidentiary hearing based upon flawed judicial notice factfinding procedures.

Post-judgment procedures for the judicial correction of wrongs committed in the administration of justice, whether civil or criminal in nature, and resulting in the deprivation of life, liberty or property without due process is constitutionally required [*Mooney v. Holohan*, U.S. 294:103, S.Ct. 55:340 (1935); *Hysler v. State of Florida*, U.S. 315:411, S.Ct. 62:688 (1942)]. "[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions agreeable to the usages and principles of law" [28 U.S.C. §1651(a); *United States v. Morgan*, U.S. 346:502, *506-507*, S.Ct. 74:247, *250* (1954)]. Allowed without limitation time, the writ of *coram nobis* was available at common law to correct errors of fact and process and based upon facts or process that affect the validity and regularity of a judgment in both civil and criminal courts (*Id.*). It can also be used, like the writ of *audita quereala* to obtain relief from the effects of a conviction that may exists, i.e. the collateral consequences and penalties or civil rights violations that can result [*United States v. Ayala*, F.2d 894:425 (D.C. Cir., 1990); *Morgan*, U.S. 346:*512-513*, S.Ct. 74:*253*].

However, "[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy [of *coram nobis*] only under circumstances compelling such action to achieve justice" [*Id.*, U.S. 346:511, S.Ct. 74:252]. Thus, the prevention of the 'miscarriage of justice' is the overriding justification for the imposition of this

extraordinary remedy unrestricted by a limitation or laches bar in situations of concealment, nondisclosure or suppression of evidence whether intentional or not by a prosecutor or other custodian. And because the writ of *coram nobis* is an extraordinary remedy, it may not issue unless the plaintiff demonstrates error amounting to a miscarriage of justice [*Douglas v. United States*, A.2d 703:1235 (DC, 1997)].

*Coram nobis* is brought in the court that entered the judgment and requires an evidentiary hearing [*United States v. Hayman*, U.S. 342:205, *221 n.36*, S.Ct. 72:263, *273 n.36* (1952)], which would include consideration of "errors of the most fundamental character" (Id., U.S. 346:*512*, S.Ct. 74:*253*). They include: (1) obstruction of justice and nondisclosure or suppression of material evidence by prosecutors [*Id; Mooney* (prosecutorial deception, withholding required due process notice, suppression of evidence); *United States v. Keogh*, F.2d 417:885 (2nd Cir., 1969) (suppression of evidence by prosecutor); *Kiger v. United States*, F.2d 315:778 (7th Cir., 1963) (prosecutorial deception, concealment or suppression of evidence); *Strickler v. Greene*, U.S. 527:263, S.Ct. 119:1936 (1999) (nondisclosure or suppression of evidence review standards for *Brady*[8] violation)]; and (2) due process violations by the government whether acting "through its legislature, .... *courts*, ... executive, or *administrative* officers" (*Kiger*, 342; *Mooney*) as the use of illegal, inadmissible or no evidence to convict (*Moon*, 523), a lack of fair or impartial trial procedures or tribunal (*Id.*, 533), or depriving the trial court of significant mitigating information [*United States v. Hamid*, A.2d 531:628, (DC, 1987)].

In order for a plaintiff to prevail on a writ of *coram nobis*, each of the following requirements must be satisfied, the (1) court must be unaware of the facts or process giving rise to the petition; (2) omitted information must be such that it would have prevented the penalty or judgment; (3) petitioner must be able to justify failure to provide information; (4) error of fact or process must be extrinsic to the record; and (5) error must be of the most fundamental character [*Douglas*, 1236; *Hamid*, 634]. And it is the plaintiff who bears the burden of proof since there is a presumption that the proceeding in question was without error [*Moon v. United States*, 106 U.S. App. D.C. 301, *303*, 272 F.2d 530, *532* (1959)].

---

[8] *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

Having overlooked this jurisdictional basis for plaintiff's claims, the district court should vacate this dismissal for such consideration.[9]

## D. CIV. R. 60(B) MISAPPLIED OR MISAPPREHENDED

### 1.0  CLAIM OF *BRADY* VIOLATION CONSTITUTES "EXTRAORDINARY CIRCUMSTANCES"

Civ. R. 60(b) provides a nonexclusive procedure whereby, in appropriate cases, a party may be relieved of a final judgment. In particular, the Rule grants federal courts broad authority to relieve a party from a final judgment "upon such terms as are just" [Id. (b)(6)] provided that the motion is *made within a reasonable time* and not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5).[10] It does not particularize the factors that justify relief, but Civ. R. 60(b) provides courts with authority, "adequate to enable them to vacate judgment whenever such action is appropriate" [*Liljeberg v. Health Svcs. Acquisition Corp.*, U.S. 486:847, *863-864*, S.Ct. 2194:*2204-2205* (1988) quoting *Klapprott v. United States*, U.S. 335:601, *614-615*, S.Ct. 69:384, *390* (1949)] in "extraordinary circumstances" [*Liljeberg* quoting *Ackermann v. United States*, U.S. 340:193, 71 S.Ct. 209 (1950)].

The district court finds from the allegations of the complaint that "plaintiff has not asserted sufficiently 'extraordinary circumstances' to justify relief from the dismissal of the habeas corpus petition" [App. "A"--Mem. Op. ¶5-1]. While federal courts in *coram nobis* proceedings have found (1) that obstruction of justice and nondisclosure or suppression of material evidence by prosecutors-- i.e. prosecutorial deception, withholding required due process notice, concealment or suppression of evidence under *Brady*[11] principles,  and (2) due process violations by the government whether acting through its legislature, courts, executive, or administrative officers as the use of illegal, inadmissible or no evidence to convict, a lack of fair or impartial trial procedures or tribunal, or depriving the trial court of significant mitigating information (see cases cited under "*Coram Nobis* etc." section above) are "errors of

---

[9] *Dozier v. Ford Motor Co.* U.S.App.DC 227:1, *3*, F.2d 702:1189, *1191* (1983)=*GAF v. Corp. v. United States*, F2d 818:901, *913n.76* (**D.C. Cir.**, 1987) ["If there is *in fact a basis for jurisdiction*, and the claim remains open for an action in some court, it seems better to *allow resort to the available jurisdiction*."]

[10] Plaintiff relies upon (b)(2) and (b)(3), "newly discovered evidence" and "fraud…, misrepresentation, or other misconduct of an adverse party", in addition to (b)(6).

[11] *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

the most fundamental character" (*United States v. Hayman*: U.S. 346:*512*, S.Ct. 74:*253*), the district court without an evidentiary hearing finds otherwise.

However an allegation that the *Brady* principles of prosecutorial disclosure in criminal and *quasi*-criminal (of which bar disciplinary proceedings are included) proceedings were violated as plaintiff does (Compl ¶ 33), sufficiently states "extraordinary circumstances" for such allegations suggest "that a fundamental miscarriage of justice would result from a failure to entertain the claim" [*Rodriguez v. Mitchell*, F.3d 252:191 (2nd Cir., 2001)]. Not only is the integrity of the habeas corpus proceedings affect,[12] but also the integrity of every civil action commenced by the plaintiff in the federal courts and in the D.C. Court of Appeals' reciprocal disciplinary and contempt proceedings, both civil and criminal. Assessment of whether "extraordinary circumstances" in fact exist should be done in an evidentiary setting and not based upon allegations in pleadings. Reconsideration is therefore appropriate.

## 2.0 ESTOPPEL BARS "REASONABLE TIME" LIMITATION ON CLAIMS

As regards reopening the habeas corpus proceedings and its limitation of a "reasonable time," it is a factual inquiry that cannot be made on a motion to dismiss. Moreover, neither the defendants nor the district court *sua sponte* can raise this limitation defense for the defendants are equitably estoppel due to their prosecutorial misconduct and fiduciary relationship to the plaintiff. In the district court's Memorandum Opinion, the court concluded that the "plaintiff's Rule 60(b)(6) motion was not brought within a "reasonable time" [Mem. Op. ¶ 6-1]. Therefore, since the "reasonable time" limitation being applicable bars reopening of the habeas corpus proceedings to consider certain due process claims (i.e., denial of investigatory due process, nondisclosure and concealment of evidence, prosecutorial misconduct, obstruction of justice, fraud upon local D.C. and federal courts in eclectic *quasi*-criminal disciplinary and habeas corpus proceedings, civil actions, and civil and criminal contempt proceedings).

---

[12] Since the plaintiff challenges the integrity of the habeas corpus proceedings instead of contesting the merits of the claims resolution based upon newly discovered evidence and fraud under Civ. R. 60, such an action is not barred since "when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas corpus proceedings" [Gonzalez v. Crosby, U.S. 545:531, S.Ct. 125:2541, *2648* (2005). "Fraud on the federal habeas court is one example of such a defect" [*Rodriguez v. Mitchell*, F.3d 252:191, *199* (2nd Cir., 2001)].

