UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

RECEIVED
AUG 14 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

T. CARLTON RICHARDSON,        )
                    Plaintiff.        )
vs.        )   No. **06CV01665 [RJL]**
DISTRICT OF COLUMBIA, *et al.* )
                 Defendants.        )

## PLAINTIFF'S REPLY *RE* MOTION TO RECONSIDER DISMISSAL

### Index to Reply

- ■ Preface--1
- 1.0 Incomplete Adjudication of Jurisdictional Issue—[2]
- 1.1 D.C. Judgments Void and Based Unconstitutional Regulations--2
- 1.2 Court Overlooks Inherent Power Where Fraud is Alleged--3
- 1.3 Conclusion-7
- 2.0 Limitations Bar Inapplicable—Continuing Violation Doctrine Applies—[8]
- ■ *Certificate of Service*--10

### Preface[*]

Plaintiff's motion *in chief* to reconsider dismissal raised several grounds for such relief that sounded in the misapplication, misapprehension or overlooking of relevant facts and legal principles, principally that the district court: (1) adjudicated claims on the motions to dismiss improperly or incompletely;[1] (2) omitted the independent jurisdictional basis of *coram nobis*; (3) failed to recognize the implications of the *Brady*[2] and estoppel principles in the Civ. R. 60(b) aspect of this action, and (4) omitted determining the jurisdictional issues raised: (a) that the reciprocal disciplinary and subpoena bar regulations are unconstitutional and (b) that the plaintiff's suspension judgment was void, as well as the

---

[*] *Emphasis* supplied unless otherwise stated.
[1] For example, no mention in the *Memorandum Opinion* is made of the plaintiff's unreasonable search and seizure claim (Compl. ¶¶27, 50-58) nor plaintiff's illegal disciplinary sanctions involving unconstitutional enhancement (5th Amd.) and disproportionality (8th Amd.) [Compl. ¶¶59-67] claims. The assessment standard is that *all* claims are to be adjudicated [*Hishon v. King & Spaulding*, U.S. 467:69, 73, S.Ct. 104:2229, *2232-2233* (1984); *Conley v. Gibson*, U.S. 355:41, *45-46*, S.Ct. 78:99, *101-102* (1957)].
[2] *Brady v. Maryland*, U.S. 373:83, S.Ct. 83:1194 (1963).

- 1 -

subsequent civil and criminal contempt judgments, having been rendered in violation of plaintiff's due process (5th Amd.) and prohibition against unreasonable searches and seizures (4th Amd.) rights. This reply is presented under the following rubrics: (1) Incomplete adjudication of the jurisdictional issue—(a) D.C. judgments are void and based upon unconstitutional regulations; (b) Court overlooks inherent power where fraud is alleged; and (2) Limitations bar inapplicable since the doctrine of continuing violations applies.

## 2.0 Incomplete Adjudication of Jurisdictional Issue

### 2.1 D.C. Judgments Void and Based Upon Unconstitutional Regulations.

(a) The district court proceeds to determining the factual and legal 'issue of jurisdiction' as if it is a singular or one-step inquiry, that is: **"Can the district court review the DCCA's disciplinary judgments (suspension and contempt, both civil and criminal) rendered against the plaintiff?"** However, the issue of jurisdiction has a three-step process or inquiry:

> FIRST: Whether the DCCA's disciplinary judgments are valid, that is, rendered with subject matter and personal jurisdiction and not in violation of the plaintiff's U.S. constitutional due process and fair trial procedures in the *quasi*-criminal and criminal proceedings?
>
> SECOND: If the D.C. judgment are not valid (i.e. void *ab initio*), then full faith and credit cannot be given to those judgments since they are void and the *Rooker-Feldman*[3] preclusion (=absolute immunity) doctrine cannot be applied to the void judgments for the existence of a valid judgment is a prerequisite to the application of that doctrine.

