# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

RECEIVED

SEP 0 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| **T. CARLTON RICHARDSON,** | ) |
| Plaintiff. | ) |
| vs. | ) |
| **DISTRICT OF COLUMBIA,** *et al.* | ) |
| Defendants. | ) |

No. **06CV01665   [RJL]**

---

## PRE-HEARING STATEMENT AND MEMORANDUM IN OPPOSITION TO RULE 11 SANCTION PROCEEDINGS
### *(Verified)*

---

### *INDEX TO DOCUMENT*[*]

**1.0 Preface--[2]**
**2.0 Court Lacks Jurisdiction to Consider Sanctions Motion--[3]**
2.1 Adjudication of Jurisdictional Issues Mandated *Before* Sanctions Motion--[3]
2.2 Sanctions Unavailable: Unconstitutionality of D.C. Judgments, Statute and Rules--[5]
    (a) Inapplicability of *Rooker-Feldman* Doctrine--[6]
    (b) Void D.C. Disciplinary Judgment/Orders and Unconstitutional Bar Statute/Rule--[7]
    (c) Void D.C. Civil/Criminal Contempt Judgments and Unconstitutional Subpoena Bar Rule--[12]
2.3 Sanctions Unavailable: Failure to Comply With Civ. R. 11(c)(1)(A) or "Safe Harbor" Requirement--[15]
**3.0 Unavailability and Inapplicability of Rule 11 Sanctions--[16]**
**4.0 Conclusion and Relief Requested--[17]**
**5.0 Verification--[21]**
■ *Certificate of Service--[21]*

---

---

[*] *Emphasis* supplied and citations or references are to the *Federal Rules of Civil Procedure* unless otherwise stated.

## 1.0  PREFACE

Rule 11 seeks to strike a careful balance.  Its object is to reduce frivolous claims, defenses  or motions, and  to deter costly meritless maneuvers and other abuses of the litigation process. At the same time, the Rule seeks to preserve fair access to the courts and not to deter the presentation of novel legal contentions or impede zealous advocacy[1]  Rule 11 provides that a district court may sanction a attorney (*pro se* or nor) or party who submits pleadings for an "improper purpose" or that contain frivolous arguments or arguments that have no evidentiary support.

A frivolous lawsuit is one not grounded in fact and not supported by either a basis in current law or a sincere argument for a novel legal theory. If one fails to conduct a reasonable inquiry into the facts of the case and the applicable law, the court paper submitted is in frivolous lawsuit territory.  In considering a sanctions motion, district courts must heed the Supreme Court's warning against the "temptation to engage in post hoc reasoning by concluding that, because the plaintiff did not ultimately prevail, his action must have been unreasonable and or without foundation" [*Christianburg Garment Co. v. EEOC*, U.S. 434:412, *421-422*, S.Ct. 98:694, *700* (1978)].[2]

Furthermore, sanctions are not available because plaintiff has filed "a long series of cases" between 1996 and 2006 (Mem. Op. ¶¶ 2.1, 9-3, App. "A", Motion to Reconsider Dismissal),  "essentially the same ... at least four times" [Id., ¶9-3], that were "dismissed for lack of jurisdiction under the *Rooker-Feldman* doctrine" [Id., 3-1], some cases "with prejudice" [Id., ¶9-3], nor because plaintiff "ha[d] been warned [in 1997] that 'he would do well to think hard before filing another suit such as this one' " [Id., ¶9-3] since

---

[1] Solovy et al., "Sanctions Under Rule 11: A Cross-Circuit Comparison," Loyola Law Review 37:727 (2004); *Kaplan v. DaimlerChrysler, A.G.*, F.3d 331:1251, *1255* (11th Cir., 2003)=*Massengale v. Ray*, F.3rd 267:1298, *1302* (11th Cir., 2003)

[2] This is especially true in these sanction proceedings since the district court notified the parties of the sanctions hearing *before* it entered its order dismissing the plaintiff's complaint on July 11, 2007; and while reconsideration of the dismissal was pending, the court reset the sanctions hearing twice (August 16 and 20). The sanctions hearing is now set for September 6, 2007.  Finally,  on August 24, 2007 [delivered by mail postmarked August 30 and received August 31, seven (7) days later], the court denied reconsideration of the dismissal without a written order.

(a) defendants have continuously withheld from 1992 to date evidence to which the plaintiff is legally entitled from plaintiff's reciprocal disciplinary investigations from 1992-1995 [Id., ¶¶ 5-2 to 5-3];

(b) the reciprocal disciplinary 1995 and 1996 interim suspension orders and the 1997 final judgment are void having been rendered by the D.C. Court of Appeals (DCCA) under an unconstitutional enabling statute and bar rule governing interim and final suspensions of law licenses, without personal or subject matter jurisdiction under its enabling statute, and in violation of plaintiff's due process rights in disciplinary investigations and adjudications *per se* and under the D.C. Administrative Procedures Act governing licensure revocations; and

(c) the civil and criminal contempt judgments of the DCCA to compel production of documents under an illegal *ex parte* executive subpoena procedure (i.e. without prior court approval) and for the unauthorized practice of law based upon tainted evidence obtained from the plaintiff and plaintiff's bank *via* the unconstitutional (violation of 4th Amd. injunction re unreasonable searches and seizures) subpoena procedure, are also void being in violation of the plaintiff's due process and 4th Amd. rights.

Therefore, the questions presented for resolution by the court are threefold: **FIRST**: Were the D.C. Court of Appeals reciprocal disciplinary and contempt orders or judgments rendered with personal and subject matter jurisdiction and therefore are valid in the rendering jurisdiction and can be given full faith and credit[3] in these sanction proceedings? **SECOND**: Has the movant-defendant DeSilva complied with the 21-day 'safe harbor' jurisdictional provision of Civ. R. 11?; And **THIRD**: (3) Did the plaintiff conduct reasonable inquiry under the circumstances before filing the this action?

## 2.0  COURT LACKS JURISDICTION TO CONSIDER SANCTIONS MOTION

### 2.1  ADJUDICATION OF JURISDICTIONAL ISSUES MANDATED *BEFORE* SANCTIONS MOTION

Plaintiff posits that the D.C. reciprocal disciplinary interim orders and final judgment are void in violation of due process and cannot be giving full faith and credit by the district court. Concomitantly, plaintiff posits that the D.C. reciprocal disciplinary rule allowing for mandatory temporary suspension without prior notice or an evidentiary hearing prior to or shortly after suspension is unconstitutional under

---

[3] Article IV, Section 1 of the U.S. Constitution states: "*Full faith and credit* shall be given in each State to the public acts, records and judicial proceedings of every other state." Thus, a judgment in a lawsuit or a criminal conviction rendered in one State shall be recognized and enforced in any other state, so long as the original judgment was reached by due process of law [cf. *World-Wide Volkswagen Corp. v. Woodson*, U.S. 444:286, *291*, S.Ct. 100:559, *564* (1980)].