However, this affirmative defense must be *proved* by the parties asserting it [Civ. R. 8(c)] and this was not done and cannot be done a Civ. R. 12(b)(1) motion.

Plaintiff invokes the doctrine of 'fraudulent concealment' or 'equitable estoppel' and has pleaded with specificity the defendants D.C. bar prosecutors' misconduct and a fiduciary relationship. Thus, the defendants (and the district court *sua sponte*) are barred from asserting this 'reasonable time' limitations as a defense. Fraudulent concealment or 'equitable estoppel' of a cause of action tolls any limitations period until the cause of action is discovered or might have been discovered by the exercise of due diligence [*Cerbone v. Int'l Ladies Garment Workers' Union*, F.2d 768:45 (2nd Cir., 1985); *Richards v. Mileski*, F.2d 662:65, *69* (**D.C. Cir.**, 1981)]. Although the doctrine is frequently referred to as "fraudulent concealment," the defendant's conduct need not be actually fraudulent [*Veltri v. Bldg. Svc. 32B-J Pension Fund*, F.3d 393:318 (2nd Cir., 2004). It includes active conduct by a defendant that is above and beyond the wrongdoing upon which the plaintiff's claim is based that prevents the plaintiff from suing in time [*Guerrero v. Gates*, F.2d 357:911 (9th Cir., 2004)].

Mere silence or unwillingness to divulge wrongful activities is not sufficient [*Browing v. Levy*, F.3rd 283:761, *770* (6th Cir., 2002)]. However, when a fiduciary relationship exists, omission by silence may constitute the supplying of false information for purposes of determining whether the defendant fraudulently concealed the plaintiff's cause of action [*Brawn v. Oral Surgery Asso.*, A.2d 819:1014 (Me., 2003)]. That is, if a confidential or fiduciary relationship exits between the parties that imposes a duty to disclose, mere silence by the one under that duty constitutes fraudulent concealment and will be sufficient to toll the applicable limitations provision [*Duncan v. Leeds*, F.2d 742:989 (6th Cir., 1984)].

Moreover, to support the application of estoppel, the plaintiff must demonstrate that he/she relied on the defendant's misconduct in failing to file in a timely manner, and must plead with particularity the facts that give rise to a claim of fraudulent concealment [*Guerrero*]. Finally, in the absence of a contrary intent by Congress, the principles of equitable tolling due to fraudulent concealment are read into every federal statute of limitations whether legislatively or judicially created, as well as State statutes of

limitations that are adopted by federal law [*CPI Crude, Inc. v. Coffman*, F.2d 776:1546 (Emer. Ct. App., 1985); *Cook v. Deltona Corp.*, F.2d 753:1552 (11th Cir., 1985)].

The district court states not only that the "reasonable time" limitation bars reopening the habeas corpus proceedings, but that plaintiff's remaining claims (Count #2) are

> barred by the applicable three-year statute of limitations for civil rights violations. D.C. Code §12-301(8) ...Plaintiff claims [*sic:* alleges?] that he learned of the existence of the supposedly withheld *Richardson/Rankin* report in February 2003, which allegedly gave rise to his cause of action (Compl. ¶19), but did not file suit until September 2006.

In other words, the plaintiff discovered or should have discovered the due process claims more than three (3) years ago under the applicable D.C. limitations statute, which is reasonable under the circumstances. However, fraudulent concealment of a cause of action will defer the statute until discovery *or* reasonable opportunity for discovery of the cause of action, and both are *factual* inquiries [see, *Bailey v. Glover*, U.S. (21 Wall) 88:342, L.Ed. 22:636 (1874)]. Moreover, because involved here are violations of ethical and fiduciary responsibilities of bar prosecutors, either the statute of limitations has not tolled yet or the movant defendants are estopped from claiming the limitations defense for public policy reasons. Let us unpack this proposition further.

Whenever a confidential or fiduciary relationship is established, the burden falls upon the dominant or trusted party to show that her/his conduct was proper [cf. *Desser v. Woods*, A.2nd 296:586 (MD 1972); *Midler v. Shapiro*, A.2d 364:99 (Md., 1976)]. Thus, having clearly established a fiduciary relationship in this action, the burden of production (not of persuasion) is upon the movant defendants in an evidentiary hearing or trial, not the plaintiff. Moreover, where a fiduciary relationship exists, the ordinary duty of one injured to make inquiry in order to discover the existence of a fraud is relaxed [Id.].

The confiding party (plaintiff in this scenario) is under no duty to make inquiry to discover that the fiduciary duty has been breached. Therefore, the accrual date of the statute of limitations can be affected. When a fiduciary duty exists at the time the plaintiff ordinarily may be charged with having knowledge of the existence of fraud, he/she may be excused from the duty of making inquiry [*Desser;*

*Spinelli, Kehiayan-Berman, S.A. v. Imas Gruner, A.I.A & Asso.,* F. Supp. 602:372 (D.Md., 1985); *Herring v. Offutt,* A.2d 295:876 (MD, 1972)].

"Misconduct" by an attorney occurs if he/she 'engages in conduct involving *dishonesty, fraud, deceit,* or *misrepresentation* or that is *prejudicial to the administration of justice*' [D.C. Bar Rules of Professional Conduct, DR 1-102(A)(4)(5)]. Moreover, D.C. Bar DR 7-103(B) ["Performing the Duty of Public Prosecutor or Other Government Lawyer"] provides, *inter. alia:*

> A public prosecutor or government lawyer in criminal litigation *shall make timely disclosure* ... to the defendant if he has no counsel, of the existence of evidence, known to the prosecutor or other government lawyer, that *tends to negate* the guilt of the accused, *mitigate* the degree of the offense, or *reduce* the punishment.

Movant defendants do not dispute the fact that nondisclosure and concealment occurred of evidence in Richardson's reciprocal disciplinary, civil and criminal contempt proceedings, and habeas corpus proceedings. Neither was the disclosure made in the any of the civil actions filed by Richardson related to or arising out of those reciprocal disciplinary and contempt proceedings. Specifically, plaintiff's core complaint is the denial of his due process rights to notice and an opportunity to be heard in the investigatory and adjudicatory reciprocal disciplinary phases *before* revocation of his license to practice law by the D. C. Court of Appeals.

Bar prosecutors owed Richardson a fiduciary duty to disclose evidence that tended to negate, mitigate or reduce the penalties imposed upon him in the reciprocal disciplinary proceedings (suspension now in its 12th year), civil contempt (a one year sentence, suspended due to compliance), and criminal contempt (fine and jail sentence, with suspension of sentence in lieu of 2 years *supervised* probation). The adverse affect of those disciplinary actions are still being felt by the plaintiff long after the criminal contempt conviction.

Bar prosecutors have failed to perform their fiduciary duty which has not terminated since they have steadfastly refused to disclose [1] the contents of the 1992-1994 *Richardson/Rankin* 'undocketed' investigation that was *concealed* from him and [2] the name of the D.C. Board on Professional Responsibility's [Board's] 'contact person' who participated in the *undisclosed* merger of

*Richardson/Rankin (1992-1994)* with the 1994-1997 *Richardson/Bar Counsel* investigation. Those nondisclosures or concealments not only denied Richardson certain investigatory due process rights, but impeded the defense of his license revocation before the D.C. Court of Appeals in reciprocal disciplinary and civil/criminal contempt proceedings and his prosecution of civil rights and other constitutional/common law torts in the Federal district courts. A motion to dismiss is not the proper vehicle for examining these issues, an evidentiary hearing is required.

## E.  PRECLUSION MISAPPREHENDED AND MISAPPLIED

**1.0 PRECLUSION (*RES JUDICATA/*COLLATERAL ESTOPPEL) INAPPLICABLE.**

Where a plaintiff's failure to raise or reserve a cause of action in an earlier case between the parties was caused by the defendant's 'wrongful concealment' of facts giving rise to the claim, the *res judicata* defense is not available [*Browning v. Levy*, F.2d 283:761, *770-771* (6th Cir., 2002); *McCarty v. 1st Ga. Ins. Co.*, F.2d 713:609, *612-613* (10th Cir., 1983)]. The two elements that must be shown are: (1) wrongful concealment of material facts that (2) prevent plaintiff from asserting her/his claim in the first action. In order to invoke the doctrine of 'fraudulent concealment,' affirmative concealment must be shown, and mere silence or unwillingness to divulge wrongful activities is not sufficient, there must be some trick, plan or scheme intended to exclude suspicion and prevent inquiry. However, any word or act tending to suppress the truth will suffice, especially when there is a fiduciary relationship between the parties [See, *Richards v. Mileski*, F.2d 662:85 (**D.C. Cir.**, 1981) (type of activity); *Desser; Herring* (fiduciary relationship)].