---

[3]Under the *Rooker-Feldman* doctrine, lower federal courts do not have subject matter jurisdiction over claims seeking review of state court judgments [*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, *415-416*, 44 St. Ct. 149 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, *482-486*, 103 S.Ct. 303 (1983)]. The doctrine requires a party seeking review of a state court judgment or presenting a claim that a State judicial proceeding has violated their constitutional rights to pursue relief through the state court system and ultimately to the Supreme Court. ■ What the *Rooker-Feldman* doctrine means in practice is that, "once *validly* entered in a [State or DC] court of *competent* jurisdiction, a judgment is considered *valid* until overturned or vacated by that court or an appellate court with supervisory powers over that court's system [or the U.S. Supreme Court]. [¶] There appears to be *only one exception* to this hard and fast rule of federal-state comity, and it comes to play only when the state proceedings are considered *a legal nullity and thus void ab initio.* [*Kalb v. Feuerstein*, U.S. 308:433, *438-440*, S.Ct. 60:343, *345-347* (1940)] A federal ... court may intervene only when state proceedings are void *ab initio;* [the federal court] lacks the power where it simply disagrees with the *result* obtained in an otherwise *valid* proceeding. [¶] The distinction between a *void* judgment and one that is *erroneously* decided is crucial: '... the latter [an erroneous judgment] is subject only to *direct* attack. A void judgment [can be attacked directly or collaterally and] ... from its inception, *[i]s a complete nullity and without legal effect...*(citations omitted)" [*In re James*, F.2d 940:46, *52* (3rd Cir., 1991)].

THIRD:  If so, then does the plaintiff state any exceptions to the *Rooker-Feldman* preclusion (=absolute immunity) doctrine?

Thus, when the district court says that "the issue of jurisdiction necessarily has been determined by the appropriate courts" (Mem. Op. ¶9-2, see also ¶¶ 3-1 and 9-1), the court is erroneously assuming that the other courts examined (1) the validity of the D.C. judgments being challenged collaterally here by the plaintiff [i.e. the judgments are void and of no legal effect and therefore the *Rooker-Feldman* doctrine never obtains]; and (2) their statutory jurisdictional underpinnings [i.e. that the reciprocal disciplinary and subpoena regulations are unconstitutional] which are directly attacked here by the plaintiff, and, of course, constitutes an exception to the *Rooker-Feldman* doctrine. The 'other courts' upon which this district court relies for collateral estoppel purposes as to the jurisdictional issue *did not* make such a 'precise' jurisdictional inquiry and assumed through improper judicial notice procedures that the D.C. judgments were valid *per se* and their statutory bases constitutional.

Those 'other courts' never examined the 'precise' jurisdictional issues of validity and constitutionality that plaintiff raises before this district court. Their judgments simply state the obvious: federal courts cannot review D.C. judgments, without ever determining if the D.C. judgment were validly entered and based upon constitutional statutes or regulations. Reconsideration is therefore necessary for the district court to systematically examine the jurisdictional issues under the three-stage process outlined in order **to determine (1) the validity of the D.C. judgments and (2) the constitutionality of reciprocal disciplinary and subpoena regulations upon which they are based; and, (3) if valid and constitutional, then whether there are *Rooker-Feldman* doctrinal exceptions.**

**(b)**   The district court misconstrues the purpose of Count #2 of the Complaint for various common law torts and civil rights violations under the U.S. Constitution and laws as one for "overturning [Richardson's] suspension" [*Mem. Op.* ¶1-3] from the practice of law by the D.C. Court of Appeals [DCCA]. First, Richardson challenges the constitutionality of the reciprocal disciplinary regulations as violative his due process and equal protection rights as a D.C. resident under the 5th Amd. The DCCA has no jurisdiction to hear such federal or D.C. claims for it is an appellate court with *limited* jurisdiction, (1)

to hear appeals from the courts of general jurisdiction and administrative agencies in the District of Columbia and (2) exclusive (executive, legislative, judicial) but still *limited* jurisdiction over the regulation of the practice of law in the District of Columbia [See, Compl.¶¶ 41-49].

Second, Richardson also challenges the DCCA's personal and subject matter jurisdiction to impose reciprocal discipline since the DCCA failed to comply with the D.C. statutes governing bar disciplinary or general administrative procedures[4] for suspension of licenses, which guarantee certain due process rights to a licensee whether under reciprocal or domiciliary revocation proceedings, principally: adequate notice of charges and an evidentiary hearing, neither of which were provided the plaintiff.[5] [See Compl. 41-49]

Moreover, the plaintiff has due process rights under the 5th Amd. which proscribe the revocation of a license without adequate notice and a meaningful opportunity to be heard prior to suspension.[6] Having failed to comply with the local and U.S. federal due process and equal protection rights of the plaintiff, the judgments rendered by the DCCA in suspending the plaintiff and later in imposing civil and