D.C. statutes governing attorney discipline and administrative procedures in licensure revocation matters and the 5th Amendment's due process clause (that incorporates equal protection rights also for D.C. citizens). And that the D.C. bar rule authorizing Bar Counsel to issue subpoenas without prior court approval in investigatory matters to a bank for financial records of an accused attorney and to the accused attorney for personal and business financial records is likewise unconstitutional under the 4th Amd.'s prohibition against unreasonable searches and seizures. Resolution of these issues go to the jurisdictional foundation of the district court actions and must be resolved before proceeding to consideration of defendant DeSilva's sanctions motion.

Where jurisdictional objections are lodged by a party, a federal court cannot proceed immediately to the merits questions and disregard the jurisdictional objections [*Steel Co. v. Citizens for a Better Environment*, U.S. 523:83, *93*, S.Ct. 118: 1003, *1012* (1998)]. This was a practice under the "doctrine of hypothetical jurisdiction" or " 'assuming' jurisdiction for the purpose of deciding the merits" that has been rejected by the Supreme Court [*Id.*, U.S. 523:*94*, S.Ct. 118:*1012*]. In *Steel Co.,* the Supreme Court held that the

> *first and fundamental question is that of jurisdiction,* first of the [reviewing] court [itself], and *then of the court from which the record comes.* This question the court is bound to ask and answer *for itself,* even when not otherwise suggested, and without respect to the relation of the parties to it. ... The *requirement that jurisdiction be established as a threshold matter* "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and *without exception*" [Id., U.S. 523: *94-95*, S.Ct. 118:*1012.*

Furthermore, a judgment dismissing an action for lack of jurisdiction will preclude relitigation of the "*precise* issue of jurisdiction" that led to the initial dismissal; however, the preclusive effect of the first jurisdictional judgment is limited to matters *actually* raised and necessarily decided and *does not* extend to matters that could have been raised [*GAF Corp v. U.S.,* F.2d 818:901, *912, 913* (D.C. Cir., 1987)].

Without citing the 'precise' language in the defendants' detailed listing of unsuccessful prior litigation concerning plaintiff's civil rights claims for deprivation of a property right and wrongful conviction for civil and criminal contempt or habeas corpus proceedings, they argue

- 4 -

that consideration of the jurisdictional issues are foreclosed by one or more of those prior actions between the parties [*GAF Corp.*]. However, in those prior unsuccessful actions listed by the defendants, every federal court, district and appellate *assumed* jurisdiction (i.e. that the D.C. judgments were valid and that the D.C. disciplinary statute and regulations involved were constitutional) without examining the record of the D.C. reciprocal disciplinary and contempt proceedings and their statutory predicates, and proceeded to dismiss on the merits, many applying *Rooker-Feldman*[4] to preclude consideration of the merits.

This district court has piggy-backed those prior actions and dismissed on preclusion grounds also. In *Steel Co.,* the Supreme Court specifically held that, "every federal … court has a special obligation to 'satisfy *itself* that not only on its own jurisdiction, but also that of the lower courts in a cause under review" [Id.]. **It is therefore incumbent upon the district court prior to considering the merits of defendant DeSilva's sanctions motion to determine if the D.C. judgments are jurisdictionally valid and whether the underlying disciplinary statutes and regulations are constitutional.** We now turn to address the underlying jurisdictional and constitutional issues raised.

## 2.2 SANCTIONS UNAVAILABLE--UNCONSTITUTIONALITY OF D.C. JUDGMENTS, STATUTE AND RULES

Article IV, Section 1 of the U.S. Constitution states: "*Full faith and credit* shall be given in each State to the public acts, records and judicial proceedings of every other state." Thus, a judgment in a lawsuit or a criminal conviction rendered in one State shall be recognized and enforced in any other state, so long as the original judgment was reached by due process of law [cf. *World-Wide Volkswagen Corp. v.*

---

[4] Under the *Rooker-Feldman* doctrine, lower federal courts do not have subject matter jurisdiction over claims seeking review of state court judgments [*Rooker v. Fidelity Trust Co.*, U.S. 263:413, *415-416*, St. Ct. 44:149 (1923); *D.C. Court of Appeals v. Feldman*, U.S. 460:462, *482-486*, S.Ct. 103:303 (1983)]. The doctrine requires a party  seeking review of a state court judgment or presenting a claim that a valid State judicial proceeding has violated their constitutional rights to pursue relief through the State court system and ultimately to the Supreme Court. However, *Feldman* expressly excepts from the jurisdictional bar final judgments in situations where the constitutionality of a court rule is involved [*Id.*, U.S. 460:*486*, S.Ct. 203:*1316-1317*] and *Rooker* expressly requires that the State court judgment be rendered by a State court with subject matter and personal jurisdiction [*Id.*, U.S. 263:*415*, S.Ct. 44:*150*]. **Plaintiff argues that both the challenge to rule-making exception and the lack of the jurisdictional prerequisites are operational in this case requiring that the sanctions motion be denied and the dismissal be vacated.**

*Woodson*, U.S. 444:286, *291*, S.Ct. 100:559, *564* (1980)]. Records and proceedings of courts wanting jurisdiction are not entitled to credit [*Board of Public Works v. Columbia College*, U.S. (Wall 17:) 84:521, *528*, L.E.d 21:687, *691* (1873). See also, *Wisconsin v. Pelican Ins. Co.*, U.S. 127:265, *291*, S.Ct. 8:1370, *1374-1375* (1888); *Huntington v. Attrill*, U.S. 146:657, *685*, S.Ct. 13:224, *234-235* (1892); *Brown v. Fletcher's Estate*, U.S. 82:210, S.Ct. 28:702 (1908); *Bigelow v. Old Dominion Copper Co.*, U.S. 111:225, S.Ct. 32:641 (1912); *Spokane Inland R.R. v. Whitley*, U.S. 237:487, S.Ct. 35:655 (1915)]. Furthermore, a denial of credit, founded upon a mere suggestion of want of jurisdiction and unsupported by evidence, violates the clause [*Rogers v. Alabama*, U.S. 192:226, *231*, S.Ct. 24:257, *258-259* (1904); *Wells Fargo & Co. v. Ford*, U.S. 238:503, S.Ct. 35:864 (1915)]. However, **full faith and credit does extends to the issue of the original court's jurisdiction, when the second court's inquiry discloses that the question of jurisdiction had been fully and fairly litigated and finally decided in the court which rendered the original judgment** [*Durfee v. Duke*, U.S. 375:106, S.Ct. 84:242 (1963); *Underwriters Natl. Assur. Co. v. North Carolina Life & Accident & Health Ins. Guar. Assn.*, U.S. 455:691, S.Ct.102:1357 (1982)].