The district court's dismisses the plaintiff's civil rights claims by applying the doctrine of collateral estoppel (Mem. Op. ¶¶ 8-1 to 9-3). In the district court's opinion, the court concludes that the plaintiff raised the claims in this action in prior litigation between the plaintiff and the defendants, jointly or severally, in various litigation contexts since 199In addition to being denied an evidentiary hearing opportunity in *all* proceedings of whatever nature-- i.e. bar disciplinary, civil and criminal contempt, civil actions, habeas corpus in D.C. and/or federal courts--, *except* in the case before Judge Hogan, there Richardson was allowed an oral argument [*Richardson v. District of Columbia Court of Appeals*, CA No.

95-1272 (TFH)],[13] there was a suppression of evidence (nondisclosure or concealment) resulting in a denial of investigatory due process rights to the plaintiff in the reciprocal bar disciplinary proceedings, nondisclosure of a 1992 Florida client's complaint for charging an unreasonable fee and of the 1992 complaint's merger with an identical complaint by bar prosecutors in 1994 with the consent of the Board's 'contact member.'

To date, Richardson has not been provided with access to the 1992 Florida investigatory records (*Richardson/Rankin*) to which he is entitled under bar disciplinary rules nor has he been provided with the identity of the Board 'contact member' who approved of the merger so that he can ascertain (1) not only why the merger was not disclosed to him, but more importantly, (2) whether the 'contact member' participated in the 1994-1997 bar disciplinary proceedings, which would constitute a denial of due process (i.e. a biased decision-maker or Board that was not impartial because one of its members had independent knowledge of investigatory facts and under the Board's own rules would be required to recuse her/himself).

## 2.0 JURISDICTIONAL PRECLUSION MISAPPREHENDED AND MISAPPLIED

Lack of "jurisdiction altogether deprives a federal court of the power to adjudicate the rights of the parties" [*Gonzalez v. Crosby*, U.S. 545:524, S.Ct. 125:2641, *2649* (2005) citing *Steel Co. v. Citizens for Better Environment*, U.S. 523:83, *94, 101,* S.Ct. 118:1003 (1998)]. Furthermore, dismissal of a judgment on jurisdictional grounds while not operating as an adjudication on the merits, "will … have preclusive effected *actually* adjudicated" *(GAF Corp: 912, infra.)*. Moreover, judgments are jurisdictionally defective where a "precondition requisite" to the federal court's proceeding with the original suit is not proven or alleged.

---

[13] Parenthetically, under the doctrine of judicial estoppel, the district court cannot conclude [cf. e.g., Mem. Op. ¶9-3] that plaintiff had a full and fair opportunity to be heard in the reciprocal disciplinary proceedings (which he did not) since the bar prosecutors represented to Judge Hogan that Richardson would receive an *evidentiary* hearing (see, *Browning,* F.3rd 283:775). That doctrine bars a party from asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, whether the court adopted the position or a contrary position either as a preliminary matter or as a part of a final disposition (Id.).

Thus, the judgments relied upon by the district court as being dispositive of the jurisdictional issues in this case are themselves jurisdictionally defective because (1) the jurisdictional prerequisites of the *Rooker-Feldman* doctrine that the state court judgment be valid, i.e. that the court have jurisdiction of the person and subject matter, before the *Rooker-Feldman* doctrine come to play, was not actually litigated in any of the prior cases; And (2) the due process claims relating to the plaintiff's right to notice and hearing *prior to* suspension of his law license are excepted from the operation of the *Rooker-Feldman* doctrine and were never actually litigated in any prior actions.

## 2.1 'PRECISE' JURISDICTIONAL ISSUES NEVER AJUDICATED IN PRIOR CASES

Last, but by no means least, the district court without listing the plaintiff's civil rights claims individually and applying preclusion to each claim as is required on a motion to dismiss (*Conley*), the court simply decides that the has no jurisdiction under the *Rooker-Feldman* doctrine and that previous decisions of Federal courts applying the doctrine to preclude litigation of [=immune defendants from liability on] the instant constitutional and civil rights claims in  plaintiff's prior excursions into the Federal courts for relief from the unconstitutional deprivation of his law license [Mem. Op. ¶2-1],  these 'claims' where dismissed on jurisdictional grounds and by virtue of the doctrine of collateral estoppel are 'dead on arrival' in this action. This court opined  that plaintiff's

> previous *challenges ... to the constitutionality of his suspension* were dismissed for lack of jurisdiction under the *Rooker-Feldman* doctrine ... \*\*\* Here the issue of *whether the district court has jurisdiction to review the [D.C.] court decision has previously been litigated four times* ...and as to each of these challenges [to] the constitutionality of the suspensions[,] were dismissed pursuant to the *Rooker-Feldman* doctrine... . Thus, the *issue of jurisdiction necessarily has been determined by the appropriate courts* [Mem. Op. ¶¶ 3-1; 9-1 to 9-2].

The court qualified this holding with the proviso that,

> [a]lthough [Civ. R.] 41(b) provides that dismissal for lack of jurisdiction will not operate as an "adjudication on the merits," it will, however, *preclude litigation of the precise issues of jurisdiction* that lead to the dismissal in the previous case" citing *GAF Corp. v. United States*, F.2d 818:901, *[912-]913* (**D.C. Cir.,** 1987).

See also, *Boone v. Kurtz,* F.2d 617:435, *436* (5th Cir., 1980) (*per curium*).  Moreover, the "preclusive effect of the first jurisdictional judgment is limited to matters actually raised and necessarily decided; it

does not extend to matter that could have been raised, as would the preclusive effect of a judgment on the merits" [*GAF Corp*: 913 citing *Segal v. A.T.&T. Co.*, F.2d 606:842, *844-845* (9th Cir., 1979); See also, *Dozier v. Ford Motor Co.*, U.S. App. D.C. 227:1, *3*, F.2d 702:1189, *1191*].

While giving 'lip service' to the proposition that a judgment dismissing an action for lack of jurisdiction will have no preclusive effect on the cause of action originally raised, the district court does just that. In other words, although prior complaints by the plaintiff were dismissed for lack of jurisdiction, the district court decided by use of improper judicial notice procedures without making any specific references to the nature of the respective causes of action in each case and the federal court's disposition of each cause of action as required under standards for complaint dismissals (*Conley*),   that the jurisdictional dismissal was in fact an adjudication on the merits of the underlying constitutional and civil rights claims so as to make the prior jurisdictional adjudications *res judicata* on the substance of plaintiff's unidentified asserted claims.

## 2.2  AJUDICATION OF JURISDICTIONAL PREREQUISITES -- I.E. VALID D.C. DISCIPLINARY ORDERS/JUDGMENTS-- FOR *ROOKER-FELDMAN* PRECLUSION OR IMMUNITY IS LACKING IN PRIOR DECISIONS

(a) *Nature of Rooker-Feldman Doctrine.* What is now known as the *Rooker-Feldman* doctrine was first announced in *Rooker 1923* reaffirmed  60-yrs latter in *Feldman 1983*.  The doctrine holds that among federal courts, only the U.S. Supreme Court has subject matter jurisdiction to review State court (including D.C. courts) judgments.  It is premised on the grounds of forging the integration of two coterminous judicial systems-- one federal and one State --, as well as on the statutory grounds that U.S.C. §28:1257 gives the Supreme Court exclusive federal jurisdiction to review State court judgments (including non-final orders), while U.S.C. §§28:1331 and 1334 gives federal district courts original trial, but not appellate jurisdiction.  *Rooker-Feldman* not only applies to claims that were 'actually raised' before the State court, but also to claims that are "inextricably intertwined" with State court determinations [*Feldman,* U.S. 460:482 n.16, S.Ct. 103:1303].

Justice Marshall, concurring in the *Pennzoil II (infra)* judgment, defined what is meant by "inextricably intertwined" when considering a plaintiff's constitutional claims under the *Rooker-Feldman* doctrine as follows:

> While the question of whether a federal constitutional challenge is *inextricably intertwined* with the merits of the state-court judgment may sometime be difficult to answer, it is apparent as a *first step*, that the federal claim is inextricably intertwined with the state-court judgment if the *federal claim succeeds only to the extent that the state court wrongly decided the issues before it.* Where federal relief can *only be predicated upon a conviction that the state court was wrong*, it is difficult to conceive the federal proceeding as, in substance, anything other than *a prohibited appeal of the state-court judgment. Pennzoil, Inc. v. Texaco, Inc.,* 481 U.S. 1, *25*, 107 S.Ct. 1519, *1533* (1987) [*Pennzoil II*].

"'Inextricably intertwined' means, at minimum, that where a federal plaintiff had *an opportunity to litigate a claim in a state proceedin*g ..., subsequent litigation of the claim will be barred under the *Rooker-Feldman* doctrine if it would be barred under the principles of preclusion" [*Moccio v. N.Y. State Ofc. of Court Admin.,* 95 F.3d 195, *199-200* (2nd Cir., 1996)]. ].