---

[4] D.C. Code §§ 11-2503(b) (governing prerequisites for DCCA's exercise of its disciplinary jurisdiction), §2-501(8) [governing right to a evidentiary hearing in "contested cases" before governmental agencies], and 14-101(a) [requiring all evidence be proved under oath]; *U.S. ex rel Wederburn v. Bliss*, App. D.C. 12:285 (1898); *Garfield v. U.S. ex rel Spaulding*, App. D.C. 32:153 (1908); *Phillips v. Ballinger*, App. D.C. 37:46 (1911); *In re Cummings*, A.2d 466:1124 (D.C., 1983); *Laughlin v. Wheat*, F.2d 95:101 (U.S. App. D.C., 1937); *Matter of Colson*, A.2d 412:1160 (D.C., 1979) (*En banc*); *Woods v. D.C. Nurses' Examining Bd.*, A.2d 436:369 (D.C., 1981)

[5] *In re Richardson*, A.2nd 692:427, *429* ["On June 27, 1995 (the D.C. Court of Appeals) ordered Richardson's temporary suspension, *without hearing*, pending final disposition of the proceeding."] It is undisputed that Richardson never was given notice or an evidentiary hearing in the reciprocal disciplinary proceedings. While disciplinary proceedings that are domestic, i.e. originate in the D.C. disciplinary system as opposed to being based upon a foreign disciplinary order, an accused attorney receives an evidentiary hearing *before* any license revocation or in emergencies where an attorney's license is revoked prior to a hearing, an evidentiary hearing is mandated within 30-days of the interim revocation. However, in reciprocal disciplinary proceedings, an accused attorney, as did Richardson, has his law licensed revoked without notice and is not given an evidentiary hearing before or shortly after revocation. Such disparate treatment between domestic and reciprocal disciplinary proceedings violates due process *and* equal protection.

[6] *Goldsmith v. U.S. Bd. of Tax Appeals*, U.S. 270:227, S.Ct. 46:214 (1929); *Johnson v. Zerbert*, U.S. 304:458, S.Ct. 58:1019 (1938)*Gross v. Lopez*, U.S. 419:565, S.Ct. 95:729 (1975); *Barry v. Barchi*, U.S. 433:55, S.Ct. 99:2642 (1979); *Bell v. Burton*, U.S. 402:535, S.Ct. 91:1586 (1982); *Logan v. Zimmerman Brush Co.*, U.S. 445:422, S.Ct. 102:1148 (1982); *Davis v. Scherer*, U.S. 468:183, S.Ct. 104:3012 (1984); *Gilbert v. Homar*, U.S. 520:924, S.Ct. 117:1807 (1997); *World-Wide Volkswagen v. Woodson*, U.S. 444:286, S.Ct. 100:559 (1980).

criminal contempt are all void and cannot be given full faith and credit in any court within or without the District of Columbia. [See, Compl. ¶¶41-49]

Third, the civil and criminal[7] contempt judgments are void having been rendered in violation of the 4th Amd.'s proscription against unreasonable searches and seizures. Those judgments were based upon an illegal transfer of information between two governmental agencies[8] and an illegal warrant (an executive subpoena by defendant DeSilva without prior court review and approval) was issued to plaintiff's bank based upon the information on the plaintiff's C.L.E. check and subsequently to plaintiff himself for financial records based upon the results of his bank's submissions. Thus, the civil and criminal contempt judgments are void in violation of the 4th Amd. also. [See Compl. ¶¶ 27, 50-58]

**(e)** As to the Count #1 (reinstatement of the habeas corpus proceedings based upon fraud and misrepresentations to the plaintiff and the courts of D.C. and U.S.), the district court improperly adjudicates on motion to dismiss and by improper judicial notice proceedings plaintiff's claims of due process violations, prosecutorial misconduct, obstruction of justice, conspiracy, and *Brady* violations arising out the nondisclosure of investigatory records and activities, including the failure to disclose to the plaintiff and DCCA an undocketed complaint in 1992, continuing discovery based upon the 1992 undocketed complaint, merger of the 1992 undocketed complaint with a docketed complaint in 1994 arising out of the *same* allegations of misconduct, and failure to disclose the name of the disciplinary hearing committee member with oversight responsibilities for the 1992 and 1994 investigations. [See, Compl. ¶¶ 18-26, 31-40]

Such nondisclosures of the 1992 investigatory records and the hearing committee oversight member's identity *continues to date*. And the fraud and misrepresentations or nondisclosures continued even during Richardson's civil and criminal contempt proceedings with the *Brady* violations by defendant

---

[7] "Subsequently, plaintiff was convicted of criminal contempt for violating this suspension. *In re Richardson*, 759 A.2d 649 (D.C. 2000)" [*Mem. Op.* ¶2-3].