### (a) Inapplicability of *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine does not bar the district court from determining whether the D.C. judgments challenged by the plaintiff are valid and if the underlying disciplinary statute or Bar rules on their face or as applied are constitutional. *Feldman* expressly excepts from the doctrine's jurisdictional bar to review of the merits of valid State final judgments by district courts in situations where the constitutionality of a court rule is involved, stating that:

> Challenges to the constitutionality of state bar rules ... *do not necessarily require a ... district court to review a final state-court judgment in a judicial proceeding.* Instead, the district court may simply be asked to *assess the validity of a rule promulgated in a nonjudicial proceeding.*" [Id., U.S. 460:*486*, S.Ct. 203:*1316-1317*].

And *Rooker* expressly requires that the State court judgment be rendered by a State court with subject matter and personal jurisdiction [*Id.*, U.S. 263:*415*, S.Ct. 44:*150*]. Plaintiff argues that both the challenge

to rule-making exception and the lack of the jurisdictional prerequisites are operational in this case requiring that the sanctions motion be denied and the dismissal be vacated.

### (b) Void D.C. Disciplinary Judgment/Orders and Unconstitutional Bar Statute/Rule

[1] Plaintiff contends that his reciprocal disciplinary judgment *In re Richardson*, A.2d 692:427 (DC, 1997) [*Richardson* 1997] and the interim suspension orders that preceded it in June 1995 and March 1996 are void having been rendered in violation of due process both in the investigatory and adjudicatory phases and cannot be given full faith and credit by the district court, thereby permitting the district court to determine:

> [1] whether the sanction motion is properly before the district court,
> [2] whether the civil rights violations and common law tortious claims raised by the plaintiff (Count #2 of Complaint) are meritorious and
> [3] whether plaintiff's habeas corpus proceedings (Count #1) should be reinstituted. If *Richardson 1997* is void, then the collateral D.C. judgments convicting plaintiff of civil and criminal contempt [cf. *In re Richardson*, A.2d 759:649 (D.C. 2000) (criminal contempt)] are void also and cannot be given full faith and credit.

Moreover, plaintiff contends that the civil and criminal contempt judgments are void since they would not only be in violation of his due process rights derivatively, but that these contempt judgments also directly violate plaintiff's 4th Amd. right prohibiting unreasonable searches and seizures. The factual predicates are adequately laid out in the Complaint and will not be repeated here [see, Compl. ¶¶ 50-58].

At the outset, it should be made *crystal* clear to the district court that plaintiff is not questioning the *results* of misconduct (i.e. its merits), for under our Judeo-Christian derived system of laws, Richardson is not entitled to a correct or incorrect *result*, although our legal system of *procedures* -- the concept of 'due *process*' -- is designed to reach as correct a *result* as is humanly possible. However, Richardson *is* entitled to the substantive and procedural *process* due in the type of case in which plaintiff is involved, which is *quasi*-criminal[5] disciplinary or civil property forfeiture proceedings.

---

[5] *In re Ruffalo*, U.S. 390:544, *551*, S.Ct. 88:1222, *1226* (1968)

**[2]** A disciplinary proceeding is *quasi*-criminal in nature and an attorney who is the subject of such a proceeding is entitled to procedural due process safeguards.[6] otice and opportunity to be heard comprise the essential ingredients of procedural due process.[7] The hearing must be "at a meaningful time and in a meaningful manner."[8] Providing a "hearing" must, at minimum, consist of an opportunity to submit written defenses to the proposed adverse action and an opportunity to present oral argument and testimonial or documentary evidence.[9] Written submissions in appellate review proceedings are not sufficient to satisfy this right to a hearing.[10] "If one who determines the facts which underlie the order *has not considered evidence* or argument, it is manifest that the hearing has not been given."[11]

"Some" form of hearing is required before an owner is finally deprived by the government of a protected property interest [*Logan v. Zimmerman Brush Co.*, U.S. 455:422, *432-437*, S.Ct. 102:1148, *1156-1159* (1982); *Laughlin v. Wheat*, F.2d 95:101 (U.S. App. DC, 1937); *In re Cummings*, A.2d 466:1124 (DC, 1983)]. The "timing and the nature of the *required* hearing will depend on appropriate accommodation of competing interests involved" [*Logan*, U.S. 455:*434*, S.Ct. 102:1157]. These include the importance of the private interest and the length or finality of the deprivation, the likelihood of governmental error, and the magnitude of the governmental interests involved [Id.]. Temporary suspensions are entitled to protection under the Due Process Clause and due process requires that in connection with suspensions up to ten (10) days, that there be notice and hearing *prior to* suspension [*Goss v. Lopez*, U.S. 419:565, S.Ct. 95:729 (1975)]. Accord: *Bell v. Burton,* U.S. 402:535, *542*, S.Ct. 91:1586, *1591* (1982) [Government "must afford notice and opportunity for a hearing appropriate to the nature of the case *before* the termination becomes effective". (*Emphasis* in original)]; *Fuentes v. Shevin*, U.S. 407:67, S.Ct. 92:1983 (1972); *Davis v. Scherer*, U.S. 468:183, S.Ct. 104:3012 (1984) [For a

---

[6] *In re Williams*, A.2d 464:115 (1983) *mod.* A.2d 513:793 (D.C. 1983)

[7] *Mathews v. Eldridge*, U.S. 424:319, *348*, S.Ct. 96:893, *909* (1976)

[8] *Armstrong v. Manzo*, U.S. 380:45, *552*, S.Ct. 85:187 (1965).

[9] *Goldberg v. Kelly*, U.S. 397:54, S.Ct. 90:1011 (1970); *Willner v. Committee on Character and Fitness,* U.S. 373:96, S.Ct. 83:1175 (1963).

[10] Where an appellate court contemplates summary disposition, due process requires that the adversely affected party be given sufficient advance notice and an adequate opportunity to defend. *Fountain v. Filson*, U.S. 336:681, S.Ct. 69:754 (1949)

[11] *Morgan v. United States,* U.S. 298:468, *480-481*, S.Ct. 56:906, *911* (1936)

comprehensive summary of U.S. Supreme Court cases on the right to a pre-termination hearing since 1925 see the dissenting opinion.]; *Barry v. Barchi*, U.S. 433:55, S.Ct. 99:2642 (1979) [Interim suspension is unconstitutional for lack of prompt post-suspension hearing.]; *Gilbert v. Homar*, U.S. 520:924, S.Ct. 117:1807 (1997) [Interim suspension with summary probable cause proceedings permissible, remanded to determine the promptness of post-suspension hearing.]