**(b) Prerequisites to Rooker-Feldman Proceedings.** A plain reading of *Rooker* reveals that the jurisdictional factual predicate (i.e. "that judgment was rendered in a cause") for application of the doctrine were twofold: (1) that "the [State] court *had jurisdiction of both* the *subject-matter* and the *parties;*" and (2) "that a *full hearing* was had" (Id., U.S. 263:415, S.Ct. 44:150). It was also held by the *Rooker* court that State courts are obligated to adjudicate the constitutional issues, "If the constitutional questions ... *actually arose* in the cause, it was the *province and duty of state courts to decide them*" (Id.). By "province and duty", the *Rooker* court meant that it was the legal obligation of the State court to perform the function to 'decide constitutional questions' that are "actually" presented in a case. It is mandatory, therefore, that the State court entertains the constitutional challenges for the judgment to be given jurisdictional immunity under the *Rooker-Feldman* doctrine.

In other words, a valid State court judgment must be presented to the federal court, a judgment in which the State court has jurisdiction of the person *and* subject matter and a judgment that satisfies the essentials of due process, notice and hearing. Moreover, any grounds, such as fraud in the procurement of a judgment, that would void or invalidate the judgment in State courts also would also void or invalidate

that judgment in the federal courts. Thus, preliminarily, if the federal courts cannot give full faith and credit to the State court judgment, jurisdictional immunity under *Rooker-Feldman* does not attach.

Therefore, the *first step* for analysis of a federal plaintiff's claims where the *Rooker-Feldman* doctrine may be implicated is to determine whether the State court's decision is void or invalid, that is, can the judgment receive 'full faith and credit' [U.S.C. §28:1738] in the federal court regardless of whether or not *Rooker-Feldman* provides a jurisdictional immunity. It is well settled and fundamental to the exercise of federal jurisdiction that a State court judgment or decision rendered without jurisdiction (personal or subject matter) or in violation of due process (notice and hearing) is void *ab initio* and cannot be given full faith and credit.[14] Likewise, a judgment that is void in a State due to fraud upon procurement or some other irregularity that would invalidate the judgment *ab initio*[15] would prevent the federal court from giving 'full faith and credit' to the State decision in order to determine if *Rooker-Feldman* would be a jurisdictional bar to consideration of a federal plaintiff's claims that have nexus to the State court's decision.

*(c) Standards of Review.* *Rooker-Feldman* principles are to be construed narrowly [*Parkview Assocs. v. City of Lebanon*, 225 F.3d 321 (3rd Cir., 2000)]. In *Leaf v. Supreme Court of Wisconsin*, 979 F.2d 589, *897* (7th Cir., 1992) the appeals court stated that the manner of assessing a plaintiff's claims in light of *Rooker-Feldman* requires a two-step inquiry: *First,* was the disciplinary proceeding before the

---

[14] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, *415*, 44 S.Ct. 149, *150* (1923); *Johnson v. Zerbst*, 304 U.S. 458, *467-468*, 58 S.Ct. 1019, *1024-1025* (1938) [A court has no authority to deprive a person of life, liberty or property without complying with constitutional mandates for due process and fair trial procedures since they are essential jurisdictional prerequisites and noncompliance voids any judgment rendered.]; *Bass v. Hoagland*, 172 F.2d 205, *209* (5th Cir., 1949) [A judgment whether in a civil or criminal case reached without due process is without jurisdiction and void; "the United States is forbidden by the fundamental law to take either life, liberty or property without due process of law, and its courts are included in this prohibition"]; *In re Four Seasons Securities Law Litigation*, 502 F.2d 834, *842* (10th Cir., 1974) [A judgment is void if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process.]; *In re James*, 940 F.2d 46, *52-53* (3rd Cir., 1991) [While federal courts lack jurisdiction to review or reverse a State court judgment on the merits, they do have the power to vacate State court judgments that are considered void *ab initio* or a legal nullity]; *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S., 286, *291*, 100 S.Ct. 559, *564* (1980) [a judgment rendered in violation of due process of law is void in the rendering jurisdiction and cannot be accorded full faith and credit elsewhere].

[15] *Chambers v. NASCO, Inc.*, 501 U.S. 32, *44*, 111 S.Ct. 2123 (1991) [A court has inherent power to vacate its own judgment on proof that fraud has been perpetrated on the court.]

court a *judicial* proceeding? And *second,* if so, are the plaintiff's claims *"inextricably intertwined"* with those judicial proceedings so as to make consideration of plaintiff's claims an impermissible review of State *judicial* proceedings? [*Feldman,* 460 U.S. at 482 n.16, 103 S.Ct. at 1315 n.16].

The *Rooker-Feldman* doctrine applies not only to claims that were 'actually raised' before the State court, but also to claims that are 'inextricably intertwined' with State court determinations [*Feldman,* 460 U.S. at 482 n.16, 103 S.Ct. 1303]. In applying the "inextricably intertwined" element of the *Rooker-Feldman* doctrine to bar a plaintiff's facial challenge to a State court's decision, the reviewing court must initially

> distinguis[h] between plaintiffs who claim their injuries are ***directly attributable to an erroneous state court decision*** and plaintiffs who claim injury ***independent of any state court judgment.*** ... [C]laims for relief are barred ... if upholding the claims and granting *relief would effectively void the state court ruling.* ... However, the question is framed, the underlying inquiry remains whether the 'district court is in essence being called upon to review the state court decision'" [*Levin v. Atty. Registration and Disciplinary Commission of the Supreme Court of Illinois,* 74 F. 3d 763, 766 (7th Cir., 1996) (Citations omitted)].

***(d) Case Application.*** Plaintiff's claims are based upon unconstitutional, illegal, tortious, criminal and unethical actions taken by the judicial and nonjudicial defendants in [1] investigating, prosecuting and convicting him of professional misconduct in D.C. Bar reciprocal disciplinary proceedings (August 1992--April 1997) and post-reciprocal disciplinary activities (April 1997--to date) in or related to the [2] investigation, prosecution and conviction of plaintiff Richardson for civil and criminal contempt, and the [3] prosecution and recent denial of plaintiff's reinstatement petition.[16] It is incumbent upon the district court to make a preliminary determination as to the 'full faith and credit status' of the decisions it cites in ¶¶2-2, 2-3, 3-1, 9-1 of the court's Memorandum Opinion, because it is a "fundamental premise that (a respondent) should not be denied the right to object to the very jurisdictional exercise that causes the injury" [*U.S. Catholic Conference v. Abortion Rights Mobilization,* U.S. 487:72, *78,* S.Ct. 108:2268, *2271* (1988)].

---

[16] *In re Richardson,* No. 04-BG-919, 874 A.2d 361 (D.C., 2005), *reh'g den.*

Richardson alleges in the complaint that his D.C. reciprocal disciplinary decisions, both interim and final, where rendered in violation of his constitutional rights of due process and equal protection,[17] that the DCCA lacked jurisdiction having failed to satisfy the statutory prerequisites for the exercise of its exclusive jurisdiction -- legislative, executive, and judicial -- to regulate the practice of law in the District of Columbia,[18] and that the reciprocal disciplinary decisions were procured based upon fraudulent representations and conspiratorial activities of bar prosecutors and hearing officials through the obstruction of justice and nondisclosure of evidence. An evidentiary hearing is therefore required to allow the district court to determine if the court can give 'full faith and credit' to the D.C. reciprocal disciplinary judgments, *before* the court can determine if *Rooker-Feldman* applies, and if so, whether there are exceptions to the doctrine. Such a hearing would also examine prior decisions of the district or appellate courts involving parties as to whether those courts conducted such an inquiry as to the jurisdictional prerequisites of the *Rooker-Feldman* doctrine so as to provide jurisdictional preclusion as the district court assumed in the Memorandum Opinion (¶9). Therefore, reconsideration is necessary for the district court to complete its adjudicatory functions.

## 2.3 ADJUDICATION OF OTHER DUE PROCESS EXCEPTIONS TO *ROOKER-FELDMAN* DOCTRINE IS LACKING IN PRIOR DECISIONS

*(a) Exceptions to Rooker-Feldman Doctrine.* Of course, *Rooker-Feldman's* jurisdictional immunity does not come to play if the State court judgment is void *ab initio* because it was rendered without subject matter or personal jurisdiction, in violation of the due process (whose essential elements

---

[17] *Richardson*, A2d 692:429 ["On June 27, 1995 (**the D.C. Court of Appeals) ordered Richardson's temporary suspension, *without hearing*,** pending final disposition of the proceeding."] It is undisputed that Richardson never was given notice or an evidentiary hearing in the reciprocal disciplinary proceedings. While disciplinary proceedings that are domestic, i.e. originate in the D.C. disciplinary system as opposed to being based upon a foreign disciplinary order, an accused attorney receives an evidentiary hearing *before* any license revocation or in emergencies where an attorney's license is revoked prior to a hearing, an evidentiary hearing is mandated within 30-days of the interim revocation. However, in reciprocal disciplinary proceedings, an accused attorney, as did Richardson, has his licensed revoked without notice and is not given an evidentiary hearing. Such disparate treatment between domestic and foreign or reciprocal disciplinary proceedings violates due process *and* equal protection.