[8] A copy of plaintiff's check for a C.L.E. course was given by a D.C. Bar employee to the Office of Bar Counsel; which in turn surreptitiously issued executive—i.e. without prior court review or approval—subpoenas to plaintiff's bank and subsequently, based upon the bank productions, to the plaintiff himself; which in turn resulted in a judgment for civil contempt and plaintiff's production of documents that formed the basis of the criminal contempt judgment.

DeSilva. Therefore, the contempt judgments are void as violative of Richardson's due process and 4th Amd. rights.

### 2.2 Court Overlooks Inherent Power Where Fraud Is Alleged

Assuming arguendo that Civ. R. 60(b)(6) and the writ of *coram nobis* do not give the district court jurisdiction to examine the plaintiff's allegations of fraud upon the D.C. and federal courts. There is one other source of jurisdiction that has been overlooked by the court, which is the court's "inherent power [that] allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court" [*Chambers v. NASCO, Inc.*, U.S. 501:32, *44*, S.Ct. 111:2123, *2132* (1991) citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, U.S. 322:238, S.Ct. 64: 997 (1944); *Universal Oil Products Co. v. Root Refining Co.*, U.S. 328:575, *580*, S.Ct. 66:1176, *1179* (1946) ("The inherent power of a federal court to investigate whether a judgment was obtained by fraud, is beyond question")]. This "historic power of equity to set aside fraudulently begotten judgments" [*Hazel-Atlas*, U.S. 322:*245*, S.Ct. 64:*1001*] is necessary to the integrity of the courts, for

> tampering with the administration of justice in [this] manner ... involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public [Id., U.S. 322:*246*, S.Ct. 64:*1001*].

Moreover, a federal court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud [*Chambers; Universal Oil etc.* U.S. 328:*580*, *S.Ct.* 66:1179].

Plaintiff alleges that fraud was practiced upon the local and U.S. federal courts of the District of Columbia [Compl. ¶¶ 31-40] by D.C. bar prosecutors and other disciplinary officials. Without examining whether the allegations of prosecutorial misconduct, violations of the *Brady* principles of prosecutorial disclosure, and obstruction of justice involving nondisclosure and deceptive practices are meritorious, the district court proceeds to dismiss the plaintiff's complaint as to Count #1 (reinstatement of dismissed habeas corpus proceedings) and Count #2 (civil rights violations and common law tortuous conduct by bar officials). While relying upon federal cases that allegedly involved such fraudulent misconduct by D.C. bar prosecutors and officials, the district court chooses to 'close the *blind eyes of justice*' to the alleged fraudulent practices upon the local and U.S. federal courts. It is the *integrity* of the judicial system

that is being questioned by the plaintiff, which goes to the very heart of our attempts to preserve and maintain a free, open and civil society.

When those charged with overseeing our government, whether executive, legislative or judicial, lie, violate the law with impunity in the name of protecting the public or performing the public trust, and then conspire among themselves to cover-up their wrong-doing, our society, which prides itself on ethical, moral and spiritual conduct founded upon our Judeo-Christian heritage, and 'justice for all' will not and cannot endure. In order to safeguard the public from such mis/malfeasance of office or, alternatively, to punish Richardson for filing -- as the defendants have consistently alleged -- "frivolous" and repetitive vindictive lawsuits aimed not a truth-seeking and justice, but at harassing them for doing their jobs and revoking the plaintiff's law license without notice or opportunity to be heard prior to revocation and imposition of civil and criminal contempt sentences, both based upon unconstitutional regulations and violations of Richardson's civil rights, including fair trial procedures, **reconsideration is therefore ethnically, morally and spiritually compelled.** Such is the *righteous* decision.