**[3]** It is undisputed that Richardson's license to practice law was temporarily suspended by the D.C. Court of Appeals (DCCA) on June 27, 1995 "without a hearing" and that final suspension was imposed *without a hearing* in June 1997, two (2) years later [*Richardson 1997:429* ("On June 27, 1995 (the D.C. Court of Appeals) ordered Richardson's temporary suspension *without hearing*, pending final disposition of the proceedings.")]. In *Richardson 1997* the court concluded that Richardson was not entitled to an evidentiary hearing at all [Id., 434 (The D.C. Court of Appeals is "entitled to rely -- for purposes of final, reciprocal discipline -- on the disciplinary *result* in Florida, *properly certified* to this court, *without affording Richardson the evidentiary hearing* on the Florida charges...")].

*Richardson 1997* is in direct conflict with precedent of the U.S. Supreme Court governing the due process rights of an accused to a *prompt post-suspension hearing* where suspension lasts more than 10-days [*Gross*] and at least two (2) decisions of the DCCA consistent with such precedent [*Laughlin v. Wheat*, F.2d 95:101 (U.S. App. DC, 1937); *In re Cummings*, A.2d 466:1124 (DC, 1983)] and the legislative requirement of a hearing where *any* disciplinary charges are brought against an accused attorney under the statute giving exclusive power to this court to regulate the practice of law in this jurisdiction. [D.C. Code §11-2503(b) (1981); *Matter of Colson*, A.2d 412:1160, *1164* (DC, 1979) (*En banc*) ("the statute is mandatory in its terms"); *In re Laughlin*, F.2d 474:444, *447 n. 3* (D.C.Cir., 1972)]

**[4]** D.C. Code §11-2503(b) requires that

> a member of the [D.C.] bar *may not be ... suspended until written charges, under oath* against him have been presented to the court stating distinctly the grounds of complaint ... and *shall* fix a time for *hearing* thereon ... *After the filing of the written charges, the court may suspend the person charged from practice at its bar pending the hearing thereof."*

- 9 -

And this statute is mandatory [*Matter of Colson*]. However, *Laughlin v. Wheat* declared such a procedure -- suspension pending a hearing -- under a similar statutory D.C. bar disciplinary rule unconstitutional calling such a procedure

> a legislative decree, by which the *mere filing of accusations against an attorney operates automatically to suspend him from practice without hearing or judgment.* This is contrary to one of the cardinal principles of the administration of justice, that *no man can be condemned or divested of his right until he has had the opportunity of being heard.* *** While ...a court has jurisdiction even in an informal hearing in a proper case to strike the name of an attorney from its rolls, we know of no case in state or federal court in which it was held *it could be done without affording the attorney reasonable notice and an opportunity to be heard in his defense.* ... We are therefore of the opinion that the *statute of the District should be so construed as to require both notice and a hearing before suspension* even though the notice and the hearing be informal and speedy.

In accord are numerous DCCA cases beginning in the late 1800s:

- *United States ex rel Wederburn v. Bliss*, App.D.C. 12:485, *493* (1898);[12]
- *Garfield v. United States ex rel Spaulding*, App. D.C. 32:153, *158* (1908);
- *Phillips v. Ballinger*, App. D.C. 37:46, 51-52 (1911); and
- *Goldsmith v. U. S. Bd. of Tax Appeals*, U.S. 270:227, *123*, S.Ct. 46:214, *217-218* (1929)[13]

Since notice and hearing are required *before* suspension and that was not done in plaintiff's reciprocal disciplinary matter, D.C. Code §11-2503(b) is unconstitutional as applied to those proceedings and *Richardson 1997* is void and cannot be given full faith and credit by the district court.

[5] Likewise, D.C. Bar R. XI, §11(d) allowing interim suspension without a pre- or prompt (10-day) post suspension hearing in reciprocal disciplinary matters is also unconstitutional on its face and as applied. It states, *inter alia:*

> *Temporary suspension....*  Upon receipt of a certified copy of any order demonstrating that an attorney ...has been suspended or disbarred by a

---

[12] "Nor is there controversy as to *what, in general, would constitute due process of law* in (bar disciplinary) cases ... . Specific charges, due notice of such charges, an opportunity to make specific answer to them, an opportunity to cross-examine the witnesses in support of them, an opportunity to adduce testimony in contradiction of them, an opportunity for argument upon the testimony and upon the law and the facts, -- and *all this before the proper tribunal*, competent to render judgment, and which does, in fact, render judgment -- this undoubtedly *constitutes due process of law under ordinary circumstances* to its fullest extent ... ." (Id).

[13] Citing authoritatively: *Bliss, Garfield*, and *Phillips* for due process requirements is bar disciplinary matters.

> disciplining court outside ... or ... in the District of Columbia, the [D.C. Court of
> Appeals] *shall forthwith enter an order suspending the attorney from the practice
> of law* in the District of Columbia pending final disposition of any reciprocal
> disciplinary proceedings...

Based upon an *ex parte* executive submission by defendant Becker (Bar Counsel at the time) of the

Florida resignation order of the plaintiff and a proposed interim suspension order to the DCCA dated

May 26, 1995, the DCCA entered a interim suspension order on June 27, 1995 "*without affording*

*[Richardson] reasonable notice and an opportunity to be heard in his defense*" [*Laughlin v. Wheat*].

Subsequently in like manner, on March 12, 1996 some 9-months later, the DCCA entered a "fresh order

of interim suspension" based upon an *ex parte* executive submission by defendant DeSilva (Asst. Bar

Counsel at the time) of the order of disbarment by the federal district court of D.C. based upon the same

Florida resignation order identical to the proposed order submitted by defendant DeSilva along with the

disbarment order.

Of course, between June 1995 and April 1997 no administrative evidentiary hearing was ever

accorded Richardson by the D.C. Board of Professional Responsibility on the issue of the nature and

extent of discipline for the alleged misconduct, contrary to D.C. law governing administrative

adjudication.[14] An agency must accord a party in a contested case certain procedural rights. D.C. Code.

§1-1509(b) (1981). Agency proceedings have been reversed or remanded by the DCCA which failed to

provide a hearing[15] or to permit a party to cross-examine witnesses.[16]

Finally, in April 1997, some 1 year and 10-months after the June 27, 1995 interim suspension, the

DCCA entered a final order of suspension without reasonable notice or an opportunity to be heard. It is

settled constitutional law, that where an appellate court contemplates summary disposition, due process

requires that the adversely affected party be given sufficient advance notice and an adequate opportunity

to defend.[17] Therefore, *Richardson 1997's* final reciprocal discipline judgment being based upon

---

[14] *Carey v. District Unemployment Comp. Bd.*, A.2d 303:18, *20* (D.C. 1973)
[15] *Woods v. D.C. Nurses' Examining Bd.*, A.2d 436:369 (D.C. 1981)]
[16] *Babazadeh v. D.C. Hackers' License Appeal Bd.*, A.2d 390:1004, *1008* (D.C. 1978); *Dietrich v. D.C. Bd. of Zoning Adj.*, A.2d 293:470, *474* (D.C. 1972)]
[17] *Fountain v. Filson*, U.S. 336:681, S.Ct. 69:754 (1949)

proceedings that violate due process are void in the rendering (D.C.) jurisdiction and cannot be given full faith and credit elsewhere, i.e. in the federal district court [*World-Wide Volkswagen Corp.* U.S. 444:*291*, S.Ct. 100:564].