[18] D.C. Code §§ 11-2503(b) (governing prerequisites for exercise of disciplinary jurisdiction), §2-501(8) [governing right to a evidentiary hearing in "contested cases" before governmental agencies], and 14-101(a) [requiring all evidence be proved under oath].

are notice and opportunity to be heard), or under any other condition that voids, vitiates or invalidates the State court decision, such as fraud in procurement. Other generally recognized exceptions to the application of the *Rooker-Feldman* doctrine to jurisdictionally immunize a State court decision from review by a district court relevant to this motion for reconsideration are:

> FIRST, the jurisdiction of the State adjudication, whether administrative or judicial is one of *limited* subject-matter, i.e. the federal plaintiff could not receive a full and fair hearing because the State adjudicative agency (administrative or judicial) performs specialized functions such in domestic matters, review of administrative agency decisions, bar disciplinary and regulatory matters, and the like and therefore could not resolve the federal claims, e.g. civil rights actions under U.S.C. §42:1983 and other federal statutory or constitutional based tort claims.[19]

> SECOND, the State's adjudicative agency (administrative or judicial) failed to accord a full and fair hearing, i.e. the adjudicative agency did not consider the claims of the federal plaintiff although presented for adjudication, or where the federal plaintiff should have presented the claims for adjudication, or where the claims did not exist at the time of the adjudication;[20]

---

[19] *King v. State Educ. Dept.*, F.3rd 182:162, *163* (2nd Cir., 1999) [*Rooker-Feldman* does not bar suit where State action was trial in a court of *limited* jurisdiction that could not decide claims arising under federal law]; *Hachamovitch v. Debuono*, F.3d 159:687 (2nd Cir., 1998) [Preclusion does not apply in a U.S.C. §42:1983 action where the prior action was brought in a court of *limited* jurisdiction where claim could not be entertained].

[20] In addition to the *Rooker* case itself, other authorities include *Stanton v. D.C. Court of Appeals*, F.3d 127:72 (**D.C. Cir.**, 1991) [Federal due process claims were not considered on the merits by the State court and therefore not barred by *Rooker-Feldman*]. It should be noted that the difference between Richardson's claims and Dr. Stanton's is that Stanton was a *domestic* disciplinary proceedings and he had a *full evidentiary hearing* on the merits of his discipline and was not suspended until after those disciplinary proceedings were complete. While Richardson did not have an evidentiary hearing prior to revocation of his license or at anytime before final revocation of his license to practice law under the established reciprocal disciplinary bar rules. ■ *Nesses v. Shepard*, F.3d 68:1003 (7th Cir., 1995) [Prosecutorial and adjudicatory misconduct, and conspiratorial conduct have independent bases as civil rights action (U.S.C. §42:1983) and is not barred by *Rooker-Feldman*]; *Moccio v. N.Y. State Ofc. Of Court Admin.*, F.3d 95:195, *199* (2nd Cir., 1996) [Where claims were never presented in the State court proceedings and the plaintiff had no opportunity to present the claims in those proceedings, the claims are not "inextricably intertwined" and therefore excepted from the operation of the *Rooker-Feldman* doctrine; *Wood v. Orange County*, F.2d 715:1543, *1547* (11th Cir., 1983) cert. den. U.S. 467:1210, S.Ct. 104:2398 (1984) [Due process exception]; *Biddulph v. Mortham*, F.3d 89:1491, *1495n.1* (11th Cir., 1996) [Applying "exception to *Rooker-Feldman* doctrine when the plaintiff has no 'reasonable opportunity to raise his federal claim in state proceedings'"]; *Catz v. Chalker*, F.3d 142:279, *293-295* (6th Cir., 1998) [Allowing plaintiff's due process claims, holding that such claims were not "inextricably intertwined" with the State court judgment because due process claims "d[o] not implicate the merits of the … decree, only the *procedures* leading up to it" and therefore "relief for … due process claim[s] would not consist of a conflicting judgment on the merits" (Id., 294)]; *Lewis v. East Feliciana Parish Sch. Bd.*, F.2d 820:143, *146* (5th Cir., 1987) [Due process challenge to State proceedings not barred by *Rooker-Feldman* doctrine because "judgment did not reach the issues presented before" district court]; *Parkview Asso. Partnership v. City of Lebanon*, F.3d 225:321, *324-325* (3rd Cir., 2000) [Plaintiff's claims were not "actually litigated

THIRD, there exist a jurisdictional basis independent of the original jurisdiction of the federal courts, i.e. the federal plaintiff's claims constitute a separate and independent cause of action 'apart from' the State adjudication.[21]

FOURTH, a State court is performing a purely nonjudicial function itself or through third party agents, i.e. where the State court enacts rules of ethical conduct and discipline for attorneys or administers those rules of conduct and discipline through third party agents (individuals or institutions), e.g. where a State court investigates and prosecutes violation of its professional regulations governing the practice of law;[22]

---

by the state court" therefore, *Rooker-Feldman* doctrine does not bar those claims because they were not "inextricably intertwined" with adjudication by the State court]; *Lawlor v. Nat'l Screen Svc. Corp.*, U.S. 349:322, S.Ct. 75:865 (1955) [Nonexistent claims are not barred by preclusion since they could not be made subject of a prior action.]

[21] *Stanton* [Federal claims due process claims were independent of disciplinary decisions and therefore not barred by *Rooker-Feldman*]; *Lawrence v. Cohn*, F.Supp. 932:564 (S.D.N.Y., 1996) [Fraudulent misrepresentation is an independent action]; *Manley v. City of Chicago*, F.3d 236:392 (7th Cir., 2001) [Fraudulent conduct and concealment of evidence are independent civil rights claims under U.S.C. §42:1983]; *Sun Valley Foods Co. v. Detroit Marine Terminals, Inc.*, F.2d 801:186, *188-189* (6th Cir., 1986) [while a "district court has no authority to review final judgments of a State court in judicial proceedings ..., (a) federal court 'may entertain a collateral attack on a State court judgment which is alleged to have been procured through *fraud, deception*, accident, or mistake'" (Id., 189)]; *Texaco Inc. v. Pennzoil, Inc,* F.2d 784:1133, 1137, *1141-1147* (2nd Cir., 1986) ; (*Pennzoil I*) [*Rooker-Feldman* does not bar a federal court from exercising jurisdiction over claims that certain State provisions deny plaintiff due process and equal protection as applied] and *Pennzoil, Inc. v. Texaco, Inc.,* U.S. 481:1, *18-19, 21, 28-29, 31 n.3,* S.Ct. 107:1519, *1529, 1531, 1534-35, 1536 n.3* (1987) (*Pennzoil II*) [While the Supreme Court did not specifically rule on the 2nd Circuit Court of Appeals *Rooker-Feldman* holding, it was supported by six (6) concurrences (Justices Scalia, O'Conner, Brennan, Marshall, Blackmun, and Sevens) and a majority of the Justices 'rejected Pennzoil's argument that the rationale of *Rooker-Feldman* properly understood, denied the lower federal courts any authority to displace State courts']; *Carey v. Piphus*, U.S. 435:247, *266,* S.Ct. 98:1042, *1053* (1978) [Whether the deprivation (e.g. license revocation) was itself erroneous is irrelevant in determining whether a due process violation has occurred, for it is the violation of the due process/fair trial procedures rights that is actionable not the deprivation of the property interest. Claims of due process of law violations therefore can exist whether or not the deprivation is wrong or right. It is to assure the fairness of the adjudicatory process that the right of action is predicated upon, not the correctness of the result.]; *Resolute Ins. Co. v. State of No.Carolina*, F.2d 397:586, *589* (4th Cir., 1968) [State court judgments obtained by "*fraud, deception*, accident, or mistake" are excepted from *Rooker* doctrine]; *Centres, Inc. v. Town of Bookfield, Wis.*, F.3d 148:699, *701-703* (7th Cir., 1998) [In civil rights action (U.S. Code §42:1983) the injury alleged by plaintiff, i.e. that a local zoning board decision denying a permit violated due process rights, did not result from the State court judgment itself, but was distinct from that judgment; therefore *Rooker-Feldman* inapplicable]; *Amsden v. Moran*, F.2d 904:748, *753-754* (1st Cir., 1990) [Summarizing the due process jurisprudence in civil rights actions involving revocation of a professional license.]; *Layne v. Campbell County Dept. of Social Svcs.*, F.2d 939:217 (4th Cir., 1991) [Civil rights action exists for denial of due process in State employee administrative grievance proceedings.]; *O'Reilly v. Bd. of Appeals for Montgomery County, Md.*, F.2d 942:281 (4th Cir., 1991) [Civil rights action for denial of taxi license, *held* Board violated licensee's rights under privileges and immunities clause.]; *Johnson v. Supreme Court of Illinois*, F.3d 165:1140, *1142* (7th Cir., 1999) [4th Amd. search and seizure claim or any other similar constitutional claim "would be actionable *apart from*" the State court disciplinary proceedings].