## 2.3 Conclusion

The district court assumed without deciding that the DCCA's judgments (suspension and contempts) were not void under the doctrine of jurisdictional preclusion by applying collateral estoppel and *Rooker-Feldman* doctrine's principles (*Mem. Op.* ¶3-1). And on the merits, by overlooking or disregarding some of the plaintiff's claims of violations of the U.S. Constitution (especially 4th Amd.—unreasonable search and seizures, 5th Amd.—enhancement of discipline without due process; suspensions without notice/hearing accorded to domiciliary misconduct proceedings, and 8th Amd.—disproportionality of discipline imposed) and its civil rights (racial, religious and/or sexual discrimination, plaintiff being a very devout Christian male of African descent) laws. The district court even disregards the independent jurisdictional basis for the claim of fraud upon the DC and federal courts: that federal courts have *inherent* power independent of Civ. R. 60(b) to investigate such matters Under such circumstances, the district court should reconsider its dismissal and accord the plaintiff an opportunity to be heard on **whether challenges to the constitutionality of the reciprocal disciplinary and subpoena**

procedures and the *jurisdictional* validity (as opposed to an erroneous decision on the merits which would be inappropriate) of the DCCA's judgments of suspension and contempt, both civil and criminal, are meritorious.

### 3.0 Limitations Bar Inapplicable—Continuing Violation Doctrine Applies

In the district court's *Memorandum Opinion* it states that the plaintiff's claims under Civ. R. 60(b) and under the U.S. Constitution and civil rights laws (alleged in Count #2) are barred under the "reasonable time" limitation of Civ. R. 60(b) [*Mem. Op.* ¶6-1] and "by the applicable three-year statute of limitations for civil rights violations" (Id., ¶9-3 n. 31). Because plaintiff alleges that he is deprived of his license to practice law *continuously* under unconstitutional reciprocal disciplinary/subpoena procedures (statutes, regulations and judicial applications) still in effect and was wrongfully convicted of civil and criminal contempt under bar subpoena and investigatory regulations that permit unreasonable searches and seizures in violation of the 4th Amd., the continuing violation doctrine suspends the tolling of any limitation period. In other words, the plaintiff is attacking the constitutional validity of the disciplinary regulations and the judgments rendered under them in revoking his license to practice law without notice or evidentiary hearing and imposing contempt based upon illegally obtained bank and other financial records of the plaintiff.

The continuing violation doctrine extends the period for all claims of wrongful acts committed under an ongoing illegal policy or practice even if those acts, standing alone, would have been barred by the statute of limitations [*Annis v. County of Westchester*, F.3rd 136:239, *246* (2nd Cir., 1998) citing *Lightfoot v. Union Carbide Corp.*, F.3rd 110:898, *907* (2nd Cir., 1997)]. While courts have had a difficult time determining what a continuing violation is – i.e. whether a clamant alleges a single wrong, a series of separate acts for which the limitation period begins again for each violation, or a violation resulting from implementation of a continuing illegal policy or practice – [*Glass v. Petro-Tex Chem. Corp.*, F.2nd 757:1554, *1560* (5th Cir., 1985); *Perez v. Laredo Junior College*, F.2nd 706:731, *734* (5th Cir., 1983), *cert. den.*; *Deepwells Estates v. Incorp. Village of Head*, F.Supp. 973:338, *346* (E.D.N.Y., 1977)], it is well settled that the continuing effects of past harm do not bring the claim within the continuing violation

doctrine [*Deepwells Estates; Lorance v. A.T.&T. Technologies,* U.S. 490:900, S.Ct. 109:261 (1989); *Delaware State College v. Ricks,* U.S. 449:250, S.Ct. 101:498 (1980); *Taylor v. Bunge,* F.2nd 775:617, *619* (5th Cir., 1985)]. Thus, continuing violations are occasioned by continuing unlawful acts, not by the continued ill effects from an original violation [*Altair Corp. v. Pesquera de Busquets,* F.2d 769:30, *32* (1st Cir., 1985); *Deepwells Estates*].

To succeed on a continuing violation theory, the plaintiff must show that subsequent actions of the defendant are linked together with and follow directly from pre-limitation acts. The complaint must allege a present and ongoing violation of the law [*Fleming v. N.Y. Univ.,* F.2nd 865:478, *482* (2nd Cir., 1989); *Deepwells Estates*]. In the context of the unconstitutional deprivation of a property right, e.g. a regulatory taking under a zoning ordinance, the continuing violation doctrine has been applied. In that context, the judge held that,

> [i]f the ordinance is *constitutionally invalid*, it would constitute the equivalent of a *continuing invasion of plaintiff's property rights* akin to a continuing trespass—a situation in which *a new cause of action arises in plaintiff[']s favor against the [government entity] each day* ... Thus, the statute of limitations does not bar a meritorious attack on a zoning ordinance [Greene v. Town of Blooming Grove, No. 87 Civ. 0069, 1988 WL 126877:4 (S.D.N.Y., 11/21/1988), *aff'd in part, rev'd in part,* F.2nd 879:1061 (2nd Cir., 1989) (citations omitted)].