### (e) Void D.C. Civil/Criminal Contempt Judgments and Unconstitutional Subpoena Bar Rule

[1] Due process of law forbids the use by the government at trial of products of unreasonable searches and seizures enjoined by the 4th Amendment, U.S. Const. [*Mapp v. Ohio* 367 U.S. 643, 81 S.Ct. 1684 (1961)]. In *Richardson 2000* tainted evidence was used in Richardson's prosecution. This evidence was obtained by the improper use of executive subpoenas under D.C. Bar R. 18 authorizing Bar Counsel to issue them during investigations in violation of Richardson's due process and 4th Amd. rights proscribing unreasonable searches and seizures. Based upon a copy of a CLE check provided by an employee of the CLE. (=continuing legal education) office of the D.C. Bar submitted by Richardson in payment of the fee for a course in billing ethics, defendant DeSilva (Asst. Bar Counsel) issued subpoenas to Richardson's bank for records for several years without his prior knowledge or consent and simultaneously notified Richardson of an investigation being opened for trust account irregularities based the C.L.E. check (not drawn upon a client trust account, but a 'totten trust' account with the bank). Then, based upon the materials received from Richardson's bank, issued a subpoena to Richardson for certain personal and business financial records.

Plaintiff's 4th Amendment claims are: (1) That the sharing of information between the CLE office of the D.C. Bar and bar prosecutors being without Richardson's consent constituted an unconstitutional search and seizure under the 4th Amendment. (2) That all subpoenas issued in the trust account irregularities investigation (later dismissed) were invalid because they lacked the requisite prior review and authorization by a judicial officer for bar prosecutors in *quasi*-criminal bar disciplinary investigations and are prohibited *per se* from determining probable cause for issuing a subpoena without judicial oversight and approval. And (3) that the issuance of subpoenas for Richardson's bank records in the trust

account investigation violated his due process rights under D.C. Bar Rule XI, §6(a)(2)[18], which prohibits discovery until after an accused attorney has responded.

**[2]** The U.S. Supreme Court ruled in *Ferguson v. City of Charleston*, U.S. 532:67, S.Ct. 121:1281 (2001) that information sharing between affiliated governmental agencies resulting in subpoenas being issued without prior court approval violates the 4th Amendment. It applied the general rule that an official nonconsensual search is unconstitutional if not authorized by a valid search warrant and was not establishing a new rule of constitutional interpretation. Thus, the exchange of the C.L.E. check between the D.C. Bar and the Office of Bar Counsel, both administrative subdivisions of the D.C. Court of Appeals, violated the petitioner's 4th Amendment right that prohibits searches and seizures conducted by the government that are "unreasonable."[19]

Moreover, disciplinary investigations are subject to the strictures of the 4th Amendment that legal process sought to invade the privacy of an attorney must first be reviewed and approved by a neutral judicial officer [*United States v. U.S. District Court*, U.S. 407:297, *317*, S.Ct. 92:2125, *2136-2137* (1972)]. Investigative officials must use an "administrative warrant" under *D.C. Superior Court Civil Rule* 204 in order obtain attorney's bank records [*In re Malvin*, A.2d 466:1220 (D.C., 1983); See also, D.C. Bar R. XI, §18 (a)-(b)]. In *Coolidge v. New Hampshire*, U.S. 403:443, *454*, S.Ct. 94:2022, *2032* (1971) *reh'g den.*, the U.S. Supreme Court established a *per se* disqualification rule regarding prosecutors determining probable cause for issuance of a search warrant or subpoena *duces tecum*, holding:

> that searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment -- subject

---

[18] "Bar Counsel *shall* have the power and duty: ... To investigate all matters involving alleged misconduct by an attorney ... where the apparent facts, if true, may warrant discipline. ... [N]o disposition shall be recommended or *undertaken* by Bar Counsel *until the accused attorney shall have been accorded an opportunity to respond* to the allegations" [D.C. Bar Rule 6(a)(2)]. In other words, no investigation is to be commenced until the accused attorney has responded to the allegations of misconduct. This is mandatory in its language, using "shall."

[19] See also, *Hoffa v. United States*, U.S. 385:293, *301*, S.Ct. 87:408 (1966) [the 4th Amd. is violated by "guileful as well as by forcible instructions into a constitutionally protected area"]; *Gouled v. United States*, U.S. 255:298, S.Ct. 41:261 (1921) [the 4th Amd is violated where the government's agent obtained documents by obtaining access to the defendant's office on pretext of a social visit].

only to a few specifically established and well-delineated exceptions ... [not relevant here] " [*Id.* (Internal quotes omitted)].

D.C. Bar subpoena procedures, permitting as it does unreviewed executive discretion in bar prosecutors, is unconstitutional under the 4th Amendment since there is no restraint imposed by a detached and neutral judicial officer.

**[3]** This illegal search and seizure claim arose in 1996 in a separate investigation based upon a bogus (and later dismissed) misconduct charge of the "misuse of entrusted (client) funds." In that investigation, bar prosecutors, without prior court authorization, surreptitiously subpoenaed Richardson's bank records based upon account information on the copy a check used by Richardson to pay for a CLE course in billing ethics that bar prosecutors had received surreptitiously from the director of the D.C. Bar's CLE office. That office is an administrative division of the DCCA. Richardson's 4th Amendment illegal search and seizure claim is that the Office of D.C. Bar Counsel (bar prosecutors) violated his constitutional right to fair trial procedures when it surreptitiously obtained from the director of the D.C. Bar CLE's office a copy of a CLE check that he had written to attend a CLE course on billing ethics as a part of his rehabilitation efforts after suspension in June 1995.

Information on that check was used to obtain his bank records pursuant to an *executive*-- without prior judicial review -- subpoena by the bar prosecutors while simultaneously investigating him for alleged trust account irregularities. Based upon deposits and cancelled checks, bar prosecutors issued an executive subpoena to Richardson to explain those transactions. Richardson when notified of the opening of an investigation for trust account irregularities, Richardson was not informed of how the bar prosecutors obtained a copy of his CLE check nor how the information regarding certain bank transactions was obtained that formed the basis of the subpoena issued to him. This Richardson discovered after demanding to see the investigation file records, and there it was at the very bottom of the file records a letter from defendant Shiskevish of the D.C. Bar's CLE office to defendant (now Bar Counsel) Shipp transmitting a copy of Richardson's CLE check with a cover note to the effect: *'Gene [Shipp], this was for a course in billing ethics -- Lallah [Shishkevish].'*

Therefore, the *exchange of information* (Richardson's CLE check) between the D.C. Bar CLE office and bar prosecutors constituted an unreasonable search and seizure under the 4th Amendment. Furthermore, the civil and criminal contempt judgments based upon those unconstitutional actions are void being rendered in violation of Richardson's due process rights and 4th Amd. rights prohibiting unreasonable searches and seizures and D.C. Bar Rule 18 governing investigatory subpoenas by Bar Counsel is unconstitutional as applied under these circumstances to obtain bank records and information with prior court authorization.