[22] *Lopez v. Vanderwater*, F.2d 620:1129 (7th Cir., 1980) citing *Stump v. Sparkman*, U.S. 435:347, *357,* S.Ct. 98:1099, *1105* (1978); *Schware v. Bd. of Bar Examiners, New Mexico*, U.S. 353:232, *248,* S.Ct.

**(b) Due Process Exception.** *Rooker-Feldman* cannot bar claims that have not been 'actually litigated' and where no opportunity has been provided for a 'full and fair hearing' of the claim in the State court proceedings. Therefore,

> an issue cannot be inextricably intertwined with a state court judgment if the *plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings*. Absent such an opportunity, it is impossible to conclude that the issue was inextricably intertwined with the state court judgment. This limitation on the applicability of *Rooker-Feldman* was first set forth in *Wood v. Orange County*, F.2d 715:1543, *1547* (11th Cir., 1983) [*Long v. Shorebank Dev. Corp.*, F.3d 182:548, *558* (7th Cir., 1999)].

Accord: *Lynk v. LaPorte Superior Court*, F.2d 789:554 (7th Cir., 1986); *Biddulph v. Mortham*, F.3d 89:1491, *1495 n. 1* (11th Cir., 1996).

> Where the plaintiff has had no such opportunity, he cannot fairly be said to have "failed" to raise the issue. Moreover, an issue that a plaintiff had no opportunity to raise cannot properly be regarded as a part of the state case. ... *Such a harsh rule might deprive the plaintiff from any forum, state or federal*, where he has a reasonable opportunity to present his federal constitutional claims, *a result arguably contrary to the requirements of due process [Wood:1547]*.

Neither the unconstitutionality of the D.C. reciprocal disciplinary procedures nor the plaintiff's right to notice and a hearing under the D.C. Administrative Procedures Act and the 5th Amd., U.S. Constitution before his law license was revoked temporarily and finally were ever actually adjudicated in the prior cases. Those issues may be resolved by the district court even if *Rooker-Feldman* principles apply.

Because plaintiff's reciprocal discipline was imposed in violation of his due process rights under D.C. Code §11-2503(b) [governing bar disciplinary procedures], §1-1501 et. seq. [governing administrative procedures in "contested cases" before D.C. governmental agencies], and the Due Process Clause of the 5th Amendment of the U.S. Constitution the district court cannot give full faith and credit to

---

77:752, *761* (1957); *Feldman*, U.S. at 460:*486*, S.Ct. 203:*1316-1317*; *Pulliam v. Allen*, U.S. 466:522, S.Ct. 104:1970 (1984) [Federal district court has subject-matter jurisdiction in civil rights action by a suspended attorney who had been denied reinstatement against judicial regulators alleging various constitutional defects in procedural rules under which the judicial regulators considers petitions for reinstatement of suspended attorneys]; *Freidman v. Supreme Court of Virginia*, F.2d 822:423 (4th Cir., 1987) [Civil rights action by attorney to invalidate bar rule, *held* bar rule violated privileges and immunities clause].

the June 1995 and March 1996 interim suspension orders and the April 1997 final disciplinary judgment entered against petitioner Richardson by the DCCA [*Statutes:* D. C. Code §1-1501, 1-1502(8), 1-1509; 11-2503(b) 14-101; U. S. Cont., 5th Amd.; 28 U.S. C. §1738; *D.C. Court of Appeal Cases: U.S. ex rel Wederburn v. Bliss,* App. D.C. 12:285 (1898); *Garfield v. U.S. ex rel Spaulding,* App. D.C. 32:153 (1908); *Phillips v. Ballinger,* App. D.C. 37:46 (1911); *In re Cummings,* A.2d 466:1124 (D.C., 1983); *Laughlin v. Wheat,* F.2d 95:101 (U.S. App. D.C., 1937); *Matter of Colson,* A.2d 412:1160 (D.C., 1979) (*En banc*); *Woods v. D.C. Nurses' Examining Bd.,* A.2d 436:369 (D.C., 1981); *U.S. Supreme Court Cases: Goldsmith v. U.S. Bd. of Tax Appeals,* U.S. 270:227, S.Ct. 46:214 (1929); *Johnson v. Zerbert,* U.S. 304:458, S.Ct. 58:1019 (1938)*Gross v. Lopez,* U.S. 419:565, S.Ct. 95:729 (1975); *Barry v. Barchi,* U.S. 433:55, S.Ct. 99:2642 (1979); *Bell v. Burton,* U.S. 402:535, S.Ct. 91:1586 (1982); *Logan v. Zimmerman Brush Co.,* U.S. 445:422, S.Ct. 102:1148 (1982); *Davis v. Scherer,* U.S. 468:183, S.Ct. 104:3012 (1984); *Gilbert v. Homar,* U.S. 520:924, S.Ct. 117:1807 (1997); *World-Wide Volkswagen v. Woodson,* U.S. 444:286, S.Ct. 100:559 (1980)].

 *(c) Independent Claim Exception.* "Congress enacted §1983 ... to provide an *independent avenue for protection* of federal constitutional rights" [*Pulliam,* U.S. at 466:*539,* S.Ct. at 104:*1979*]. And to insure that the federal courts would have jurisdiction of constitutional claims against State officials [*Butz*]. There is an "independent" cause of action for the *violation* of any constitutional due process or 'fair trial procedure' [*Johnson*]. Challenges to a State court's proceedings based upon the *violation* of due process or 'fair trial procedures' or other constitutional rights brought in a district court by definition does not seek appellate review. It is plainly within the federal question and civil rights jurisdiction of the federal court [U.S.C. § 28:1331; U.S.C. §42:1983].

 A claim is separate and independent of a State court judgment, i.e. not "inextricably intertwined", if (1) the State court is acting in a *nonjudicial* capacity-- executive and legislative -- and the challenge is to the action taken (rule or decision); or   (2) the State court when acting in a judicial or nonjudicial capacity has violated a constitutional right to due process and 'fair trial procedures' required to be performed in adjudicatory proceedings.

Where, as in this case, violations of due process and fair trial guarantees are the basis of the civil rights action it is *unnecessary* to determine if a State court's judgment was right or wrong (i.e. "inextricably intertwined") for such violations are actionable *per se* or without reference to the underlying State court decision [*Carey*]. Justice Powell, who also authored the *Pennzoil II* decision, opined in *Carey*:

> Procedural due process rules are meant to protect persons *not from the deprivation* ... of the life, liberty, or property [interest]. ... It is enough to invoke the procedural safeguards of the [14th or 5th] Amendment that a significant property interest is at stake, *whatever the ultimate outcome of a hearing ...* Id. 435 U.S. at 259, 263, 266, 98 S.Ct. at 1050, 1052, 1053 [Internal quotations omitted.]

Thus, a federal district court has jurisdiction to hear a civil rights action where there is alleged that *procedures* were deficient or fair trial guarantees denied, whether the State court's decision is incorrect or not.

The threshold questions before the district court in evaluating the *Rooker-Feldman* doctrine in these proceedings is (1) whether the plaintiff had a reasonable opportunity to raise his federal claims in the DCCA proceedings? And (2) whether the injury alleged by the plaintiff resulted *directly from* the State court orders/judgment itself or is *distinct from* that judgment (*Long, 555*)? If the alleged injury is "distinct from" the State court judgment and not "inextricably intertwined with" it, the *Rooker-Feldman* doctrine does not apply (Id.).

The core issue is whether the federal plaintiff seeks to set aside a State court judgment or whether the plaintiff is, in fact, presenting an *independent* claim (Id). Thus, there is a substantive distinction between a federal claim alleging injury *caused by* a State court judgment that would be barred under *Rooker-Feldman* and a federal claim alleging a prior injury that a State court failed to or could not *remedy*, which would not be barred. In order to prevail then, a federal litigant must identify *some* factor independent of the actions of the opposing party (State court officials or employees) that precluded the litigant from raising his federal claims during the State court proceedings (*Long*, 558).

Typically, either some action taken by the *State court itself (or its employees or agents)*, or State court *procedures* in place, have formed the barriers that the litigant is incapable of overcoming in order to

present certain claims to the State court (Id.). In other words, the "state court *procedures* [*or its employee's mis/malfeasance*] have prevent[ed] litigants from having a reasonable opportunity to raise certain claims during state proceedings" (Id., 559). Richardson has alleged that there was nondisclosure or concealment of evidence resulting in an obstruction of justice, in not only the reciprocal disciplinary proceedings, but subsequent civil and criminal contempt proceedings, and federal civil and habeas corpus actions arising out of his alleged constitutional and common law torts. Moreover, he was denied an evidentiary hearing in the disciplinary proceedings as well as the federal civil and habeas corpus proceedings. None of the injuries resulted from the DCCA's judgment itself, only from the illegal, improper, and wrongful actions of  those charged with the fiduciary responsibility of providing a fair and impartial investigation and adjudication of alleged misconduct by bar prosecutors and members of the Board.