In this case, the plaintiff attacks the constitutionality of the reciprocal disciplinary and subpoena procedures under the D.C. Bar rules, regulations, and statutes. Assuming the unconstitutionality of these procedures as is required on a motion to dismiss, then the statute of limitations cannot bar plaintiff's claims either under Civ. R. 60(b) or for the civil rights and other U.S. constitutional violations. Therefore, reconsideration is required for the district court to determine **whether the reciprocal disciplinary and subpoena rules and regulations are unconstitutional and if so, whether the doctrine of a continuing violation applies so as to bar any application of the statute of limitations under Civ. R. 60(b) or generally as to all other claims of the plaintiff.** A proposed order is submitted.

Respectfully Submitted:

_____
**T. CARLTON RICHARDSON,** *Pro Se*

## ■ CERTIFICATE OF SERVICE ■

This certifies that a copy of the forgoing document was delivered by first-class U.S. Mail to:

| | |
|---|---|
| D.C. ATTORNEY GENERAL<br>GEORGE E. RICKMAN, ESQ.<br>441-4TH Street, NW, 6th Flr. So.<br>Washington, DC 20001 | UNITED STATES ATTORNEY'S OFFICE<br>MICHELLE N. JOHNSON, ESQ.<br>555 - 4th Street, NW, Rm. E-4212<br>Washington, DC 20530 |
| TIMOTHY K. WEBSTER, ESQ.<br>Sidley Austin, LLP<br>1501 "K" Street, NW, #800<br>Washington, DC 20005-1401 | RICHARD J. OPARIL, ESQ.<br>Patton Boggs LLP<br>2550 "M" Street, NW<br>Washington, DC 20037-1350 |

on this **14th** day of August 2007.

*/s/ T. Carlton Richardson*
T. CARLTON RICHARDSON
Plaintiff *Pro Se*
1505 Pennsylvania Avenue, SE
Washington, DC 20003-3117
202-546-3505

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **T. CARLTON RICHARDSON,**            ) | |
| **Plaintiff.**            ) | |
| vs.                                                ) | No. **06CV01665 [RJL]** |
| **DISTRICT OF COLUMBIA,** *et al.*  ) | |
| **Defendants.**            ) | |

### *[PROPOSED]* **ORDER**

As a result of this district court's reconsideration of the court's dismissal (Order, July 11, 2007) of plaintiff's complaint and oppositions thereto by the defendants, it is apparent to the court that (1) a complete and proper adjudication of the jurisdictional issues presented as to (a) the validity of the D.C. Court of Appeals judgments involved in this case and (b) the constitutionality of the underlying statutory bases for those judgments has not be given by the court. Nor has the court given (2) a complete and proper consideration of the plaintiff's defenses to the application of the statute of limitations to the plaintiff's claims both for reopening of the habeas corpus proceedings (Count #1) and common law torts and civil rights violations (Count #2), specifically (a) whether there are equitable reasons because of the alleged prosecutorial misconduct and (b) whether the court should invoke the court's inherent power because of the alleged fraud upon court and obstruction of justice.

Additionally, the court needs to determine whether the court has jurisdiction to provide the *coram nobis* relief sought by the plaintiff in light to the allegations of prosecutorial misconduct (nondisclosure of material evidence; concealment of relevant information; denial investigatory due process rights; obstruction of justice; fraud upon the court; and conspiracies related to the misconduct). And for other good cause shown, it is therefore on this ___ day of _____, 2007:

ORDERED, that the plaintiff's Motion to Reconsider Dismissal is **granted**;

FURTHER ORDERED, that the order dismissing the plaintiff's complaint entered July 11, 2007 is **vacated *nuc pro tunc*;**

FURTHER ORDERED, that the defendant DeSilva's motion for sanctions is **denied** as moot;

FURTHER ORDERED, that the *all* motions to dismiss filed by the defendants are **denied**.

FURTHER ORDERED, that a **status and scheduling conference will be held** before this court on _____, 2007 at _____AM/PM in Courtroom 18, 6th Floor Prettyman U.S. Courthouse, Washington, DC.

_____
**HON. RICHARD J. LEON, JUDGE**