## 2.3 SANCTIONS UNAVAILABLE--FAILURE TO COMPLY WITH CIVIL RULE 11 (C)(1)(A) OR "SAFE HARBOR" REQUIREMENT

In these Rule 11 proceedings, sanctions are unavailable since the movant, defendant DeSilva, has not complied with the 21-day safe harbor provision, which is jurisdictional. There has been no service of the sanctions motion as required by Civ. R. 11(c)(1)(A) or the "safe harbor" requirement of Rule 11 and therefore the defendant DeSilva has failed to comply with the prerequisites for filing such a motion with the district court. Rule 11 provides, *inter alia:* "A motion for sanctions ... *shall be served* as provided by Rule 5, but shall not be filed with or presented to the court unless, within 21 days *after* service of the motion ..., the challenged paper ... is not withdrawn or appropriately corrected." Civ. R. 5 governing service provides, *inter alia:* "Service under Rule 5(a) is made by ... [m]ailing a copy to the last known address of the person served ... [or d]elivering a copy by any other means, including electronic means, *consented to in writing by the person served*" [Civ. R. 5(b)(2)(B) and (D)].

Defendant DeSilva filed her motion [Doc. #26] with the district court on March 6, 2007, therefore service upon the plaintiff should have occurred at least 21 (twenty-one) days prior to that filing by U.S. mail or by "any other means" or on or before *February 13, 2007.* Defendant DeSilva did not serve the plaintiff her motion for sanctions by U.S. mail at all, but attempted service by "electronic means" or email on December 29, 2006. The sanctions motion was dated "January _____ 2007." Plaintiff did not and has not consented in writing or verbally to service by such means; therefore, the service of the sanctions

motions does not comply with either the notice provisions of Civ. R. 11 or the 21-day 'safe harbor requirement' and is not properly before the district court.

## 3.0  UNAVAILABILITY AND INAPPLICABILITY OF RULE 11 GENERALLY

Plaintiff, although hindered by the defendants' (supervising disciplinary officials and their agencies' and employees') failure to provide access to the 1992-1994 investigatory files and the name of the disciplinary board's contact person involved in the alleged improper investigation and denial of plaintiff's due process rights when an investigation in instituted on a complaint for attorney misconduct, conducted indepth legal (in house, at the library of Congress, and over the Internet) and factual (notwithstanding the refusal to provide access to investigatory records) research as evident by the format and comprehensiveness of the complaint -- for more than the notice pleading requirement under Civ. R. 8(a)(2).  All prior cases arising out the unconstitutional deprivation of plaintiff's law license without notice or opportunity to be heard, including this case, are subject to plaintiff's constitutional, civil rights and common law tortious claims arising out of the prosecutorial misconduct involving nondisclosure or concealing of material evidence from the plaintiff and D.C. and federal courts, denial of investigatory due process rights, constituting fraud, misrepresentation, deception, and obstruction of justice.

Despite defendants' claims of litigation abuse, it is wrong, wrong, wrong for them to frustrate plaintiff's discovery attempts and thereby impede the orderly resolution of this dispute.  If it took from 1992 to 2003, or 11 years for plaintiff to discover the nondisclosure/concealment of investigative records from the plaintiff and the courts, and the investigatory due process violations in plaintiff's reciprocal disciplinary matter; and them only after being compelled in plaintiff's reinstatement proceedings by the hearing panel to provide the materials! How long, oh how long, does the defendants contend it should take the plaintiff to get it right?

Any objective observer would conclude that the plaintiff made a reasonable inquiry before filing the action as to the law involved and the accuracy of the facts alleged, although hindered by the defendants' refusal to disclose relevant and material investigatory materials and information.  Such nondisclosure/concealment and obstruction of justice alone should compel the district court to sanction

the defendant DeSilva and counsel under Rule 11 for filing this baseless and frivolous motion for sanctions against the plaintiff. **Defendants must demonstrate "clean hands"[20] for it would be inequitable for plaintiff to be sanctioned where the defendants have hindered plaintiff's factual investigations which form the basis of plaintiff's legal theories of recovery.**

## 4.0  CONCLUSION AND RELIEF REQUESTED

[1] A court's jurisdiction can be challenged at anytime in the proceedings and the court is obligated to determine whether jurisdiction exists initially and throughout the judicial proceedings. Unless a valid State judgment is presented to a district court, the *Rooker-Feldman* doctrine cannot preclude review. There are two primary jurisdictional challenges that the plaintiff makes: *First*, the plaintiff contends that  the underlying D.C. reciprocal disciplinary interim suspension orders of June 1995 and March 1996 and the final judgment of April 1997 (with its 3-year suspension and 1-year, 10-month suspension enhancement)  are void being rendered in violation of plaintiff's  U.S. constitutional due process and equal protection rights and therefore cannot be giving full faith and credit in these motion proceedings for sanctions.

In addition to these constitutional [*viz*: 5th  (due process and equal protection rights of D.C. residents)] challenges to the validity of the D.C. reciprocal disciplinary orders and judgment, the plaintiff

---

[20] *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, US 324:806, *814-815*, SCt 65:993, 997 (1945). {The clean hands doctrine "is the equitable maxim that 'he who comes into [court] must come with clean hands.' ... *It is a self-imposed ordinance that closes the doors of a court ... to one tainted with inequitableness or bad faith relative to the matter in which  [the litigant] seeks relief, however improper may have been the behavior of the [offending party].* That doctrine is rooted in the historical concept of  [the] court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. ... *[Equity] ... require[s] that [a litigant] shall have acted fairly and without fraud or deceit as to the controversy in issue.* This maxim necessarily gives wide range to the ... court's use of discretion in refusing to aid the unclean litigant. It is 'not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.' Accordingly[,] *one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim* by the [court]}."

has alleged violations of his D.C. law investigatory due process, equal protection and other civil rights guaranteed under the following(a)  D.C. Code §§ 11-2503(b) (1981 ed.) [governing prerequisites for exercise of disciplinary jurisdiction], 11-1502(8) (1981 ed.) [governing right to an evidentiary hearing in "contested cases" before governmental agencies], and 14-101(a) (1981 ed.) [requiring all evidence be proved under oath], (c)  D.C. Board on Professional Responsibility Rules ## 2.3 (Preliminary Screening of Complaint),[21]   2.7 (Notification to Respondent)[22], and 3.1 (Discovery Entitlement and Access)[23] governing the docketing of complaints and accused attorney's due process and discovery rights, and (d) and D.C. Bar R. 6(a)(2) [providing that "no disposition ('of alleged misconduct by an attorney') shall be recommended or undertaken  by Bar Counsel until the accused attorney shall have been afforded an opportunity to respond to the allegations"].