*(d) Case Application.* An objective evaluation of  plaintiff's civil rights allegations (Count #2) clearly reveals that he alleges facts sufficient to fall within all the enumerable of the *Rooker-Feldman* exceptions. Not only does the district court fail to apply the relevant jurisprudence governing the exceptions to the *Rooker-Feldman* doctrine for general challenges to any form of legislation,  but the court

> (1) completely mischaracterized the nature of the injury complained of viewing the complaint an attempt by plaintiff to be reinstated into the D.C. Bar [Mem. Op. ¶ 1-1, 2-1, 9-1] as opposed to seeking recovery for violations of his due process/'fair trial procedures' and other constitutional rights; and
> (2) overlooked the jurisprudence governing the exception to the *Rooker-Feldman* doctrine for violations of constitutional rights which are *per se* actionable independent of Richardson's particular disciplinary case [*Pulliam*], i.e. 4th Amendment search and seizures [*Johnson:* 1142] or the 14th Amendment's (*via* 5[th] Amendment for D.C. residents) privilege and immunities, due process or equal protection clauses [*Carey; Amsden*].

The district court must conduct a detailed examination of the claims contained in plaintiff's complaint in order to dispose of this action under Civ. R. 12(b)(6) [incorporating provisions of Civ. R. 56] or at trial, the district court cannot use judicial notice to determine facts, whether jurisdictional or not without first according the plaintiff notice and opportunity to be heard. Nowhere in the complaint does

the plaintiff ask the district court to vacate or modify his disciplinary convictions or reinstate him to D.C. Bar. To the contrary, the plaintiff seeks corrections to D.C. Bar rules that would affect any *future* application Richardson may make to the D.C. Bar for reinstatement or  govern *future* reciprocal disciplinary proceedings. Thus, the district court has subject matter jurisdiction to hear the challenges to the D.C. bar rules' unconstitutionality.

Finally, federal district courts  must specifically examine the claims in the plaintiff's complaint (*Hornsby; Centifanti*). However,  the fact that immunity under the *Rooker-Feldman* doctrine would not apply does not mean that there may not be other reasons for denying plaintiff's relief such as failure to state a cause of action, qualified immunity of governmental officials, claim or issue preclusion[23], or a failure to prove a violation of a constitutional right.[24]  The district court must not neglect to perform this adjudicatory function by dismissing plaintiff's complaint without notice or evidentiary hearing. If the district court  fails to provide such an independent assessment, the  court would  be denying Richardson's due process rights to such an assessment.

## F. CONCLUSION

Reconsideration is required for several reasons: (1) there was an improper adjudication on motion to dismiss that denied plaintiff's due process rights and yielded erroneous facts; (2) whether the district court has jurisdiction under to grant a writ of *coram nobis* was not even addressed by the court; (3) since plaintiff attacks the integrity of the habeas corpus proceedings for *Brady* nondisclosure violations and fraud, 'extraordinary circumstances' have been sufficiency alleged under Civ. R. 60(b); moreover, the "reasonable time" limitation on the claims has not been tolled since the constitutional and common law tortious conduct (nondisclosure, obstruction of justice, etc.) is continuing in nature and the defendants are

---

[23]Even if the governmental defendants do not have *Rooker-Feldman* as a basis for immunity, they may have the preclusion principles of collateral estoppel that *may* provide  preclusive effect of the State court decisions to the governmental defendants. For as a general rule, a prior State court judgment is entitled to preclusion effect in a subsequent federal civil rights action as long as the judgment would preclude relitigation of the claim or issue in the courts of the State in which it is rendered. *Allen v. McCurry*, U.S. 449:190, S.Ct. 101:411 (1980); *Kremer v. Chemical Const. Corp.*, U.S. 456:461, S.Ct. 102:1883 (1982); *Migra v. Warren City School District*, U.S. 465:75, S.Ct. 104:892 (1984).
[24]*Richardson v. McFadden.* [Challenge to bar admissions procedures, held: insufficient evidence to support due process and equal protection claims.]

equitably estopped from raising the defense; and (4) preclusion under *res judicata*, collateral estoppel  or

*Rooker-Feldman* principles whether applied to the jurisdictional or claim facts is inapplicable because the

claims were never actually litigated in the prior cases and the prerequisites for instituting *Rooker-Feldman*

proceeding -- i.e. the existence of a valid D.C. judgment -- was never adjudicated in prior cases, nor in the

present case before the court.  Plaintiff requests that the district court vacate the dismissal and conduct

such further proceedings necessary for the resolution of the case in this court. Amen.

### ■ CERTIFICATE OF SERVICE ■

This certifies that a copy of the forgoing document was delivered by first-class U.S. Mail to:

| | |
|---|---|
| **D.C. ATTORNEY GENERAL**<br>**GEORGE E. RICKMAN, ESQ.**<br>441-4TH Street, NW, 6th Flr. So.<br>Washington, DC 20001 | **UNITED STATES ATTORNEY'S OFFICE**<br>**MICHELLE N. JOHNSON, ESQ.**<br>555 - 4th Street, NW, Rm. E-4212<br>Washington, DC 20530 |
| **TIMOTHY K. WEBSTER, ESQ.**<br>Sidley Austin, LLP<br>1501 "K" Street, NW, #800<br>Washington, DC 20005-1401 | **RICHARD J. OPARIL, ESQ.**<br>Patton Boggs LLP<br>2550 "M" Street, NW<br>Washington, DC 20037-1350 |

on this **25**th day of July 2007.

T. CARLTON RICHARDSON
Plaintiff *Pro Se*
1505 Pennsylvania Avenue, SE
Washington, DC  20003-3117
202-546-3505

> **T. Carlton Richardson v. District of Columbia et al., CA No. 06-1665 (RJL)**
> **MEMORANDUM OPINION AND FINAL JUDGMENT**
> *[BOTH FILED: July 11, 2007]*

## ■ *APPENDIX "A"* ■

### [01/01]

## MEMORANDUM OPINION
### (July 8 [=*11*], 2007) [#10, #13, #23, #25]

#### [(A.) PREFACE]

**[1-1]** Plaintiff[,] T. Carlton Richardson, proceeding pro se, filed this action on September 28, 2006 against the D.C. Board on Professional Responsibility, Wallace Eugene Shipp, Jr., Leonard H. Becker, Catherine Kello, Lalla Shishkevish, Elizabeth J. Branda, Donna M. DeSilva, the District of Columbia Court of Appeals, the Court Services and Offender Supervision Agency ("CSOSA"), and the Court Services & Supervision Agency for *(sic)* [and] the District of Columbia to challenge his suspension from the practice of law by the District of Columbia Court of Appeals. **[1-2]** Before the Court are defendants' motions to dismiss. **[1-3]** For the following reasons, this Court finds that plaintiff has failed to set forth any basis for overturning his suspension, and, accordingly, the Court will GRANT defendants' motions to dismiss.

#### [B. ] BACKGROUND

**[2-1]** This case is the latest in a long series of cases filed by plaintiff related to his suspension from the practice of law in the District of Columbia. **[2-2]** In 1997, the plaintiff was

### [01/02]

suspended from the practice of law for three years by the D.C. Board of Professional Responsibility as reciprocal discipline for his actions while a member of the Florida Bar. *In re Richardson*, 692 A.2d 427 (D.C. 1997). **[2-3]** Subsequently, plaintiff was convicted of criminal contempt for violating this suspension. *In re Richardson*, 759 A.2d 649 (D.C. 2000).

**[3-1]** Plaintiff's previous challenges in this District Court to the constitutionality of his suspension were dismissed for lack of jurisdiction under the *Rooker-Feldman* doctrine, which prohibits federal district courts from reviewing judicial decisions of state and local courts, as well as all claims intertwined with that judicial action. See *Richardson v. D.C. Court of Appeals*, No. 95-1272, slip op. (D.D.C. 1996) ("*Richardson I*") (Hogan, J.) (discussing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)), aff'd, *Richardson v. D.C. Court of Appeals*, 83 F.3d 1513 (D.C. Cir. 1996); *Richardson v. D.C. Court of Appeals*, 962 F. Supp. 1 (D.D.C 1997) (Sporkin, J.) ("*Richardson II*"); *Richardson v. D. C. Court of Appeals*, No. 04-0101, slip op. (D.D.C. Mar. 31, 2004) (Huvelle, J.) ("*Richardson III*"); *Richardson v. Dist. of Columbia*, No. 05-0210, slip op. (D.D.C. Mar. 29, 2005) (Huvelle, J.) ("*Richardson IV*"). **[3-2]** Likewise, Judge Robertson of this Court dismissed plaintiff's previous petition for habeas corpus.[25] *Richardson v. Court Svs. and Offender Supervision Agency for D.C.*, No. 99-0657, slip op. (D.D.C. July 10, 2001) ("*Richardson-Habeas I*").