*Second*, the plaintiff contends that D.C. civil and criminal contempt convictions and sentencing of the plaintiff are void and cannot be given full, faith and credit in these motion proceedings for sanctions where, the plaintiff having made the uncontested allegations: (a)  That the civil contempt proceedings are void because tainted evidence was used in violation of plaintiff's 4th Amendment right against unreasonable searches and seizures;  and (c)  That the criminal contempt proceedings are likewise void because tainted evidence was used in violation of plaintiff's 4th Amendment right.  None of these 'precise' jurisdictional and constitutional challenges have be decided in prior adversary proceedings

---

[21] "All complaints [must allege misconduct, shall be in writing and contain a brief statement of facts (Board R. 2.2)] shall be examined by Bar Counsel who, after preliminary inquiry as appears appropriate, shall determine whether the complaint is to be docketed.  Except as provided in Chapter 5 [complaints of misconduct against counsel in criminal proceedings], *a complaint shall be docketed if it: (1) is not unfounded on its face; (2) contains allegation which, if true, would constitute a violation of the Attorney's Oath of Office or the rules of professional responsibility that would merit discipline;* and (3) is within the jurisdiction of the Board."

[22] "Bar counsel *shall promptly notify respondent in writing* when a formal investigation into respondent's conduct has been docketed.  This *notice shall include a copy of the complaint or other documents upon which the investigation is based* and a request for a written response from respondent."

[23] "During the course of an investigation of a complaint and *following the filing of a petition, respondent shall have access to all material in the files of Bar Counsel pertaining to the pending charges that are neither privileged nor the workproduct of the Office of Bar Counsel.* ... Any dispute arising under this chapter shall be resolved, after filing a petition, by the Hearing Committee Chair upon written application by the respondent."

between the plaintiff and the defendants, jointly or severally, therefore jurisdictional challenges for lack

of 'full faith and credit' are not barred by the doctrine of preclusion (*res judicata* or collateral estoppel).

Furthermore, if the *Rooker-Feldman* constitutes a jurisdictional bar to review by a district court,

an exception exists where a challenge is made to the judicial ruling making authority of a State court.  In

that regards and *thirdly*, the plaintiff contends that D.C. Bar Rule XI, § 11(d) governing mandatory

suspension in reciprocal disciplinary matters without notice or hearing prior to or shortly after suspension,

specifically,

> [u]pon receipt of a certified copy of any order demonstrating that an attorney ...
> has been suspended or disbarred ...outside the District of Columbia, the [D.C.]
> Court [of Appeals] *shall forthwith*  enter an order suspending the attorney from
> the practice of law ... *pending final disposition* of any reciprocal disciplinary
> proceedings...,

 and D.C. Code § 11-2503(b) requiring written notice and a hearing, but permitting suspension pending a

hearing, are  unconstitutional  on their face and as applied  in violation of the 5th Amendments due process

clause.

And *fourthly*, that the D.C. Bar Rule XI, §18(a) authorizing "Bar Counsel in matters under

investigation" to subpoena plaintiff's bank account records and command production of personal or

business financial records from the plaintiff in *quasi*-criminal investigations for misconduct without prior

court approval or notice to the plaintiff, is unconstitutional in violation of the 4th Amendment's

prohibition against unreasonable searches and seizures and the due process clause of the 5th Amendment.

Both of these contentions may be heard by the district court under the *Rooker-Feldman* exception

allowing review of court rule-making authority and the content of court rules in bar disciplinary matters

[*Feldman*].

Moreover, as a secondary jurisdictional challenge, the plaintiff contends that the  21-day 'safe

harbor' requirement under Rule 11 has not been satisfied since plaintiff was not served properly under

Civ. R. 5. Finally, plaintiff argues that although by any objective assessment of plaintiff's conduct under

the Rule 11 standards that require a reasonable inquiry before submitting a court paper of the facts and

law involved the plaintiff is not sanctionable, the "clean hands" doctrine would bar the defendants from

seeking sanctions. That doctrine recognizes that even if the plaintiff did transgress Rule 11, the wrongful conduct of the defendants [bar prosecutors who owe a fiduciary duty to the plaintiff, their supervisors (the DCCA or its agents) and other bar officials] bars them or their privy from seeking sanctions. That wrongful conduct consisted of, among other things: nondisclosure or concealment of material evidence from plaintiff, D.C. and federal courts in various adversarial contexts (ethical, civil and criminal proceedings), failure to provide the due process and fair hearing procedures mandated by the D.C. bar rules and Board regulations, obstruction of justice, conspiracies to deny plaintiff due process rights, deception, and fraudulent misrepresentations.

Defendants misconduct resulted in, among other things: (1) denying plaintiff access to investigatory records collected between 1992 and 1994 related to the ethical violation of charging an unreasonable fee to Florida clients to which plaintiff was entitled, (2) failing to identify the contact person on the disciplinary board who had oversight responsibility for those investigatory activities, (3) obtaining and using illegally seized financial records of the plaintiff from his bank and personally, (4) concealing its investigatory abuses partially from 1992 to 2003, some 11 years, and continuing to deny plaintiff discovery of those investigatory records and related information, and (5) other investigatory and adjudicatory abuses (obstructive of justice, concealment, deceptive practices and the like). A court sitting in equity will not allow enforcement of sanctions for litigation abuse where the movant is shown to have committed improper, illegal, unethical or "any willful act" in connection with that litigation.

Plaintiff seeks the following relief: (1) a declaration (a) that the D.C. disciplinary and contempt judgment involved in this case are void and cannot be given full faith and credit; (b) that the D.C. enabling statute governing attorney suspensions, bar rules governing temporary suspensions and subpoenas during investigations are unconstitutional on their face or as applied and thus any judgments thereon are void and cannot be given full faith and credit; (c) that the defendants' discovery abuses, denial of due process, obstruction of justice, nondisclosure, concealment and deception in the plaintiff reciprocal disciplinary investigatory and adjudicatory processes, as well as collateral civil, contempt and habeas corpus actions in the D.C. and federal courts requires the imposition of the 'clean hands' doctrine; (d)

that the defendant DeSilva has not compiled with the 21-day 'safe harbor' requirement of Rule 11 and therefore the sanctions motion is improper and should be stricken; and (e) that the allegations of prosecutorial and adjudicatory misconduct and fraud upon the D.C. and federal courts should be referred to the bar disciplinary committee of the district court for investigation and disposition. And (2) strike the defendant DeSilva's motion for sanctions and (3) issue a show cause order returnable in 30-days to the defendants as to why the district court should not deny full faith and credit to the D.C. disciplinary and contempt judgments involved in this civil action, and why the plaintiff's counter-request for sanctions under Rule 11 is jurisdictionally barred under the Rule itself and the 'clean hands' doctrine should not be granted; and such further relief as the court deems necessary and proper. [A proposed order is attached.]