---

[25] Judge Robertson found that: (1) "Orders underlying civil and criminal contempt proceedings are not addressable by means of a habeas petition except to challenge jurisdiction," *Richardson Habeas I*, slip op.

**[02/03]**

**[C. ] ANALYSIS**

*[ C-1.] I. Habeas Corpus*

[4-1] In Count One of his complaint, plaintiff seeks reinstatement of his prior habeas petition based upon "newly discovered evidence of prosecutorial misconduct, obstruction of justice and fraud" pursuant to Federal Rule of Civil Procedure 60(b)(6).[26] (Compl. ¶¶ 6-7.) [4-2] This Rule permits a court to reopen a proceeding for "any other reason justifying relief from the operation of the judgment," Fed. R, Civ. P. 60(b)(6); [4-3] however, it is well-established that Rule 60(b)(6) "should be only sparingly used." *Kramer v. Gates*, 481 F.3d 788, 791-[7]92 (D.C. Cir. 2007) (quoting *Ackerman v. United States*, 340 U.S. 193, 199 (1950)). [4-4] Moreover, Rule 60(b)(6) motions may be granted "only in 'extraordinary circumstances,'" *id.*, and only if "made within a reasonable time." Fed. R. Civ. P. 60(b). [4-5] Plaintiff has failed to satisfy either requirement.

[5-1] Here, plaintiff has not asserted sufficiently "extraordinary circumstances" to justify relief from the dismissal of his habeas petition. [5-2] Specifically, plaintiff claims that various defendants committed fraud by not revealing the existence of a report related to a 1992 investigation into plaintiff's conduct as a member of the Florida Bar in response to allegations that plaintiff charged clients an unreasonable fee for his services (the

**[03/04]**

"*Richardson/Rankin* report"), and that the fraud was "so pervasive" as to justify a reopening of the habeas corpus proceedings. (Compl. ¶¶ 12-49). [5-3] Plaintiff claims that he was not made aware of this investigation despite requests for all documents, and that had the investigation been disclosed to him, it "would have affected the unfavorable trial court and appellate outcomes of [the contempt proceeding]." (Compl. ¶¶ 33-34). [5-4] Yet, as plaintiff's habeas petition challenges his criminal contempt conviction for violating the order suspending his license to practice law in the District of Columbia, *In re Richardson*, 759 A.2d at 654, plaintiff does not claim (nor could he) that the *Richardson/Rankin* report is relevant to this criminal conviction. [5-5] Thus, plaintiff has not asserted sufficiently "extraordinary circumstances."

[6-1] Moreover, as plaintiff claims that he learned about the *Richardson/Rankin* report in 2003, (Compl. ¶ 19), and, since that time, plaintiff has brought both his third and fourth challenges to the validity of the underlying suspension without seeking reinstatement of his habeas petition, see *Richardson III, Richardson IV*, plaintiff's Rule 60(b)(6) motion was not brought within a "reasonable time."[27] [6-2] Accordingly, plaintiffs request for relief pursuant to Rule 60(b)(6) motion is DISMISSED.

---

at 5, and; (2) "the criminal contempt conviction and the resulting sentence neither contradict governing law nor involve an unreasonable application of Federal law," Id, at 10-11.

[26] Notably, pursuant to Rule 60(b)(3), a party can request relief from judgment based on "fraud, misrepresentation, or other misconduct of an adverse party," but must do so "not more than one year after judgment." Because the original habeas petition was dismissed in 2001, see *Richardson-Habeas I*, plaintiff's request for relief under this provision is untimely.

[27] Further, even if plaintiff's request for relief were interpreted to "attack the federal court's previous resolution of a claim on the merits," *Gonzalez v. Crosby*, 545 U.S. 524, 531-[5]32 (2005), it would qualify as a "second or successive" application and, therefore, would be barred by 28 U.S.C. § 2244(b)(1). *Gonzalez*, 545 U.S. at 531-[5]32; 28 U.S.C. § 2244(b)(1) (requiring that "a claim presented in

*[C-2.] II. Civil Rights Claims*

[7-1] In Count Two of his complaint, plaintiff contends that his civil rights were violated when he was suspended from the District of Columbia bar, and that these violations have

## [03/04]

continued throughout the proceedings in his subsequently filed civil litigation. (Compl. ¶¶ 71-91.) [7-2] For the reasons set forth below, this Court also GRANTS defendants' motions to dismiss plaintiff's civil rights claims.

[8-1] Pursuant to the doctrine of collateral estoppel, "the judgment in [a] prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979); *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992).[28] [8-2] In our Circuit, an issue is precluded if: (1) the same issue was previously litigated by the parties;[29] (2) the issue was necessarily determined by a court of competent jurisdiction and; (3) preclusion in the second case will not be unfair to the party bound by the first judgment. *Yamaha Corp. of Am.*, 961 F.2d at 254.

[9-1] Here, the issue of whether the district court has jurisdiction to review the state court decision has previously been litigated four times, see *Richardson I; Richardson II, Richardson III; Richardson IV*, and, as to each of these challenges, the constitutionality of the suspensions were dismissed pursuant to the *Rooker-Feldman* doctrine ("under which

## [04/05]

federal district courts lack jurisdiction to review judicial decisions by state and District of Columbia courts," *Richardson v. D.C. Court of Appeals*, 83 F.3d at 1514[30]). [9-2] Thus, the issue of jurisdiction necessarily has been determined by the appropriate courts. [9-3] Finally, for a plaintiff who has brought what is essentially the same case at least four times, had the case dismissed with prejudice, *Richardson III*, and has been warned that "he would do well to think hard before filing another suit such as this one," *Richardson II*, slip op. at 2, no unfairness will result from the application of collateral estoppel to bar his claims, and, accordingly, defendants' motions to dismiss plaintiff's civil rights claims are GRANTED.[31]

---

a second or successive habeas corpus application... [that] was presented in a prior application ..., be dismissed").

[28] Although Federal Rule of Civil Procedure 41(b) provides that a dismissal for lack of jurisdiction will not operate as "an adjudication on the merits," it will, however, preclude relitigation of the precise issues of jurisdiction that lead to the dismissal in the previous case. *GAF Corp. v. United States*, 818 F.2d 901, 913 (D.C. Cir. 1987).

[29] The fact that the plaintiff added new defendants does not preclude them from asserting issue preclusion. See *McLaughlin v. Bradlee*, 803 F.2d 1197, 1204-05 (D.C. Cir. 1986) ("Invocation of the doctrine is no longer restricted to those who were parties to the first litigation or their privies, for it has come to be widely accepted that usually little good and much harm can come from allowing a determined plaintiff to retry the same issues in exhaustive fashion against successive defendants.").

[30] For a more detailed explanation of the *Rooker-Feldman* doctrine, see *Richardson III*, slip op. at 2 n.2.

[31] Finally, the Court notes that the claims are barred by the applicable three-year statute of limitations for civil rights violations. D.C. Code § 12-301(8); see also *Banks v. Chesapeake & Potomac Tel. Co.*, 802 F.2d 1416, 1428 (D.C. Cir. 1986); *Osuchukwu v. Gallaudet Univ.*, 296 F. Supp. 2d 1, 1-2 (D.D.C. 2002). Plaintiff claims that he learned of the existence of the supposedly withheld *Richardson/Rankin* report in

**[D.] CONCLUSION**

[10-1] For all of the foregoing reasons, this Court GRANTS defendants' motions to dismiss plaintiff's claims. [10-2] An appropriate Order consistent with this ruling accompanies this Memorandum Opinion.

/s/ Richard J. Leon
**RICHARD J. LEON**
**United States District Judge**

---

February 2003, which allegedly gave rise to his cause of action, (Compl. ¶ 19), but did not file suit until September 2006.

■ *APPENDIX "B"* ■

# FINAL JUDGMENT
(July 8 [=*11*], 2007) [#10, #13, #23, #25, #26]

[1] For the reasons set forth in the Memorandum Opinion entered this date, it is hereby[:]

[2] **ORDERED** that the motions to dismiss filed by defendants the D.C. Board on Professional Responsibility, Wallace Eugene Shipp, Jr., Leonard H. Becker, Catherine Kello, Lallah Shishkevish, Elizabeth J. Branda, Donna M. DeSilva, the District of Columbia Court of Appeals, the District of Columbia, and the Court Services & Supervision Agency for the District of Columbia are **GRANTED**, and it is further

[3] **ORDERED** that Donna DeSilva's Motion for Sanctions Against the Defendant (sic) is **DENIED**, and it is further

[4] **ORDERED** that this case is dismissed as to all defendants, and it is further

[5] **ORDERED** that plaintiff and defendant Donna M. DeSilva appear on Thursday, August 16, 2007, at 2:30 pm for a hearing on defendant DeSilva's motion for sanctions.

[6] **SO ORDERED**.

United States District Judge

/s/ Richard J. Leon
**RICHARD J. LEON**
**United States District Judge**