## 5.0  VERIFICATION

This certifies under penalty of perjury that any factual statement made in this document is true the best of the signer's information, knowledge and belief.

## ■ CERTIFICATE OF SERVICE ■

This certifies that a copy of the forgoing document was delivered by first-class U.S. Mail to:

| | |
|---|---|
| **D.C. ATTORNEY GENERAL**<br>**GEORGE E. RICKMAN, ESQ.**<br>441-4[TH] Street, NW, 6th Flr. So.<br>Washington, DC 20001 | **UNITED STATES ATTORNEY'S OFFICE**<br>**MICHELLE N. JOHNSON, ESQ.**<br>555 - 4th Street, NW, Rm. E-4212<br>Washington, DC 20530 |
| **TIMOTHY K. WEBSTER, ESQ.**<br>Sidley Austin, LLP<br>1501 "K" Street, NW, #800<br>Washington, DC 20005-1401 | **RICHARD J. OPARIL, ESQ.**<br>Patton Boggs LLP<br>2550 "M" Street, NW<br>Washington, DC 20037-1350 |

on this **1**[st] day of September 2007.

**T. CARLTON RICHARDSON**
Plaintiff *Pro Se*
1505 Pennsylvania Avenue, SE
Washington, DC 20003-3117
202-546-3505

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

---

**T. CARLTON RICHARDSON,**                    )

                   Plaintiff.                    )

vs.                                          )          No. **06CV01665   [RJL]**

**DISTRICT OF COLUMBIA, *et al.***            )

                  Defendants.                   )

*[PLAINTIFF'S PROPOSAL]*

---

ORDER DENYING SANCTIONS; FOR SHOW CAUSE TO
DEFENDANTS RE FULL FAITH AND CREDIT AND COUNTER-SANCTIONS;
AND VACATING ORDER DISMISSING COMPLAINT ET. AL.

---

On September 6, 2007, the district court conducted non-evidentiary summary proceedings on the defendant DeSilva's motion for F.R.Civ.P. 11 (Civ. R.) sanctions against plaintiff Richardson. Having considered all submissions by the parties regarding this matter and heard oral argument, this court finds that good cause as been shown regarding the following:

1.  That this court's jurisdiction can be challenged at anytime in the proceedings and the court is obligated to determine whether jurisdiction exists initially and throughout the judicial proceedings;

2.  That the reciprocal disciplinary orders and final judgment and criminal contempt judgments of the D.C. Court of Appeals [*In re Richardson,* A.2d 692:427 (D.C. 1997); *In re Richardson* A.2d 759:649 (D.C. 2000)] rendered against the plaintiff Richardson, a D.C. resident, are void and cannot be given 'full faith and credit' [Art. IV, §1, U.S. Const.] by the court in these proceedings, having been rendered in violation of the due process and equal protection clauses of the 5th Amendment (applicable to D.C. residents) and/or 4th Amendment prohibition against unreasonable searches and seizures or other fair trial provisions of the U.S. Constitution;

3.  That likewise, the disciplinary and contempt judgments involved in this action are void and cannot be given 'full faith and credit' because the D.C. statute governing attorney discipline [D.C. Code §11-2503(b) (1981 ed.)], the D.C. Bar Rule XI, §11(d) governing temporary suspensions, and D.C. Bar Rule XI, §18(a) governing subpoenas in investigations by Bar Counsel are unconstitutional either on their face or as applied;

4. That defendant DeSilva did not properly serve the plaintiff Richardson within 21-days before filing defendant's motion for sanctions under Rule 11 and therefore this court is barred for considering the motion;

5. That the defendants have committed wrongful conduct consisting of, among other things: nondisclosure or concealment of material evidence from plaintiff, D.C. and federal courts in various adversarial contexts (ethical, civil and criminal proceedings), failure to provide the due process and fair hearing procedures mandated by the D.C. bar rules and Board regulations, obstruction of justice, conspiracies to deny plaintiff due process rights, deception, and fraudulent misrepresentations.

6. That such misconduct by the defendants resulted in, among other things: (1) denying plaintiff access to investigatory records collected between 1992 and 1994 related to the ethical violation of charging an unreasonable fee to Florida clients to which plaintiff was entitled, (2) failing to identify the contact person on the disciplinary board who had oversight responsibility for those investigatory activities, (3) obtaining and using illegally seized financial records of the plaintiff from his bank and personally, (4) concealing its investigatory abuses partially from 1992 to 2003, some 11 years, and continuing to deny plaintiff discovery of those investigatory records and related information, and (5) other investigatory and adjudicatory abuses (obstructive of justice, concealment, deceptive practices and the like).

7. That a court sitting in equity under the "clean hands" doctrine will not allow enforcement of sanctions for litigation abuse where the movant is shown to have committed improper, illegal, unethical or "any willful act" in connection with that litigation.

8. That the court has not formally entered orders regarding the plaintiff's motion for default judgment;

9. That under the circumstances of this case, it appropriate for the court to *sua sponte* vacate its order of dismissal entered July 11, 2007 and order denying reconsideration of dismissal entered of Record August 24, 2007.

Based upon the foregoing declarations and statements, it is thereby ORDERD:

(1) That defendant DeSilva's motion for sanctions is *denied* and *stricken* from the Record;

(2) That the *defendants shall show cause* returnable in 30-days of entry of this Order as to:

(2.1) Why the district court should not deny 'full faith and credit' [Art. IV, §1, U.S. Const.] to the D.C. disciplinary and contempt judgments involved in this civil action [*In re Richardson,* A.2d 692:427 (D.C. 1997); *In re Richardson* A.2d 759:649 (D.C. 2000)],

2

(2.2) Why the plaintiff's counter-request for sanctions the 'clean hands' doctrine as applied to the alleged improper, illegal, unethical and wrongful conduct of certain defendants should not be granted; and

(2.3) Why the plaintiff's request for referral of allegations of the improper, illegal, unethical and wrongful conduct by defendants who are current or former D.C. Bar prosecutors or employees for disciplinary investigation by the Bar Disciplinary Committee of this court;

(3) That the court's order dismissing this case entered on July 11, 2007 and the order denying reconsideration of that dismissal entered on August 24, 2007 are *vacated*; and

(4) That the defendant's motion for default judgment against defendants' DeSilva and others is *denied* as moot.

EXECUTED this _____ day of _____, 2007:


_____
HON. RICHARD J. LEON, JUDGE

3